KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
DALE F. KINSELLA (SBN 063370)
  dkinsella@kwikalaw.com
JEREMIAH T. REYNOLDS (SBN 223554)
  jreynolds@kwikalaw.com
DAVID W. SWIFT (SBN 235033)
  dswift@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendants and
Counterplaintiffs, DOCULEX, INC.,
CARL STRANG, TERRY MORGAN,
DAVID BAILEY, JIM GREBEY, and
DAVID GRIFFITH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EXPEREXCHANGE, INC., a California Corporation, DBA: EXPERVISION, <br><br> Plaintiff, <br><br> vs. <br><br> DOCULEX, INC., a Florida corporation; CARL STRANG, an individual; TERRY MORGAN, an individual; DAVID BAILEY, an individual; JIM GREBEY, an individual; DAVID GRIFFITH, an individual, <br><br> Defendants. <br><br> AND RELATED CROSS CLAIM | CASE NO. CV 08 3875 JCS <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **[Supporting Declarations of Dale Kinsella; Carl Strang, III; David Griffith, David Bailey and Terry Morgan filed concurrently herewith]** <br><br> Date: September 11, 2009 <br> Time: 9:30 A.M. <br> Dept.: A, 15th Floor <br> Before: Hon. Magistrate Judge Spero |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on September 11, 2009 at 9:30 a.m.,

3   Defendants and Counter-Claimants DocuLex, Inc., Carl Strang, Terry Morgan,

4   David Bailey, David Griffith, and Jim Grebey (collectively "DocuLex") will move,

5   and hereby do move, for summary judgment on all of Plaintiff ExperExchange,

6   Inc.'s ("Plaintiff") claims.  The motion will be heard in Courtroom A at 450 Golden

7   Gate Avenue, San Francisco, California.

8        This motion is brought pursuant to Rule 56 of the Federal Rules of Civil

9   Procedure and Local Rule 56 of the Northern District of California.  It is made on

10  the grounds that the undisputed facts demonstrate that Plaintiff's claims are all

11  entirely barred by the statute of limitations.  Specifically, the following causes of

12  action are time-barred in their entirety:  Count 1 (copyright infringement); Count 2

13  (contributory copyright infringement); Count 3 (contributory copyright infringement

14  against Carl Strang); Count 4 (contributory copyright infringement against Carl

15  Strang [sic]); Count 5 (contributory copyright infringement against Terry Morgan);

16  Count 6 (contributory copyright infringement against David Bailey); Count 7

17  (contributory copyright infringement against Jim Grebey); Count 8 (contributory

18  copyright infringement against David Griffith); Count 9 (breach of contract); Count

19  10 (trademark infringement); Count 11 (federal passing-off); Count 12 (State of

20  California passing-off); Count 13 (federal unfair competition); Count 14 (California

21  unfair competition); Count 15 (conversion); Count 16 (intentional interference with

22  prospective economic advantage); Count 17 (negligent interference with prospective

23  economic advantage); Count 18 (intentional interference with contractual relations);

24  Count 19 (negligent interference with contractual relations); Count 20 (unjust

25  enrichment); and Count 21 (accounting).

26        This motion is also made on the grounds that the undisputed facts

27  demonstrate that Plaintiff's copyright and trademark claims are all entirely barred by

28  the doctrine of laches.  Specifically, the following causes of action are time-barred

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   in their entirety:  Count 1 (copyright infringement); Count 2 (contributory copyright

2   infringement); Count 3 (contributory copyright infringement against Carl Strang);

3   Count 4 (contributory copyright infringement against Carl Strang [sic]); Count 5

4   (contributory copyright infringement against Terry Morgan); Count 6 (contributory

5   copyright infringement against David Bailey); Count 7 (contributory copyright

6   infringement against Jim Grebey); Count 8 (contributory copyright infringement

7   against David Griffith); Count 10 (trademark infringement); Count 11 (federal

8   passing-off); Count 12 (State of California passing-off); and Count 13 (federal

9   unfair competition).

10       This motion is also made on the grounds that the undisputed facts

11   demonstrate that all of Plaintiff's claims are entirely barred by the doctrine of

12   implied license.

13       This motion is also made on the grounds that the undisputed facts

14   demonstrate that Plaintiff's state law claims (Counts 10, 12, 14-21) are preempted by

15   the Copyright Act and the Lanham Act and should be dismissed.

16       This motion is also made on the grounds that Plaintiff's interference claims

17   (Counts 16-19) fail as a matter of law.

18       This motion is also made on the grounds that Plaintiff has suffered no

19   damages and its claims should therefore be dismissed.

20       Finally, this motion is also made on the grounds that the undisputed facts

21   demonstrate that Plaintiff's claim for an injunction (Count 22) fails because the rest

22   of Plaintiff's claims all fail.  Plaintiff's claim for an injunction should also be

23   dismissed because it is moot.

24       If the Court grants summary judgment as to all of the above listed claims,

25   there will be no remaining claims against Defendants.

26       In the alternative, if the Court determines that some, but not all of the above

27   claims are subject to summary judgment, then DocuLex requests partial summary

28   judgment as to all claims that fail.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    In support of its motion, DocuLex hereby submits its Memorandum of Points

2  and Authorities, and the Declarations of David Swift; Bud Strang; David Griffith;

3  David Bailey and Terry Morgan.

4

5  DATED: July ___, 2009          KINSELLA WEITZMAN ISER KUMP &
                                  ALDISERT LLP
6

7

8                                 By: _____
                                     Dale F. Kinsella
9                                    Attorneys for Defendants and
                                     Counterplaintiffs, DOCULEX, INC.,
10                                   CARL STRANG, TERRY MORGAN,
                                     DAVID BAILEY, JIM GREBEY, and
11                                   DAVID GRIFFITH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

**KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................ 1

II.  STATEMENT OF UNDISPUTED FACTS ................................. 1

   A.  Plaintiff Enters Into a License Agreement With DocuLex in 1999 ...... 2

   B.  The Parties' Interpretations of the License Agreement ......................... 3

      1.  DocuLex's Interpretation of the License Agreement ................... 3

      2.  Plaintiff's Interpretation of the License Agreement.................... 5

   C.  Under Plaintiff's Strained Interpretation of the License Agreement, DocuLex Breaches the Agreement Immediately................ 6

   D.  Plaintiff Has Known Since 1999 That DocuLex Was Allegedly Breaching the License Agreement, Yet Plaintiff Never Objected ......... 6

   E.  Instead of Objecting to DocuLex's Alleged Breach of the License Agreement, Plaintiff Accepted Royalty Payments For the Allegedly Unauthorized Use and Renewed the License Agreement Each Year.................................................................. 8

   F.  In Late 2007, Bo Yan Resigns For Personal Reasons............................ 9

   G.  In February 2008, After Nine Years of Cooperation Between the Parties, Plaintiff Attempts to Renegotiate the Agreement .................... 9

   H.  In May 2008, After the Negotiations For a New Agreement Hit a Standstill, Plaintiff Asserts For the First Time that DocuLex Breached the 1999 Agreement .................................................... 10

III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT .............. 10

   A.  All of Plaintiff's Claims are Time-Barred ......................................... 11

      1.  Plaintiff's Claims are Barred by the Statute of Limitations ....... 11

      2.  Plaintiff's Copyright and Trademark Claims are Barred by the Doctrine of Laches ........................................................ 14

