KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
DALE F. KINSELLA (SBN 063370)
  dkinsella@kwikalaw.com
JEREMIAH T. REYNOLDS (SBN 223554)
  jreynolds@kwikalaw.com
DAVID W. SWIFT (SBN 235033)
  dswift@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendants and
Counterplaintiffs, DOCULEX, INC.,
CARL STRANG, TERRY MORGAN,
DAVID BAILEY, JIM GREBEY, and
DAVID GRIFFITH

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| EXPEREXCHANGE, INC., a California Corporation, DBA: EXPERVISION, <br><br> Plaintiff, <br><br> vs. <br><br> DOCULEX, INC., a Florida corporation; CARL STRANG, an individual; TERRY MORGAN, an individual; DAVID BAILEY, an individual; JIM GREBEY, an individual; DAVID GRIFFITH, an individual, <br><br> Defendants. <br><br> AND RELATED CROSS CLAIM | CASE NO. CV 08 3875 JCS <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Supporting Declarations of Dale Kinsella; Carl Strang, III; Jim Grebey and Thomas Rump filed concurrently herewith] <br><br> Date: October 2, 2009 <br> Time: 9:30 A.M. <br> Dept.: A, 15th Floor <br> Before: Hon. Magistrate Judge Spero |

10325.00002/46906.1

MOTION FOR SUMMARY ADJUDICATION

CV 08 3875 JCS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that on October 2, 2009 at 9:30 a.m., Defendants and Counter-Claimants DocuLex, Inc., Carl Strang, Terry Morgan, David Bailey, David Griffith, and Jim Grebey (collectively "DocuLex") will move, and hereby do move, for summary adjudication on all of Plaintiff ExperExchange, Inc.'s ("Plaintiff") claims relating to DocuLex's Discovery Cracker product. The motion will be heard in Courtroom A at 450 Golden Gate Avenue, San Francisco, California.

  This motion is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 of the Northern District of California. It is made on the grounds that the undisputed facts demonstrate that DocuLex's Discovery Cracker product did not incorporate Plaintiff's software at issue in this lawsuit and is therefore not an infringing product. Summary Adjudication should therefore be granted on this issue.

  The motion is also made on the grounds that Plaintiff has presented no evidence which could support its claim that the Discovery Cracker product is a contributory infringing product. Summary Adjudication should therefore be granted on this issue.

  In addition, Plaintiff has presented no evidence which could support any of its claim that are based on the Discovery Cracker product. Summary Adjudication should therefore be granted on this issue.

//
//
//
//
//
//

1  In support of its motion, DocuLex hereby submits its Memorandum of Points
2  and Authorities, and the Declarations of Dale Kinsella; Carl Strang, III; Jim Grebey;
3  and Thomas Rump.

4

5  DATED: August 7, 2009            KINSELLA WEITZMAN ISER KUMP &
6                                    ALDISERT LLP

7
8                                    By: _____
                                          Dale F. Kinsella
9                                         Attorneys for Defendants and
                                          Counterplaintiffs, DOCULEX, INC.,
10                                        CARL STRANG, TERRY MORGAN,
                                          DAVID BAILEY, JIM GREBEY, and
11                                        DAVID GRIFFITH
12

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF UNDISPUTED FACTS ..............................................................1

    A. DocuLex Enters Into a License Agreement With Plaintiff in 1999 ........1

    B. In 2003, DocuLex Acquires the Discovery Cracker Product ..................2

    C. From 2003 to 2007 DocuLex Sells the Discovery Cracker Product ......2

    D. In 2007, DocuLex Enters Into Negotiations With Plaintiff To License the RTK Software For Use in the Discovery Cracker Product ........................................................................................................3

    E. In August 2007, DocuLex Sells Its Litigation Division (Including the Discovery Cracker Product) to CT Summation ................................4

    F. CT Summation Independently Negotiates License Agreement with Plaintiff to Add an OCR Engine to the Discovery Cracker Product ........................................................................................................5

    G. In February 2008, CT Summation Launches Discovery Cracker 5.1, Which (For the First Time) Includes an OCR Engine ....................5