   B.  Plaintiff's Lawsuit is Barred by the Doctrine of Implied License........ 16

   C.  Plaintiff's State Law Claims are Preempted under the Copyright Act and the Lanham Act........................................................ 18

   D.  Plaintiff's Interference Claims Fail Because A Party and its Agents Cannot Be Held Liable for Interfering With its Own Contract or Prospective Economic Advantages ................................. 19

   E.  Plaintiff Has Suffered No Damages ................................................... 20

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

F.    Plaintiff's Claim For an Injunction Should be Dismissed ..................... 20

IV.   CONCLUSION .............................................................................. 21

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**TABLE OF AUTHORITIES**

**Cases**

*Aagard v. Palomar Builders, Inc.,*
    344 F.Supp.2d 1211 (E.D.Cal. 2004) ............................................ 19

*AmerUS Life Ins. Co. v. Bank of America,*
    N.A., 143 Cal.App.4th 631 (2006) ................................................ 12

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) .................................................................. 19

*Broberg v. Guardian Life Ins. Co. of America,*
    171 Cal.App.4th 912 (2009) ........................................................ 11

*Capcom Co., LTD v. MKR Group, Inc.,*
    2008 WL 4661479, *14 (N.D.Cal. 2008) ..................................... 18

*Couveau v. Am. Airlines, Inc.,*
    218 F.3d 1078 (9th Cir. 2000) ..................................................... 14

*Danjaq LLC v. Sony Corp.,*
    263 F.3d 942 (9th Cir. 2001) ........................................... 14, 15, 16

*Del Madera Prop. v. Rhodes and Gardner, Inc.,*
    820 F.2d 973 (9th Cir. 1987) ....................................................... 18

*Design Art v. N.F.L. Properties,*
    2000 WL 33151646, *3 (S.D.Cal. 2000) ............................... 18, 19

*F.D.I.C. v. Dintino,*
    167 Cal.App.4th 333 (2008) ........................................................ 12

*Field v. Google Inc.,*
    412 F.Supp.2d 1106 (D.Nev. 2006) ....................................... 16, 17

*Haas v. Leo Feist, Inc.,*
    234 F. 105 (S.D.N.Y. 1916) ........................................................ 16

*Hot Wax, Inc. v. Turtle Wax, Inc.,*
    191 F.3d 813 (7th Cir. 1999) ....................................................... 16

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.,*
    2009 WL 330259 (N.D.Cal. 2009) ............................................... 10

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
    304 F.3d 829 (9th Cir. 2002) ................................................. 14, 16

*Jefferson v. French Co.,*
    54 Cal.2d 717 (1960) ................................................................... 12

*Jenkins v. Inglewood Unified School Dist.,*
    34 Cal. App. 4th 1388 (1995) ...................................................... 20

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Keane Dealer Servs., Inc. v. Harts*,
   968 F.Supp. 944 (S.D.N.Y. 1997) ........................................................ 17

*Kling v. Hallmark Cards, Inc.*,
   225 F.3d 1030 (9th Cir. 2000) ...................................................... 14, 16

*Knoell v. Petrovich*,
   76 Cal.App.4th 164 (1999) .............................................................. 12

*Kodadek v. MTV Networks*,
   152 F.3d 1209 (9th Cir. 1998) .......................................................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ................................................................... 19

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
   831 F.Supp. 202 (D.Mass. 1993) ....................................................... 15

*Miller v. Glenn Miller Prods., Inc.*,
   454 F.3d 975 n. 11 (9th Cir. 2006) .............................................. 11, 15

*Morris v. Atchity*,
   2009 WL 463971, *8 (C.D.Cal. 2009) ............................................... 18

*North American Chemical Co. v. Superior Court*,
   59 Cal.App.4th 764 (1997) .............................................................. 19

*Penpower Technology Ltd. v. S.P.C. Technology*,
   2008 WL 2468486, *6 (N.D.Cal. 2008) ............................................. 19

*Reynolds v. Bement*,
   36 Cal. 4th 1075 (2005) .................................................................. 20

*Selby v. New Line Cinema Corp.*,
   96 F.Supp.2d 1053 (C.D.Cal. 2000) ................................................... 18

*Shoemaker v. Myers*,
   52 Cal. 3d 1 (1990) ........................................................................ 20

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*,
   446 F.Supp.2d 1164 (E.D.Cal. 2006) ................................................. 17

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) ..................................................... 16, 18

## Other Authorities

17 U.S.C. § 507(b) (2008) ...................................................................... 11

California Business & Professions Code § 14330 ...................................... 11

California Business & Professions Code § 14335 ...................................... 11

California Business & Professions Code § 17208 ...................................... 11

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

California Code of Civil Procedure § 338(c) .................................................. 12

California Code of Civil Procedure § 338(d) .................................................. 12

California Code of Civil Procedure § 339 ...................................................... 12

California Code of Civil Procedure, § 339(1) (2008) ..................................... 11

California Code of Civil Procedure, § 343 .................................................... 11

California Code of Civil Procedures § 337 (2008) .................................... 11, 12

## Rules

Federal Rules of Civil Procedure § 56(c) ...................................................... 10

## Treatises

3 B.E. WITKIN, CALIFORNIA PROCEDURE § 623 (4th ed. 1997) .................... 12

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Plaintiff ExperExchange, Inc. ("Plaintiff") alleges that Defendants DocuLex, Inc., Carl Strang, Terry Morgan, David Bailey, David Griffith, and Jim Grebey (collectively "DocuLex") have infringed Plaintiff's copyrights and trademarks by using Plaintiff's software in various products without proper authorization.  Nothing could be further from the truth.  DocuLex's use of Plaintiff's software was <u>explicitly</u> <u>authorized</u> by the terms of the license agreement itself, by communications from Plaintiff, and by the parties' course of dealing <u>over the last nine years</u>.

Even accepting Plaintiff's strained interpretation of the license agreement, it is undisputed that Plaintiff <u>knew</u> DocuLex believed it had the right to incorporate Plaintiff's RTK software into a broad range of products – and indeed <u>began</u> <u>incorporating the RTK software into a broad range of products in 1999</u>, yet Plaintiff never objected.  Moreover, <u>in 2001</u>, Plaintiff <u>independently confirmed</u> that DocuLex had incorporated Plaintiff's RTK software into an allegedly unauthorized product.  Nevertheless, from 1999 to 2008, Plaintiff accepted royalty payments for the allegedly unauthorized products and <u>renewed the license agreement each year</u>.  Because Plaintiff waited nine years from the time it first learned of Doculex's alleged breach of the license agreement, all of its claims are time-barred.

**II.    STATEMENT OF UNDISPUTED FACTS**

DocuLex, Inc. is a small software company with 17 employees located in Winter Haven, Florida.  Declaration of Carl J. Strang, III ("Strang Decl."), ¶ 2.  DocuLex designs and sells document management software products that allow customers to efficiently manage their company records and information.  *Id.* ¶ 3; Declaration of David Bailey ("Bailey Decl.") ¶ 2.  Plaintiff ExperExchange, Inc. (formerly ExperVision, Inc.) is a software design company which licenses its optical character recognition (OCR) software – entitled Recognition Toolkit Software

1   ("RTK") – to manufacturers and software developers in exchange for royalty fees.