    H. In November 2008, Plaintiff Files Suit Against DocuLex Claiming *Inter Alia* that DocuLex's Discovery Cracker Product Had an OCR Engine and that Plaintiff was Entitled to a Percentage of the Acquisition Price CT Summation Paid to DocuLex ........................................................................................................6

    I. Plaintiff Finally Concedes that the Discovery Cracker Product Did Not Incorporate its RTK Software, Yet Plaintiff Continues to Claim Millions of Dollars in Damages Related to the Discovery Cracker Product Nevertheless ...................................................................7

III. DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION ON ALL OF PLAINTIFF'S CLAIMS RELATING TO THE DISCOVERY CRACKER PRODUCT ..............................................................8

    A. The Discovery Cracker Product Cannot be a Direct Infringing Product Because it Does Not Incorporate Plaintiff's RTK Software ........................................................................................................8

    B. Plaintiff Has Presented No Evidence To Support its Claim that the Discovery Cracker Product is a Contributory Infringing Product ........................................................................................................9

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1. Plaintiff Has Presented No Evidence of a Third Party's Infringing Activity ..........9

2. Plaintiff Has Presented No Evidence That DocuLex Knew of the Third Party's Infringing Activity (to the Extent There Ever Was Any Infringing Activity) ..........10

3. Plaintiff Has Presented No Evidence That DocuLex Induced, Caused, or Materially Contributed to the Third Party's Infringing Activity (to the Extent There Ever Was Any Infringing Activity) ..........11

C. To the Extent Any of Plaintiff's Remaining Claims are Based on the Discovery Cracker Product, Plaintiff Has Presented No Evidence to Support Those Claims ..........12

IV. CONCLUSION ..........12

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

Page

**CASES**

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................................... 8

*Dream Games of Arizona, Inc. v. PC Onsite,*
  561 F.3d 983 (9th Cir. 2009) ...................................................................................... 9

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.,*
  2009 WL 330259 (N.D.Cal. 2009) ............................................................................. 8

*Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.,*
  545 U.S. 913 (2005) .............................................................................................. 11, 12

*Microsoft Corp. v. Suncrest Enterprise,*
  2006 WL 1329881, *3 (N.D.Cal. 2006) ...................................................................... 8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
  494 F.3d 788 (9th Cir. 2007) ................................................................................. 9, 11

*Sega Enterprises Ltd. v. MAPHIA,*
  948 F.Supp. 923 (N.D.Cal. 1996) ............................................................................... 8

*UMG Recordings, Inc. v. Veoh Networks Inc.,*
  2009 WL 334022, *6 (C.D.Cal. 2009) ...................................................................... 11

**RULES**

F.R.C.P. 56(c) ..................................................................................................................... 8

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff ExperExchange, Inc. ("Plaintiff") alleges that Defendants DocuLex, Inc., Carl Strang, Terry Morgan, David Bailey, David Griffith, and Jim Grebey (collectively "DocuLex") have infringed Plaintiff's copyrights and trademarks by using Plaintiff's RTK software in various products without proper authorization. Much of Plaintiff's alleged damages, however, are premised on a DocuLex product which <u>does not utilize Plaintiff's software</u>. Even though Plaintiff now <u>concedes that the DocuLex Discovery Cracker product does not incorporate Plaintiff's RTK software</u>, Plaintiff nevertheless maintains that it is entitled to millions of dollars in damages relating to DocuLex's sale of this product. Because Plaintiff has presented no evidence which could support its claims regarding the Discovery Cracker product, summary adjudication should be granted on this issue.

## II. STATEMENT OF UNDISPUTED FACTS

For purposes of brevity and economy, DocuLex hereby incorporates the entire background and statement of facts from its Motion for Summary Judgment, filed on July 23, 2009. This Statement of Undisputed Facts shall solely discuss Plaintiff's claims as they relate to DocuLex's Discovery Cracker product.