2   Strang Decl. ¶ 4; Bailey Decl. ¶ 3.

3       **A.**    **Plaintiff Enters Into a License Agreement With DocuLex in 1999**

4       In May of 1999, DocuLex entered into a Recognition Toolkit Software

5   License Agreement (the "License Agreement") with Plaintiff, which granted

6   DocuLex a non-exclusive license to use Plaintiff's RTK software in its products in

7   exchange for a royalty payment of $50 per product sold. *See* Compl. ¶ 14. *See also*

8   Declaration of Dale Kinsella ("Kinsella Decl."), Ex. A. The License Agreement is a

9   standard form contract that was prepared by Plaintiff's transactional attorneys for

10  use with all Plaintiff's licensees. *See* Deposition of Plaintiff's CEO, Dr. Wang,

11  attached hereto as Exhibit D to Kinsella Decl., ("Wang Depo.") at 116:13-14

12  ("Yeah, this form contract was drafted by our attorney."); Deposition of Plaintiff's

13  Original Equipment Manufacturer ("OEM") Manager, Troy Sarmento,[1] attached

14  hereto as Exhibit E to Kinsella Decl., ("Sarmento Depo.") at 77:19-20

15  ("ExperVision hired an attorney to write this contract."). The terms of the License

16  Agreement were non-negotiable and Plaintiff did not discuss any of the terms of the

17  License Agreement with DocuLex. *See* Sarmento Depo. at 39:3-5 (Q: … Are the

18  terms of the RSLA [License Agreement] negotiable?  A: Absolutely not."); 47:25-

19  48:4 (Q: … When you send the RSLA to the potential customer, do you discuss --

20  do you walk through and discuss each of the terms and conditions?  A: No."). By its

21  terms, the License Agreement could be terminated by either party on a yearly basis

22

23  [1] In his role as OEM Manager, Troy Sarmento reported directly to the Chief
    Operations Officer and President of US Operations, Bo Yan. Sarmento Depo. at

24  21:1-10.  Mr. Sarmento is also responsible for monitoring compliance with
    Plaintiff's licensees. *Id.* at 20:6-9 ("Q: …In your role -- or did ExperVision have

25  anyone in charge, person or division, in charge of monitoring compliance with the
    contracts?  A: That was me."). Finally, Mr. Sarmento is also the individual at

26  Plaintiff who negotiated and signed the License Agreement with DocuLex and who
    allegedly knows the most about the License Agreement. *See id.* at 63:19-21; Wang

27  Depo. at 33:18-23 ("Q. So Troy Sarmento is the person who knows the most -- A.
    Yes.  Q. -- about the contract between DocuLex and ExperVision?  A. Yes.").

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    or, if they chose not to terminate, it would be renewed automatically in May of each

2    year. *See* Kinsella Decl., Ex. A at 2, § 5(b).

3         Section 1(c) of the License Agreement grants DocuLex a non-exclusive

4    license to "reproduce and distribute copies of the RTK, in executable form only,

5    together with and as an integral and nonseverable part of the products manufactured

6    and licensed by Licensee, as described more fully on Attachment 4 hereto." *Id.* at 1,

7    § 1(c).  Attachment 4 simply states "see attached." *Id.* at 10.  Attached to

8    Attachment 4 is a brochure for DocuLex's PDF.Capture product. *Id.* at 11.

9         Section 8(c) of the License Agreement states that Plaintiff "agrees that the

10   types of products described in Attachment 4, <u>and products similar in nature</u>,

11   including <u>future versions of these product types</u>, are approved by [Plaintiff] for use

12   with the RTK." *Id.* at 3 (emphasis added).

13        **B.     The Parties' Interpretations of the License Agreement**

14                 1.      <u>DocuLex's Interpretation of the License Agreement</u>

15        By its express terms, the License Agreement grants DocuLex the right to use

16   Plaintiff's RTK software in "the <u>types of products</u> described in Attachment 4, <u>and</u>

17   <u>products similar in nature</u>, including <u>future versions of these product types</u>."

18   (emphasis added).  *Id.* at 3, § 8(c).  Although not the subject of this motion,

19   DocuLex believes that the facts will show irrefutably that each of the <u>alleged</u>

20   infringing products easily meets this broad standard. *See* Declaration of David

21   Griffith ("Griffith Decl."), ¶ 3; Bailey Decl., ¶ 5.

22        In addition, the parties' course of dealing throughout the nine years preceding

23   this lawsuit clearly supports DocuLex's interpretation of the License Agreement.

24   Since 1999, DocuLex incorporated Plaintiff's RTK software into many of its

25   products and made no attempt to hide that fact from Plaintiff.  Griffith Decl., ¶ 4;

26   Bailey Decl., ¶ 6.  In addition to submitting monthly royalty reports to Plaintiff

27   which documented its broad use of the RTK software, DocuLex engineers worked

28   closely with Plaintiff's Chief Operations Officer and President of US Operations, Bo

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    Yan.[2]  Griffith Decl., ¶ 5; Bailey Decl., ¶¶ 8-10.  Bo Yan spoke with DocuLex

2    engineers on a regular basis and had a thorough understanding of DocuLex's

3    products and DocuLex's broad use of Plaintiff's RTK software.  Griffith Decl., ¶ 5;

4    Bailey Decl., ¶¶ 8-10.  In 2001, Bo Yan visited DocuLex's offices in Florida, met

5    with DocuLex engineers to discuss incorporating Plaintiff's RTK software into

6    future DocuLex products, and even stayed at the house of DocuLex's Vice President

7    of Research and Development, David Griffith.  Griffith Decl., ¶ 6; Bailey Decl., ¶

8    11.

9         During all of this time, Bo Yan never once informed DocuLex that its broad

10   use of Plaintiff's RTK software exceeded the scope of the License Agreement.

11   Griffith Decl., ¶¶ 7-8; Bailey Decl., ¶¶ 10-12.  To the contrary, Bo Yan actively

12   encouraged DocuLex to incorporate the RTK software into as many products as

13   possible so that Plaintiff would earn additional royalties.  Griffith Decl., ¶ 9; Bailey

14   Decl., ¶ 12.  Bo Yan also consistently assisted DocuLex in fixing any bugs

15   associated with the RTK software as incorporated into many different DocuLex

16   products.  Griffith Decl., ¶ 10; Bailey Decl., ¶ 10.  Although neither company

17   maintained thorough email records from the early years of the License Agreement,

18   some of these exchanges were documented through emails.  *See* Kinsella Decl.,

19   Ex. F (February 15, 2005 email between DocuLex and Bo Yan about a problem with

20   Plaintiff's OCR engine in DocuLex's Goby Monitor product); *see* Kinsella Decl.,

21   Ex. G (November 9, 2005 email between DocuLex and Bo Yan regarding

22   DocuLex's WebSearch products); *see* Kinsella Decl., Ex. H (August 28, 2006 email

23   between DocuLex and Bo Yan about improvements to Plaintiff's RTK software as

24   incorporated into DocuLex's "monitor" product); *see* Kinsella Decl., Ex. I (October

---

26   [2] In his role as Chief Operations Officer and President of US Operations, Bo had full
     authority to act on behalf of Plaintiff.  *See* Wang Depo. at 38:15-19 ("Q: Could Bo
27   enter into contracts on behalf of the company, or sign contracts?  A: Yes.  Q: Could
     Bo modify contracts for the company?  A: Yes.").

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   15, 2006 email between DocuLex and Plaintiff regarding <u>DocuLex's Office Capture</u>

2   <u>product</u>).