### A. DocuLex Enters Into a License Agreement With Plaintiff in 1999

In May of 1999, DocuLex entered into a Recognition Toolkit Software License Agreement (the "License Agreement") with Plaintiff, which granted DocuLex a non-exclusive license to use Plaintiff's RTK software in its products in exchange for a royalty payment of $50 per product sold. *See* Compl. ¶ 14. *See also* Declaration of Dale Kinsella ("Kinsella Decl."), Ex. A. By its terms, the License Agreement could be terminated by either party on a yearly basis or, if they chose not to terminate, it would be renewed automatically in May of each year. *See* Kinsella Decl., Ex. A at § 5(b).

1    Section 1(c) of the License Agreement grants DocuLex a non-exclusive
2 license to "reproduce and distribute copies of the RTK, in executable form only,
3 together with and as an integral and nonseverable part of the products manufactured
4 and licensed by Licensee, as described more fully on Attachment 4 hereto." *Id.* at 1,
5 § 1(c). Attachment 4 simply states "see attached." *Id.* at 10. Attached to
6 Attachment 4 is a brochure for DocuLex's PDF.Capture product. *Id.* at 11.
7    Section 8(c) of the License Agreement states that Plaintiff "agrees that the
8 <u>types</u> of products described in Attachment 4, <u>and products similar in nature,</u>
9 including <u>future versions of these product types</u>, are approved by [Plaintiff] for use
10 with the RTK." *Id.* at 3 (emphasis added).

11    **B.    In 2003, DocuLex Acquires the Discovery Cracker Product**

12    In 2003, DocuLex acquired the Discovery Cracker product from a company
13 called Advocate Solutions, Inc. based in Chicago. Declaration of Carl Strang, III
14 ("Strang Decl."), ¶ 2. The Discovery Cracker product processes data (such as emails
15 and Microsoft Word documents), extracts meta data, and converts the files to
16 industry standard image files. *Id.*, ¶ 3. *See also* Declaration of Jim Grebey
17 ("Grebey Decl."), ¶ 2. The Discovery Cracker product did not have an OCR engine
18 because it processed electronic files, which were already in a text searchable format.
19 Strang Decl., ¶ 4; Grebey Decl., ¶ 2.

20    **C.    From 2003 to 2007 DocuLex Sells the Discovery Cracker Product**

21    Soon after DocuLex acquired the Discovery Cracker product, DocuLex began
22 selling the product in substantially the same form as it was in while under the
23 control of Advocate Solutions. Strang Decl., ¶ 5. During this time, the Discovery
24 Cracker product <u>did not incorporate Plaintiff's RTK software and did not have any</u>
25 <u>OCR capability</u>. *Id.*; Grebey Decl., ¶ 3. *See also* Deposition of David Griffith,
26 attached as Ex. B to Kinsella Decl. ("Griffith Depo."), at 27:20-28:2 ("<u>Q</u>: That's all
27 right. And what did – what OCR engine was used in Discovery Cracker back in
28 2004? <u>A</u>: Discovery Cracker didn't use an OCR engine. The collection of electronic

documents gathers together documents that already contain text, and so OCR really isn't necessary.").

From 2003 to 2007, DocuLex sold thousands of copies of the Discovery Cracker product and earned approximately $9.8 million in revenue from sales of the Discovery Cracker product. Strang Decl., ¶ 6. The version of Discovery Cracker sold by DocuLex during this time did not have any OCR capability and did not incorporate Plaintiff's RTK software. Strang Decl., ¶ 7; Grebey Decl., ¶ 4. *See also* Declaration of CT Summation General Manager Thomas Rump ("CT Summation Decl."), ¶¶ 2-3.