3            2.      <u>Plaintiff's Interpretation of the License Agreement</u>

4            Plaintiff, on the other hand, has taken the position that the License Agreement

5   authorized DocuLex to incorporate Plaintiff's RTK software into <u>only a single</u>

6   <u>product</u> – PDF.Capture, because no other product is specifically mentioned in

7   Attachment 4 of the License Agreement.  *See, e.g.*, Complaint, ¶ 70 ("The RSLA

8   authorized Defendant to incorporate Plaintiff's OCR technology into a single OCR

9   desktop product: PDF Capture.").  *See also* Sarmento Depo. at 182:3-4 ("I said that

10  the -- the only licensable product that they had is PDF.Capture. And that's it.").[3]

11           Plaintiff's interpretation of the License Agreement destroys the meaning of

12  Paragraph 8(c), which is clearly contrary to the general tenets of contract

13  interpretation.[4]  Section 8(c) of the License Agreement refers to "the <u>types</u> of

14  products described in Attachment 4," rather than the "product listed in Attachment

15  4."  *See* Kinsella Decl., Ex. A at § 8(c).  In addition, the phrase – "<u>products similar</u>

16  <u>in nature</u>, including <u>future versions of these product types</u>, are approved by

17  [Plaintiff] for use with the RTK" – clearly demonstrates that the License Agreement

18  is not limited solely to the product explicitly listed in Attachment 4.

19

20

21

22
_____

23  [3] Indeed, Plaintiff forced its employee who signed the License Agreement on behalf

24  of Plaintiff, Troy Sarmento, to refund to Plaintiff any commissions he received from
    royalties DocuLex paid to Plaintiff on all products other than PDF.Capture.  *See*

25  Sarmento Depo. at 211:18-25 (Q: … At some point ExperVision discovers that
    OCR-IT was not appropriately licensed under the contract?  A: Therefore, I have to

26  give the money back.  Q: So it forced you to give -- to refund any commissions you
    received?  A: Exactly, except for the ones that were licensed under the contract.").

27  [4] *See, e.g., United States v. 1.377 Acres Of Land*, 352 F. 3d 1259, 1265 (9th Cir.
    2003).

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**C.** **Under Plaintiff's Strained Interpretation of the License Agreement, DocuLex Breaches the Agreement Immediately**

Within the <u>first month</u> after the License Agreement was signed, DocuLex began incorporating Plaintiff's RTK software into <u>multiple products</u> and paying royalty payments accordingly. *See* Griffith Decl., ¶ 4; Bailey Decl., ¶¶ 6-7. In June of 1999, for example, DocuLex incorporated Plaintiff's RTK software into three of its products, OCR-it, PDF-it, and PDF.Capture and paid royalty payments to Plaintiff for this use. Bailey Decl., ¶¶ 6-7. *See also* Kinsella Decl., Ex. B at 1. Under Plaintiff's strained interpretation of the License Agreement, DocuLex began breaching the License Agreement in June of 1999. *See* Sarmento Depo. at 206:5-7 (Q: Okay. So <u>for the last nine years</u>, they've been exceeding the scope – <u>A</u>: That's exactly right.") (emphasis added). *See also* Compl. ¶¶ 24, 30, 70, 99, 106.[5]

**D.** **Plaintiff Has Known Since 1999 That DocuLex Was Allegedly Breaching the License Agreement, Yet Plaintiff Never Objected**

From the time DocuLex entered into the License Agreement with Plaintiff, DocuLex reported its use of the RTK software to Plaintiff each month and paid royalty payments accordingly. Bailey Decl., ¶¶ 6-7; Declaration of Terry Morgan ("Morgan Decl."), ¶ 3; Kinsella Decl., Ex. B. These monthly royalty reports show that DocuLex had incorporated Plaintiff's RTK software into many of its products, not just the PDF.Capture product listed in the License Agreement. *See* Kinsella Decl., Ex. B. Indeed, the <u>very first royalty report</u> DocuLex provided to Plaintiff, <u>dated July 10, 1999</u> (covering 6/1/99 – 6/30/99), states clearly on the top of the page: "*Products Sold Using the Engine [RTK]: Ocr-it, Pdf-it, & Pdf.Capture.*" *Id.*

---

[5] According to Troy Sarmento, the employee who negotiated the License Agreement on behalf of Plaintiff, DocuLex breached the License Agreement even before that, when it did not correctly fill out attachment 4 of the agreement, and that Attachment 4 to the License Agreement was itself a breach of the agreement. *See* Sarmento Depo. at 85:5-9 ("Q:  Okay. So you're telling me that this Attachment 4 -- <u>A</u>: Is a breach.  Q: -- breaches the contract?  <u>A</u>: Yes.").

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  at 1 (emphasis added).  Plaintiff therefore knew from the very first royalty statement

2  it received (in July of 1999) that DocuLex was using Plaintiff's RTK software in a

3  manner which allegedly exceeded the scope of the License Agreement.  *See*

4  Sarmento Depo. at 131:5-10 ("Q:  So correct me if I'm wrong but it appears that this

5  royalty report from June of 1999 shows that DocuLex had incorporated ExperVision

6  RTK software into three products, OCR-it, PDF-it and PDF.Capture.  Is that also

7  your understanding?  A:  It's what it says.").[6]

8       Plaintiff also received numerous emails that put it on notice that DocuLex

9  was incorporating Plaintiff's RTK software into allegedly unauthorized products.

10  For example, on April 11, 2001, seven years before this lawsuit was filed, a

11  DocuLex customer sent an email to Troy Sarmento, Plaintiff's OEM Manager,

12  regarding a problem the customer had encountered with Plaintiff's RTK software as

13  incorporated in DocuLex's PDF-it product.  *See* Kinsella Decl., Ex. J ("Troy,

14  Attached is an example of the problem that we discussed.  We are using the

15  DocuLex PDF-it product (version 4.020) incorporating your toolkit (rtk.ll version

16  6.10.35.0622).") (emphasis added).  Upon receipt of this email, Plaintiff was (again)

17  on notice that DocuLex had allegedly breached the 1999 Agreement.  *See* Sarmento

18  Depo. at 241:17-20 ("Q: … So is it your understanding that this – the PDF product

19  mentioned here in the 2001 e-mail was a breach of that agreement?  A: Yes.")

20  (emphasis added).  Plaintiff confirmed with the DocuLex customer (Ikon) that the

21  product referenced in the email was an allegedly unauthorized product (PDF-it)

22  rather than the authorized product (PDF.Capture).  *See* Sarmento Depo. at 243:6-8

23  ("Number one, we wrote back to IKON and said, first of all, PDF-it, are you sure?

24

25  _____
   [6] Plaintiff even had an employee whose job it was to review the royalty reports
26  received from customers and to ensure those products were authorized products.
   *See* Sarmento Depo. at 30:13-16 ("Their primary role is only to make sure that the
27  product that is listed in the quarterly royalty report matches the product that's being
   licensed in Attachment 4.").
28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  It's not PDF.Capture? Okay?"). *Plaintiff then reviewed the License Agreement and*

2  *confirmed that DocuLex had allegedly exceeded the scope of the agreement by*

3  *incorporating Plaintiff's RTK software into its PDF-it product*. See Sarmento Depo.