### D.  In 2007, DocuLex Enters Into Negotiations With Plaintiff To License the RTK Software For Use in the Discovery Cracker Product

In July 2007, DocuLex approached Plaintiff about licensing Plaintiff's RTK software for use in the Discovery Cracker product, thereby adding OCR capability to the product. Strang Decl., ¶ 8; Grebey Decl., ¶ 5. Although the vast majority (97%-99%) of the data files processed by the Discovery Cracker product were text files which did not need to be OCR'ed (such as emails and Word documents), DocuLex sought to add OCR capability for the small percentage of files which would need to be OCR'ed in order to be searchable. Grebey Decl., ¶ 6. This project was considered a minor upgrade, and DocuLex did not envision charging more for the Discovery Cracker product once the OCR capability was added. *Id.*

During the negotiations, Bo Yan, Plaintiff's Chief Operations Officer and President of US Operations, understood that the Discovery Cracker product did not contain any OCR capability (and therefore did not contain Plaintiff's RTK software). For example, on July 4, 2007, Bo Yan wrote to Plaintiff's CEO, Dr. Wang, explaining the details of the product that DocuLex wanted to incorporate the RTK software into:

> The product is called Discovery Cracker (DC), a solution to search for legal electronic proof on a hard disk. It searches for the files on a hard disk and index them as legal evidences. It is on the market place, and <u>there is no OCR support yet</u>, which means it can only process text-based documents. ... According to Jim (COO) and Thom, <u>adding OCR</u> will only give the product a competitive edge, and they will not charge customers extra money for the OCR feature.

Kinsella Decl., Ex. C (emphasis added).

Shortly thereafter, Bo Yan removed himself from the license negotiations for Discovery Cracker so that "[i]n case Doculex contacts me, I can claim I know nothing about the detail negotiations."[1] Kinsella Decl., Ex. D ("Per our agreement, please take me off the email loop. In case Doculex contacts me, I can claim that I know nothing about the detail negotiations.") (emphasis added).

After much back and forth, the parties were unable to come to terms for a new license agreement. Strang Decl., ¶ 8; Grebey Decl., ¶ 7. Accordingly, DocuLex never incorporated Plaintiff's RTK software into the Discovery Cracker product. Strang Decl., ¶ 8; Grebey Decl., ¶ 7.

### E. In August 2007, DocuLex Sells Its Litigation Division (Including the Discovery Cracker Product) to CT Summation

In August 2007, DocuLex sold its Litigation Division (including the Discovery Cracker product) to CT Summation, Inc. Strang Decl., ¶ 9; Grebey Decl., ¶ 8; CT Summation Decl., ¶ 1. The Discovery Cracker product acquired by CT Summation did not have an OCR engine and did not incorporate Plaintiff's RTK software. Strang Decl., ¶ 10; Grebey Decl., ¶ 9. Indeed, as part of this litigation, DocuLex received a declaration from CT Summation stating: "Neither version 4.8x nor 5.0x of Discovery Cracker included an OCR engine to create OCR text for

---

[1] Plaintiff has stated that Bo Yan currently resides in China and therefore cannot be subpoenaed to appear for deposition. *See* Kinsella Decl., Ex. E. Plaintiff has also refused to produced Bo Yan for deposition or to help arrange his deposition. *Id.*

image-only files, <u>either before or after the acquisition by CT</u>."). CT Summation Decl., ¶¶ 2-3.

As part of the sale, the DocuLex engineers who worked on the Discovery Cracker product went to work at CT Summation. Strang Decl., ¶ 11; Grebey Decl., ¶ 10.

### F. CT Summation Independently Negotiates License Agreement with Plaintiff to Add an OCR Engine to the Discovery Cracker Product

A few months after CT Summation acquired the Discovery Cracker product, CT Summation independently negotiated with Plaintiff to license Plaintiff's RTK software for use in the Discovery Cracker product. CT Summation Decl., ¶ 4 ("After the acquisition in August 2007, CT independently negotiated a license agreement with ExperExchange, Inc. ("ExperExchange") pursuant to which CT became licensed to use ExperExchange's OCR engine to create OCR text for image-only files."). *See also* Grebey Decl., ¶ 11. On October 5, 2007, as part of the license negotiations, CT Summation wrote to Plaintiff to "explain the functionality of our products and how we <u>plan</u> to incorporate your OCR product." Kinsella Decl., Ex. F (emphasis added). CT Summation explained that "<u>we do not have an OCR engine</u> [in the Discovery Cracker product]." *Id.* (emphasis added). CT Summation further explained to Plaintiff that the OCR engine represented a very minor upgrade and "[b]ecause of this, we do not plan to increase the price of the product ..." *Id.* (emphasis added).