4  at 244:12-14 ("Well, we went back and confirmed that PDF[-it] is not a licensable

5  product from DocuLex to use our engine in the first place.") (emphasis added).[7]

6      Despite being on notice that DocuLex had incorporated Plaintiff's RTK

7  software into allegedly unauthorized products since 1999 (and indeed,

8  independently confirming that fact in 2001), Plaintiff *never* informed DocuLex that

9  it had allegedly breached the License Agreement.  Griffith Decl. at ¶ 10.

10      **E.**    **Instead of Objecting to DocuLex's Alleged Breach of the License**

11              **Agreement, Plaintiff Accepted Royalty Payments For the Allegedly**

12              **Unauthorized Use and Renewed the License Agreement Each Year**

13      Not only did Plaintiff do nothing about DocuLex's alleged breach until 2008,

14  Plaintiff accepted royalty payments for the allegedly unauthorized products, and

15  chose to renew the License Agreement with DocuLex each year.  Morgan Decl., ¶ 4.

16  *See also* Sarmento Depo. at 102:18-20 ("Q: Did you make the decision each year to

17  allow this DocuLex contract to automatically renew?  A: Yes, I did.").

18      From 1999 through 2008, DocuLex used Plaintiff's RTK software in its PDF

19  product line and DocuLex reported its use of the RTK software in over 208 separate

20  Royalty Reports it sent to Plaintiff.[8]  *See* Morgan Decl., ¶ 5; Kinsella Decl., Ex. B.

---

22  [7] Once Plaintiff "confirmed" that the DocuLex PDF-it product constituted an alleged
breach of the License Agreement, Plaintiff informed the DocuLex customer that it
23  had purchased an allegedly unauthorized product and convinced the customer to
switch from DocuLex to Plaintiff for its future document management needs. *See*
24  Sarmento Depo. at 244:14-245:2 (A: ... So what did we do?  Q: That's what I want
to know.  A: Eliminated and disqualified DocuLex and that product and took IKON
25  as our own ...  Q: And you did all of that -- ExperVision did all of that in 2001?  A:
We did all of that through 2001, that's right, for IKON.  Q: Okay.  A: And they got
26  rid of -- they dropped DocuLex like a bad habit.").

27  [8] Indeed, DocuLex actually overpaid royalties to Plaintiff.  DocuLex paid royalty
fees to Plaintiff for the use of the RTK software in 3,902 products, while DocuLex's
28  internal audit report demonstrates that DocuLex actually sold only 3,778 products
(footnote continued)

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Despite being on notice since 1999 that DocuLex had allegedly exceeded the scope

2   of the license, Plaintiff accepted royalty payments for every product through 2008,

3   whether the product was allegedly authorized or not.  *See* Kinsella Decl., Ex. B;

4   Morgan Decl., ¶¶ 4-5.

5           **F.     In Late 2007, Bo Yan Resigns For Personal Reasons**

6               In late 2007, shortly before Plaintiff first objected to DocuLex's broad use of

7   the RTK software, Bo Yan, Plaintiff's Chief Operations Officer and President of US

8   Operations, resigned for purported "family reasons" and returned to China.  *See*

9   Wang Depo. at 221:15-22 (Q: Okay. What were Bo Yan's personal reasons for

10  resigning?  A: Family reason.  Q: Did he tell you – A: I cannot tell exactly.  Q: Do

11  you know the reasons exactly?  A: I don't know exact reason, so I cannot tell.").

12  Although they had worked together closely for nine years, Bo Yan never informed

13  DocuLex of his resignation.[9]  Griffith Decl., ¶ 11; Bailey Decl. ¶ 14.

14          **G.     In February 2008, After Nine Years of Cooperation Between the**

15                  **Parties, Plaintiff Attempts to Renegotiate the Agreement**

16              In early 2008, after almost nine years of close cooperation by the parties (May

17  1999 - Jan 2008), Plaintiff attempted to renegotiate the License Agreement under

18  more favorable terms.  On February 22, 2008, Plaintiff sent DocuLex an email

19  stating that the current term of the License Agreement was set to expire in a few

20  months and that Plaintiff was in the process of "<u>reclaiming</u> the pricing policies and

21  <u>renegotiating</u> the terms of each RTK Software License Agreement (RSLA) with our

22  clients."  Kinsella Decl., Ex. L (emphasis added).  The parties then began

23  _____

24  incorporating the RTK software.  *See* Kinsella Decl., Ex. K.

25  [9] Although Bo Yan served as Plaintiff's Chief Operations Officer and President of
    US Operations during the entire relevant time period, served as Plaintiff's main

26  contact with DocuLex, and maintains an ownership interest in Plaintiff, Plaintiff has
    not produced Bo Yan for deposition or offered to arrange his deposition.  Kinsella

27  Decl., Ex. C.  Plaintiff has stated that Bo Yan currently resides in China and
    therefore cannot be subpoenaed to appear for deposition.

28

1   negotiating via email the terms of a new license agreement.  Kinsella Decl., Exs. M,

2   N, O, P and Q.  These emails make no claim that DocuLex had exceeded the scope

3   of the License Agreement, even though, as Plaintiff's emails stated, "[w]e know

4   DocuLex has been using [Plaintiff's] OCR engine in nearly half of your products."

5   Kinsella Decl., Ex. O.  (emphasis added).

6        **H.**    **In May 2008, After the Negotiations For a New Agreement Hit a**

7                    **Standstill, Plaintiff Asserts For the First Time that DocuLex**

8                    **Breached the 1999 Agreement**

9           Only after the negotiations for a new license agreement fell apart did Plaintiff

10  first assert that DocuLex had allegedly breached the License Agreement.  On May 9,

11  2008, as a result in the breakdown on negotiations over the new agreement, Plaintiff

12  wrote:  "The latest RSLA signed on May 24th, 1999 authorizes DocuLex to

13  distribute your Application software, PDF Capture and PDF Capture only.  Now as

14  you have told us and we have found through research, you have integrated RTK into

15  about 10 other software products and distributed them in the market, which

16  obviously breaches the contract."  Kinsella Decl., Ex. R (emphasis added).

17  Plaintiff's emails go on to accuse DocuLex of "one of the most serious crimes of all

18  times" and threaten civil and criminal actions against DocuLex and its officers.

19  Kinsella Decl., Ex. S.

20  **III.**   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT**

21          The standards governing motions for summary judgment are familiar.

22  Summary judgment is appropriate "if the pleadings, depositions, answers to

23  interrogatories, and admissions on file, together with affidavits, if any, show that

24  there is no genuine issue as to any material fact and that the moving party is entitled

25  to judgment as a matter of law."  *Intelligraphics, Inc. v. Marvell Semiconductor,*

26  *Inc.*, 2009 WL 330259 (N.D.Cal. 2009) (quoting F.R.C.P. 56(c)).  Because the

27  undisputed facts demonstrate that all of Plaintiff's claims are entirely barred,

28  summary judgment should be granted.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

**A.    All of Plaintiff's Claims are Time-Barred**

2   It is undisputed that Plaintiff knew DocuLex had incorporated Plaintiff's RTK

3   software into allegedly unauthorized products in 1999 (and indeed, Plaintiff testified

4   that it confirmed that fact in 2001), yet Plaintiff did nothing about it for nine years.

5   Instead of suing DocuLex for its alleged breach of the License Agreement, Plaintiff

6   chose to renew the License Agreement with DocuLex each year.  Plaintiff's claims,

7   filed in August of 2008, are thus barred by the statute of limitations and the doctrine

8   of laches.