On October 10, 2007, CT Summation entered into a License Agreement with Plaintiff to incorporate Plaintiff's RTK software into the Discovery Cracker product. Kinsella Decl., Ex. G. *See also* CT Summation Decl., ¶ 4; Gebey Decl., ¶ 12.

### G. In February 2008, CT Summation Launches Discovery Cracker 5.1, Which (For the First Time) Includes an OCR Engine

In February 2008, four months after it entered into a license agreement with Plaintiff, CT Summation launched its Discovery Cracker 5.1 product, which

incorporated Plaintiff's RTK software. CT Summation Decl., ¶ 5 ("After execution of the license agreement with ExperExchange, CT later incorporated ExperExchange's OCR engine into a new version of Discovery Cracker, called Version 5.1, to capture OCR text from image-only files. CT began selling that version to the public in February 2008."). *See also* Grebey Decl., ¶ 13. This was the first version of the Discovery Cracker product which had OCR capability and which incorporated Plaintiff's RTK software. Grebey Decl., ¶ 13; Strang Decl., ¶¶ 5, 7, 10; CT Summation Decl., ¶¶ 2-3.

### H. In November 2008, Plaintiff Files Suit Against DocuLex Claiming *Inter Alia* that DocuLex's Discovery Cracker Product Had an OCR Engine and that Plaintiff was Entitled to a Percentage of the Acquisition Price CT Summation Paid to DocuLex

In November 2008, Plaintiff filed the present lawsuit alleging that DocuLex infringed Plaintiff's copyrights and trademarks by using Plaintiff's RTK software in various products without proper authorization. *See* Complaint. Included in Plaintiff's list of infringing products was the Discovery Cracker product. *See id.*, Ex. D. *See also id.*, ¶ 16.

Although DocuLex has explained numerous times to Plaintiff that the Discovery Cracker product did not incorporate Plaintiff's RTK software, Plaintiff remained undeterred. *See* Kinsella Decl., Ex. H. DocuLex even provided Plaintiff with a copy of the Discovery Cracker product as it existed at DocuLex so Plaintiff could confirm that the product did not contain Plaintiff's RTK software. *Id.*

Nevertheless, Plaintiff focused the majority of its discovery efforts on the Discovery Cracker product and (until very recently) continued to claim that the Discovery Cracker product incorporated its RTK software.[2]

## I. Plaintiff Finally Concedes that the Discovery Cracker Product Did Not Incorporate its RTK Software, Yet Plaintiff Continues to Claim Millions of Dollars in Damages Related to the Discovery Cracker Product Nevertheless

After examining the Discovery Cracker product, Plaintiff finally conceded that the Discovery Cracker product did not incorporate Plaintiff's RTK software. *See* Kinsella Decl., Ex. M ("Discovery Cracker doesn't incorporate RTK."). Nevertheless, Plaintiff continues to assert that it is entitled to recover millions of dollars in damages as a result of DocuLex's sale of this product. *Id.*

Plaintiff's latest argument appears to be that the Discovery Cracker is a contributory infringing product because it exports files in industry standard formats, which could conceivably be input into various other products. *See id* ("Discovery Cracker doesn't incorporate RTK. However, it can export image files to Doculex 5 tables (Doculex 5 Batch Format) which can be read and OCRed by IP Studio, Professional Capture and Office Capture etc. ... Since the Doculex 5 Tables and Discovery Database Formats are not allowed in the 1999 RSLA, Discovery Cracker is considered to be a contributory infringing product.").

---

[2] *See, e.g.*, Kinsella Decl., Ex. I ("Your objections are irrelevant as <u>we know Discovery Cracker incorporated the RTK and we have a right to these documents for damage calculations.</u>") (emphasis added); Kinsella Decl., Ex. J ("Doculex is avoiding its discovery responsibility as <u>we have facts to demonstrate that Discovery Cracker incorporated Plaintiff's RTK and was offered to CT Summation.</u>") (emphasis added). *See also* Deposition of Dr. Wang attached as Exhibit K to Kinsella Decl., at 46:20-23 ("Q: Do you know, as you sit here today, whether it's true that your technology is in Discovery Cracker? A: It's true."); Deposition of Troy Sarmento attached as Exhibit L to Kinsella Decl., at 142:21-143:1 ("Q: Okay. So the engineering team – ExperExchange's engineering team informed you that they had analyzed the Discovery Cracker product and that it incorp – it did indeed incorporate ExperExchange's RTK software? A: That is correct.").