9   1.    Plaintiff's Claims are Barred by the Statute of Limitations

10   Plaintiff's copyright claims (Counts 1-8) are governed by a three-year statute

11   of limitations. *See* 17 U.S.C. § 507(b) (2008).

12   Plaintiff's breach of contract claim (Count 9) is governed by a four-year

13   statute of limitations.    See CAL. CODE CIV. PROC. §§ 337, 339(1) (2008).

14   Plaintiff's trademark claims (Counts 10-12) are governed by a four-year

15   statute of limitations. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997

16   n.11 (9th Cir. 2006) (*per curiam*) ("The California statute of limitations for … state

17   trademark infringement and/or dilution claims … is four years.") (citing CAL.

18   CODE CIV. PROC. §§ 337, 343).[10]

19   Plaintiff's claims for unfair competition (Counts 13 and 14) are governed by a

20   four-year statute of limitations.[11]  *See* CAL. BUS & PROF. CODE, § 17208; *see*

21   *Broberg v. Guardian Life Ins. Co. of America*, 171 Cal.App.4th 912, 920 (2009).

22

---

23   [10] Although the Lanham Act does not have a statute of limitations, Plaintiff's federal
     trademark claims are governed by the four-year statute for state trademark claims.
24   *See Miller*, 454 F.3d at 997 n.11 ("The Lanham Act does not contain a statute of
     limitations, and therefore Lanham Act claims are governed by the analogous state
25   statute of limitations, which in this case are state trademark infringement and
     dilution claims under CAL. BUS & PROF. CODE §§ 14330 and 14335.").

26   [11] To the extent Plaintiff's cause of action for "Federal Unfair Competition" is
27   construed as a trademark cause of action rather than an unfair competition claim, it
     would be governed by the four-year statute of limitations along with Plaintiff's
28   trademark claims (Counts 10-12).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Plaintiff's claim for conversion (Count 15) is governed by a three-year statute

2   of limitations. *See* CAL. CODE CIV. PROC. § 338(c); *AmerUS Life Ins. Co. v.*

3   *Bank of America, N.A.*, 143 Cal.App.4th 631, 639 (2006).

4   Plaintiff's interference claims (Counts 16-19) are governed by a two-year

5   statute of limitations.  See CAL. CODE CIV. PROC. § 339; *Knoell v. Petrovich*, 76

6   Cal.App.4th 164, 168 (1999) ("[C]auses of action for interference with contractual

7   relations and interference prospective business advantage were barred by the two-

8   year statute of limitations.").

9   Plaintiff's claim for unjust enrichment (Count 20) is governed by a three-year

10   statute of limitations. *See* CAL. CODE CIV. PROC. § 338(d); *F.D.I.C. v. Dintino*,

11   167 Cal.App.4th 333, 346 (2008) ("The three-year statute of limitations applies to

12   [plaintiff's] unjust enrichment cause of action.").

13   Plaintiff's claim for accounting (Count 21) is governed by a four-year statute

14   of limitations. *See* CAL. CODE CIV. PROC. §§ 337, 339(1) (2008).[12]

15   Because Plaintiff has been on notice of its claims since 1999 – <u>nine years</u>

16   <u>before filing suit</u> – its claims are each barred by the applicable statute of limitations.

17   Plaintiff claims that the License Agreement authorized DocuLex to incorporate

18   Plaintiff's RTK software into <u>only a single product</u> – PDF.Capture, and that

19   DocuLex's use of the RTK software <u>in any other product constitutes a breach</u> of the

20   License Agreement.[13]  Any alleged breach thus occurred in 1999 when DocuLex

21

22

---

23   [12] Plaintiff's claim for an accounting is governed by this statute because Plaintiff's
      alleged right to an accounting depends entirely on the enforceability of the

24   agreement. *See Jefferson v. French Co.*, 54 Cal.2d 717, 719 (1960); 3 B.E.
      WITKIN, CALIFORNIA PROCEDURE § 623 (4th ed. 1997).

25   [13] *See, e.g.*, Complaint, ¶ 70 ("The RSLA authorized Defendant to incorporate
      Plaintiff's OCR technology into a single OCR desktop product: PDF Capture."). *See*

26   *also* Sarmento Depo. at 182:3-4 ("I said that the -- the only licensable product that
      they had is PDF.Capture. And that's it."); *id.* at 206:5-7 (Q: Okay. So <u>for the last</u>

27   <u>nine years</u>, they've been <u>exceeding the scope</u> – A: That's exactly right.") (emphasis
      added); Compl. ¶¶ 24, 30, 70, 99, 106.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  incorporated Plaintiff's RTK software into three separate products, OCR-it, PDF-it,

2  and PDF.Capture.  *See* Ex. B.

3      More importantly, ***DocuLex informed Plaintiff of its allegedly unauthorized***

4  ***use of the RTK software in 1999***.  *See* Ex. B.  *See also* Sarmento Depo. at 131:5-10

5  ("Q:  So correct me if I'm wrong but it appears that this royalty report from June of

6  1999 shows that DocuLex had incorporated ExperVision RTK software into three

7  products, OCR-it, PDF-it and PDF.Capture.  Is that also your understanding?  A:

8  It's what it says.").[14]

9      There is also no question that Plaintiff had ***actual knowledge*** of any alleged

10  breach in 2001 when it received an email from a DocuLex customer regarding the

11  use of the RTK software in an allegedly unauthorized product.  *See* Kinsella Decl.,

12  Ex. J (emphasis added).  *See also* Sarmento Depo. at 241:17-20 ("Q: … So is it

13  your understanding that this – the PDF product mentioned here in the 2001 e-mail

14  was a breach of that agreement?  A: Yes.") (emphasis added).  Upon receipt of this

15  2001 email, Plaintiff went back and reviewed the License Agreement and confirmed

16  that the product mentioned in the 2001 email constituted an alleged breach of the

17  License Agreement.  *See* Sarmento Depo. at 244:12-14 ("Well, **we went back and**

18  **confirmed that PDF[-it] is not a licensable product from DocuLex to use our**

19  **engine in the first place**.") (emphasis added).

20      Because Plaintiff has been on notice of its claims since 1999 (or, at the latest,

21  2001), each of its claims are barred by the applicable statutes of limitations.

22

23

24

25  [14] Plaintiff even had an employee whose job it was to review the royalty reports

26  received from customers and to ensure those products were authorized products.
*See* Sarmento Depo. at 30:13-16 ("Their primary role is only to make sure that the

27  product that is listed in the quarterly royalty report matches the product that's being
licensed in Attachment 4.").

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

2.    Plaintiff's Copyright and Trademark Claims are Barred by the Doctrine of Laches

Plaintiff's copyright and trademark claims (Counts 1-8, 10-13) are barred in their entirety by the doctrine of laches.  "Laches is an equitable time limitation on a party's right to bring suit." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000).  "To demonstrate laches, the 'defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001) (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000).  Where the conduct in question occurred more than three years prior to the filing of the Complaint, the court <u>presumes</u> that both elements of laches are met; i.e., that (1) plaintiff's delay in filing suit was unreasonable; and (2) defendant would suffer prejudice caused by the delay if the suit were allowed to continue.  *See, e.g., Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002).  Moreover, "the presumption of laches is triggered if <u>any</u> part of the claimed wrongful conduct occurred outside the limitations period.  <u>To hold otherwise would 'effectively swallow the rule of laches, and render it a spineless defense.'</u>"  *Id.* at 837 (emphasis added) (quoting *Danjaq*, 263 F.3d at 953).  Here, laches is presumed because the conduct at issue first occurred in 1999, <u>nine years</u> before Plaintiff filed suit.