## III. DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION ON ALL OF PLAINTIFF'S CLAIMS RELATING TO THE DISCOVERY CRACKER PRODUCT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, 2009 WL 330259 (N.D.Cal. 2009) (quoting F.R.C.P. 56(c)). When the nonmoving party has the burden of proof at trial, as here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Because Plaintiff has presented no evidence regarding the Discovery Cracker product which would allow it to recover on any of its claims, summary adjudication should be granted.

### A. The Discovery Cracker Product Cannot be a Direct Infringing Product Because it Does Not Incorporate Plaintiff's RTK Software

"A claim of copyright infringement requires a showing of two elements: (1) the plaintiff has a valid copyright in the work and (2) the defendant infringed the copyright." *Microsoft Corp. v. Suncrest Enterprise*, 2006 WL 1329881, *3 (N.D.Cal. 2006). *See also Sega Enterprises Ltd. v. MAPHIA*, 948 F.Supp. 923, 931 (N.D.Cal. 1996) ("To establish a prima facie case of direct copyright infringement, [plaintiff] must prove (1) ownership of a valid copyright in the infringed work, and (2) 'copying' by the defendant.").

Here, Plaintiff has presented no evidence that the Discovery Cracker product infringed Plaintiff's copyright. Nor can it, because it is <u>undisputed that the Discovery Cracker product did not incorporate Plaintiff's software</u>. *See* Kinsella Decl., Ex. M ("Discovery Cracker doesn't incorporate RTK."). Accordingly, DocuLex's Discovery Cracker Product cannot have infringed Plaintiff's copyright.

## B. Plaintiff Has Presented No Evidence To Support its Claim that the Discovery Cracker Product is a Contributory Infringing Product

Although Plaintiff's theories have been moving targets over the last few months, Plaintiff's latest theory appears to be that the Discovery Cracker product somehow indirectly used Plaintiff's RTK Software and is therefore a contributory infringing product. *See* Kinsella Decl., Ex. M ("Discovery Cracker doesn't incorporate RTK. However, it can export image files to Doculex 5 tables (Doculex 5 Batch Format) which can be read and OCRed by IP Studio, Professional Capture and Office Capture etc. ... Since the Doculex 5 Tables and Discovery Database Formats are not allowed in the 1999 RSLA, *Discovery Cracker is considered to be a contributory infringing product.*") (emphasis added).

"While direct infringement requires proof of unlawful copying, contributory infringement requires proof that a defendant '(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct.'" *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)). Simply put, Plaintiff has presented no evidence to support its claim that the Discovery Cracker product constitutes contributory infringement.

### 1. Plaintiff Has Presented No Evidence of a Third Party's Infringing Activity

As a threshold issue, Plaintiff's claims fail because it has not presented any evidence of a third party's infringing activity. Without an infringement of Plaintiff's copyright by a third party, there can be no infringing activity for DocuLex to induce or contribute to. Plaintiff appears to argue that a third party who purchased the DocuLex Discovery Cracker product could conceivably take the output from that product (industry standard image files) and input those files into another DocuLex product to be OCR'ed. *See* Kinsella Decl., Ex. M. There are a number of problems with this argument. First, Plaintiff has presented no evidence that a third party

1  actually used the Discovery Cracker product in this manner. Second, Plaintiff has
2  presented no evidence of how such a use would violate its copyright on the RTK
3  software. Plaintiff has not suggested why a third party who used a DocuLex product
4  to OCR an image file (for which DocuLex paid royalties to Plaintiff) would be
5  engaging in an infringing activity because that image file came from another
6  DocuLex product.