In addition, both elements of laches are easily established.  First, Plaintiff's delay of nine years is clearly unreasonable.  *See, e.g., Danjaq*, 263 F.3d at 952 ("[T]he relevant delay is the period of time from when the plaintiff knew (or should have known) of the allegedly infringing conduct.").  From the time the License Agreement was signed in 1999, Plaintiff knew that DocuLex was using Plaintiff's RTK software in products other than PDF.Capture.  Indeed, the first royalty report DocuLex provided to Plaintiff, dated July 10, 1999 (covering 6/1/99 – 6/30/99), states very clearly on the top of the page: "Products Sold Using the Engine [RTK]: Ocr-it, Pdf-it, & Pdf.Capture." *See* Ex. B.  Moreover, in 2001, Plaintiff "confirmed"

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   that DocuLex had incorporated Plaintiff's RTK software into its PDF-it product, an

2   allegedly unauthorized product.  *See* Sarmento Depo. at 244:12-14 ("Well, we went

3   back and <u>confirmed that PDF[-it] is not a licensable product from DocuLex to use</u>

4   <u>our engine in the first place</u>.")

5          Second, DocuLex has suffered prejudice as a result of Plaintiff's delay.  Had

6   Plaintiff informed DocuLex of its view regarding the limited scope of the License

7   Agreement in 1999, DocuLex <u>would not have spent time and money to develop</u>

8   <u>future products which incorporated Plaintiff's RTK software</u>.  Griffith Decl. __.

9   Because DocuLex developed its post-1999 products in reliance on its presumed

10  right to incorporate Plaintiff's RTK software into a broad range of products,

11  DocuLex has been prejudiced.  *See, e.g., Miller*, 454 F.3d at 999 ("A defendant may

12  establish prejudice by showing that during the delay, it invested money to expand its

13  business or entered into business transactions based on his presumed rights.").  *See*

14  *also* Griffith Decl., ¶ 12; Bailey Decl., ¶ 15.

15         Indeed, DocuLex could have easily switched to another OCR provider who

16  would have provided DocuLex with substantially similar OCR software for use in

17  <u>all</u> of its products for a substantially similar price.  Griffith Decl., ¶¶ 12-13; Bailey

18  Decl., ¶¶ 15-16.  As the Ninth Circuit has recognized, a defendant may "demonstrate

19  prejudice by showing that it took actions or suffered consequences that it would not

20  have, had plaintiff brought suit promptly."  *Danjaq*, 263 F.3d at 955.  *See also Lotus*

21  *Dev. Corp. v. Borland Int'l, Inc.*, 831 F.Supp. 202, 220 (D.Mass. 1993) (holding that

22  one form of prejudice is "continuing investments and outlays by the alleged

23  infringer in connection with the operation of its business.").  For example, in *Danjaq*

24  *LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001), the Ninth Circuit held:

25             It must be obvious to every one familiar with equitable principles
              that it is inequitable for the owner of a copyright, with full notice
26             of an intended infringement, to stand inactive while the proposed
              infringer spends large sums of money in its exploitation, and to
27             intervene only when his speculation has proved a success.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   *Danjaq LLC*, 263 F.3d at 951 (quoting *Haas v. Leo Feist, Inc.*, 234 F. 105, 108

2   (S.D.N.Y. 1916).[15]   In addition, DocuLex also paid almost $200,000 in royalties to

3   Plaintiff believing they were not in breach of the License Agreement.  Morgan

4   Decl., ¶ 7; Kinsella Decl., Exs. B, K.

5        Because Plaintiff waited <u>nine years</u> from the date it first learned of DocuLex's

6   allegedly unauthorized use of the RTK software before filing suit, during which

7   time DocuLex further incorporated the RTK software into a number of different

8   products, Plaintiff's copyright and trademark claims are barred by the doctrine of

9   laches.[16]

10        **B.    Plaintiff's Lawsuit is Barred by the Doctrine of Implied License**

11        "An implied license may be granted orally or be implied from conduct."

12   *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110,

13   1114 (9th Cir. 2000).  An implied license is created when the copyright holder

14   engages in conduct (including silence) from which the other party may infer consent

15   to use the copyrighted work.  *See Field v. Google Inc.*, 412 F.Supp.2d 1106, 1116

16   (D.Nev. 2006) ("An implied license can be found where the copyright holder

17   engages in conduct from which the other party may properly infer that the owner

18   consents to his use.") (internal citations omitted).  Where a copyright holder has

19   _____

20   [15] Evidentiary prejudice exists as well because neither party has thorough records
from 2001, and because the key witness – Plaintiff's COO and President of US

21   Operations, Bo Yan, has left the company and is unavailable for deposition.  *See
Danjaq LLC*, 263 F.3d at 955 ("Evidentiary prejudice includes such things as lost,

22   stale, or degraded evidence, or witnesses whose memories have faded or who have
died.").

23   [16] All of Plaintiff's claims, even those which could be said to have accrued in the last
three years, are barred by laches.  *See, e.g., Danjaq*, 263 F.3d at 953-54 (holding

24   that the doctrine of laches may bar a statutorily timely claim because "[w]ithout the
availability of the application of laches to a claim arising from a continuing wrong, a

25   party could, theoretically, delay filing suit indefinitely") (quoting *Hot Wax, Inc. v.
Turtle Wax, Inc.*, 191 F.3d 813, 821-22 (7th Cir. 1999).  *See also Jarrow Formulas,*

26   *Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) ("For the purpose of
laches, the limitations period may expire even though part of the defendant's

27   conduct occurred within the limitations period."); *Kling v. Hallmark Cards, Inc.*,
225 F.3d 1030, 1036 (9th Cir. 2000) (same).

28

1  notice of another's unauthorized use of the copyrighted material and does not object,

2  an implied license is created.  *See id.* ("Consent to use the copyrighted work need

3  not be manifested verbally and may be inferred based on silence where the

4  copyright holder knows of the use and encourages it.").  *See also Keane Dealer*

5  *Servs., Inc. v. Harts*, 968 F.Supp. 944, 947 (S.D.N.Y. 1997) ("[C]onsent given in the

6  form of mere permission or lack of objection is also equivalent to a nonexclusive

7  license").

8  Here, Plaintiff's knowledge of, and acquiescence to, DocuLex's allegedly

9  unauthorized use of the RTK software constitutes an implied license for continued

10  use.  As discussed in detail above, Plaintiff has been aware of DocuLex's allegedly

11  unauthorized use of the RTK software since 1999, and yet Plaintiff never once

12  informed DocuLex that its use was unauthorized.  As was the case in *Field v.*

13  *Google Inc.*, 412 F.Supp.2d 1106, 1116 (D.Nev. 2006) and *Keane Dealer Servs.,*

14  *Inc. v. Harts*, 968 F.Supp. 944, 947 (S.D.N.Y. 1997), Plaintiff's acquiescence to

15  DocuLex's broad use of the RTK software for nine years created an implied license

16  for that use.