       2.    <u>Plaintiff Has Presented No Evidence That DocuLex Knew of the Third Party's Infringing Activity (to the Extent There Ever Was Any Infringing Activity)</u>

Even assuming, *arguendo*, that a third party took the output from the Discovery Cracker product and loaded it into DocuLex's IP Studio product (and assuming, *arguendo*, that this somehow infringed Plaintiff's copyright), Plaintiff has presented no evidence that DocuLex knew a third party was using its products in this manner. Plaintiff appears to address this issue by suggesting that "IP Studio has also been particularly marketed to work with Discovery Cracker to empower the latter with OCR provided by RTK." *See* Kinsella Decl., Ex. M. This is simply not correct. The Discovery Cracker product was never designed to be integrated with the IP Studio product and was never marketed or sold in that fashion. *See* Strang Decl., ¶ 12; Grebey Decl., ¶ 14.

Furthermore, a quick glance at DocuLex's financial statements confirms that DocuLex did not "bundle" its IP Studio product with the Discovery Cracker product. Specifically, from 2003 to 2007, DocuLex sold thousands of copies of the Discovery Cracker product and realized over $9.8 million in revenue. Strang Decl., ¶ 6. During this same time period, <u>only six of these same customers purchased DocuLex's IP Studio product along with the Discovery Cracker product</u>. *Id.*

### 3. Plaintiff Has Presented No Evidence That DocuLex Induced, Caused, or Materially Contributed to the Third Party's Infringing Activity (to the Extent There Ever Was Any Infringing Activity)

Assuming, *arguendo*, that a third party took the output from the Discovery Cracker product and loaded it into DocuLex's IP Studio product (and assuming, *arguendo*, that this somehow infringed Plaintiff's copyright), Plaintiff's claims still fail because it has not put forth any evidence suggesting DocuLex designed the Discovery Cracker product "with the object of promoting its use to infringe copyright."[3] *Perfect 10, Inc.*, 494 F.3d at 801 (quoting *Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 936 (2005)). *See also UMG Recordings, Inc. v. Veoh Networks Inc.*, 2009 WL 334022, *6 (C.D.Cal. 2009) ("Inducement to infringe copyright requires distribution of a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.").

Not only is there no evidence to suggest that DocuLex induced purchasers of the Discovery Cracker product to utilize the OCR engine in DocuLex's IP Studio product, the evidence affirmatively demonstrates that <u>DocuLex customers did not use these products in concert</u>. *See* Strang Decl., ¶ 6 ("From 2003 to 2007, DocuLex sold thousands of copies of the Discovery Cracker product and earned approximately $9.8 million in revenue from sales of the Discovery Cracker product. During this same time period, only six of these same customers purchased DocuLex's IP Studio product along with the Discovery Cracker product.").

---

[3] Of course, DocuLex did not actually design the Discovery Cracker product. The Discovery Cracker product was designed by Advocate Solutions, from whom DocuLex purchased the product in 2003. Moreover, DocuLex sold the Discovery Cracker product from 2003 to 2007 in substantially the same form as it existed while at Advocate Solutions. Strang Decl., ¶ 5; Grebey Decl., ¶ 3.

As the Supreme Court summarized in *Grokster*:

> In sum, where an article is good for nothing else but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or imputing an intent to infringe. Conversely, the doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some of one's products will be misused. It leaves breathing room for innovation and a vigorous commerce.

*Grokster*, 545 U.S. at 923-33.

Because Plaintiff has presented no evidence of any of these considerations, summary adjudication should be granted on the Discovery Cracker issue.

### C. To the Extent Any of Plaintiff's Remaining Claims are Based on the Discovery Cracker Product, Plaintiff Has Presented No Evidence to Support Those Claims

Because Plaintiff has presented no evidence regarding the Discovery Cracker product which would allow it to recover on any of its claims, summary adjudication should be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant their motion for summary adjudication.

DATED: August 7, 2009

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By: _____
Dale F. Kinsella
Attorneys for Defendants and Counterplaintiffs, DOCULEX, INC., CARL STRANG, TERRY MORGAN, DAVID BAILEY, JIM GREBEY, and DAVID GRIFFITH