17  Furthermore, Plaintiff not only sat silent as DocuLex incorporated the RTK

18  software into allegedly unauthorized products, Plaintiff's Chief Operations Officer

19  and President of US Operations, Bo Yan, actively encouraged DocuLex to

20  incorporate the RTK software into as many products as possible so that Plaintiff

21  would earn additional royalties.  Griffith Decl., ¶ 7; Bailey Decl., ¶ 12.  Without

22  question, Bo Yan's conduct created an implied license for DocuLex's use of the

23  RTK software.

24  Finally, by accepting royalty payments from DocuLex for each such allegedly

25  unauthorized use of the RTK software, an implied license to continue that use was

26  created.  *See UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446

27  F.Supp.2d 1164, 1177-78 (E.D.Cal. 2006) ("Such acceptance of [royalty] payments

28  gives rise to an implied license as a matter of law.").  Because "[t]he existence of a

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   license creates an affirmative defense to a claim of copyright infringement,"

2   Plaintiff's claims should be dismissed. *Worldwide Church of God*, 227 F.3d at 1114.

3   **C.    Plaintiff's State Law Claims are Preempted under the Copyright**

4   **Act and the Lanham Act**

5   Plaintiff's claims for breach of contract (Count 10), unfair competition claims

6   (Counts 12-14), conversion (Count 15), interference claims (Counts 16-19), unjust

7   enrichment (Count 20), and accounting (Count 21) are all preempted.

8   "A state law claim is preempted by the federal Copyright Act if: (1) the work

9   involved falls within the 'subject matter' of the Copyright Act; and (2) the rights that

10  a plaintiff asserts under state law are 'rights that are equivalent' to those protected by

11  the Copyright Act." *Capcom Co., LTD v. MKR Group, Inc.*, 2008 WL 4661479,

12  *14 (N.D.Cal. 2008) (quoting *Kodadek v. MTV Networks*, 152 F.3d 1209, 1212 (9th

13  Cir. 1998)).

14  Here, the work involved, Plaintiff's RTK software, falls within the subject of

15  the Copyright Act.  Second, Plaintiff's state law claims all seek to protect Plaintiff's

16  right to control the use of its software – the identical right protected by Copyright

17  Act. *See Kodadek*, 152 F.3d at 1213 (holding state law claims based on defendant's

18  publishing and placing on market copyrighted material were preempted).  "To

19  survive preemption under the second prong of the test, 'the state cause of action

20  must protect rights which are qualitatively different from copyright rights.'" *Design*

21  *Art v. N.F.L. Properties*, 2000 WL 33151646, *3 (S.D.Cal. 2000) (quoting *Del*

22  *Madera Prop. v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987)).

23  Here, Plaintiff's state law claims are all based on the same rights, and the

24  same alleged conduct – that DocuLex incorporated Plaintiff's copyrighted software

25  into its products and sold those products without Plaintiff's permission. *See, e.g.,*

26  *Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1057-62 (C.D.Cal. 2000)

27  (Copyright Act preempts a state breach of contract claim); *Morris v. Atchity*, 2009

28  WL 463971, *8 (C.D.Cal. 2009) (same); *Kodadek*, 152 F.3d at 1213 (section 17200

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  claim is preempted by copyright infringement claim); *Penpower Technology Ltd. v.*

2  *S.P.C. Technology*, 2008 WL 2468486, *6 (N.D.Cal. 2008) (same); *Design Art*,

3  2000 WL 33151646, *3 (unjust enrichment claim preempted by Copyright Act);

4  *Aagard v. Palomar Builders, Inc.*, 344 F.Supp.2d 1211, 1219 (E.D.Cal. 2004) (claim

5  for interference preempted by Copyright Act).  Accordingly, Plaintiff's state law

6  claims are all preempted.

7       **D.**    **Plaintiff's Interference Claims Fail Because A Party and its Agents**

8               **Cannot Be Held Liable for Interfering With its Own Contract or**

9               **Prospective Economic Advantages**

10      Plaintiff's claims for Intentional Interference with Prospective Economic

11  Advantage, Negligent Interference with Prospective Economic Advantage,

12  Intentional Interference with Contractual Relations, and Negligent Interference with

13  Contractual Relations (the "Interference Claims") fail to state a cause of action as a

14  matter of law.  These causes of action all require that the interference (whether

15  negligent or intentional) be done by a third party, *i.e.*, no Interference Claim can be

16  stated against a party to a contract with Plaintiffs.  *Applied Equip. Corp. v. Litton*

17  *Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("the tort cause of action for

18  interference with contract does not lie against a party to the contract"); *Korea*

19  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003) (interference

20  with prospective economic advantage requires "an economic relationship between

21  the plaintiff and *some third party*, with the probability of future economic benefit to

22  the plaintiff"); *North American Chemical Co. v. Superior Court*, 59 Cal.App.4th

23  764, 786 (1997) (negligent interference with prospective economic advantage

24  requires that "an economic relationship existed between the plaintiff *and a third*

25  *party*").  Because DocuLex is a party to the License Agreement, this claim must be

26  dismissed.

27      It is equally well-settled that agents and/or employees of the contracting party

28  likewise cannot be held liable for interfering with their principal's contract, or

10325-00002/46570.1

19

CV 08 3875 JCS

MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    prospective economic advantage, with a third party.  *See Reynolds v. Bement*, 36

2    Cal. 4th 1075, 1087 (2005) (sustaining demurrer without leave to amend because

3    agent of party to a contract cannot be held liable for inducing breach of the

4    contract); *Shoemaker v. Myers*, 52 Cal. 3d 1, 24-25 (1990) (same); *Jenkins v.*

5    *Inglewood Unified School Dist.*, 34 Cal. App. 4th 1388, 1395 (1995) ("Since the

6    named defendants were agents or employees of the contracting party they cannot be

7    held liable for contract interference.").  Because the individual defendants were, at

8    all relevant times, agents or employees of DocuLex, Plaintiff's Interference Claims

9    against the individual defendants must be dismissed as well.

10        **E.      Plaintiff Has Suffered No Damages**

11        The undisputed evidence shows that Plaintiff received royalty payments for

12   each and every sale of a DocuLex product which incorporated Plaintiff's RTK

13   software.  Indeed, during the term of the License Agreement (1999-2008) DocuLex

14   actually <u>overpaid royalties to Plaintiff</u>.  DocuLex paid royalty fees to Plaintiff for

15   the use of the RTK software in 3,902 products, while DocuLex's internal audit

16   report demonstrates that DocuLex actually sold only 3,778 products incorporating

17   the RTK software.  Morgan Decl., ¶ 7;  Kinsella Decl., Ex. K.  Accordingly, the

18   undisputed facts show that Plaintiff has suffered no damages as a result of the

19   alleged violations.

20        **F.      Plaintiff's Claim For an Injunction Should be Dismissed**

21        Because the undisputed facts demonstrate that the rest of Plaintiff's claims

22   (Counts 1-21) must be dismissed, Plaintiff's claim for an injunction must be

23   dismissed as well.  In addition, Plaintiff's claim for an injunction is moot because

24   DocuLex no longer incorporates Plaintiff's RTK software into its products.  *See*

25   Griffith Decl., ¶ 14; Bailey Decl., ¶¶ 17-18; Strang Decl., ¶¶ 10-11.

26   / / /

27   / / /

28   / / /

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant its motion for summary judgment.

DATED:  July ___, 2009

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By: _____
Dale F. Kinsella
Attorneys for Defendants and Counterplaintiffs, DOCULEX, INC., CARL STRANG, TERRY MORGAN, DAVID BAILEY, JIM GREBEY, and DAVID GRIFFITH

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850