UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EXPEREXCHANGE, INC.,

        Plaintiff(s),

    v.

DOCULEX, INC., ET AL.

        Defendant(s).
_____/

Case No. C-08-03875 JCS

**ORDER GRANTING IN PART AND DENYING IN PART STATUTE OF LIMITATIONS MOTION FOR SUMMARY JUDGMENT, GRANTING DISCOVERY CRACKER SUMMARY JUDGMENT MOTION, DENYING MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, AND DENYING RULE 56(f) MOTION [Docket Nos. 55, 61, 80, 89]**

## I.    INTRODUCTION

In this case, ExperExchange contends that DocuLex's incorporation of ExperExchange's optical character recognition ("OCR") software into some of DocuLex's document management software products exceeds the scope of the license agreement between the parties. DocuLex has filed two summary judgment motions. The first seeks summary judgment on all of ExperExchange's claims on the basis that they are barred under the relevant statutes of limitations and other doctrines ("the Statute of Limitations Summary Judgment Motion"). The second motion seeks summary judgment that DocuLex's Discovery Cracker product does not contain ExperExchange's OCR software and therefore, all of ExperExchange's claims fail as to that product ("the Discovery Cracker Summary Judgment Motion"). ExperExchange, in turn, has filed a Motion for Leave to Amend Complaint ("Motion to Amend"), seeking to add claims for fraud and to name an additional defendant, CT Summation, Inc. Plaintiff has also requested a continuance under Rule 56(f) of the Federal Rules of Civil Procedure to allow for additional discovery relating to issues raised in connection with Defendants' summary judgment motions ("the Rule 56(f) Motion"). The

parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).[1]

A hearing on the motions was held on Friday, November 6, 2009 at 9:30 a.m. For the reasons stated below, the Statute of Limitations Summary Judgment Motion is GRANTED in part and DENIED in part. The Discovery Cracker Summary Judgment Motion is GRANTED. The Motion to Amend is DENIED. Plaintiff's Rule 56(f) request for additional discovery is DENIED.

## II.    BACKGROUND

### A.    Undisputed Facts Regarding Statute of Limitations Summary Judgment Motion

The parties have stipulated to the following undisputed facts in the Joint Statement of Undisputed Facts submitted in support of the Statute of Limitations Summary Judgment Motion (quoted verbatim):

<u>JOINT STATEMENT OF UNDISPUTED FACTS</u>

DocuLex, Inc. is a small software company located in Winter Haven, Florida. [FN 1: Declaration of Carl J. Strang, III ("Strang Decl."), ¶ 2, filed on July 23, 2009, in support of Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication] DocuLex designs and sells document management software products that allow customers to efficiently manage their company records and information. [FN 2: *Id.* ¶ 3; Declaration of David Bailey ("Bailey Decl.") ¶ 2, filed on July 23, 2009, in support of Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication] ExperExchange, Inc. (formerly ExperVision, Inc.) is a core technology company that licenses its optical character recognition (OCR) software – entitled Recognition Toolkit Software ("RTK") – to manufacturers and software developers in exchange for royalty fees. [FN 3: Strang Decl., ¶4; Bailey Decl., ¶ 3]

### A.    Plaintiff Enters Into a License Agreement With DocuLex in 1999

In May of 1999, DocuLex entered into a Recognition Toolkit Software License Agreement (the "License Agreement") with ExperExchange. The License Agreement is a standard form contract that was prepared by ExperExchange's transactional attorneys for use with all ExperExchange's licensees. [FN 4: Deposition of Dr. Wang ("Wang Depo.") at 116: 13-14. *See also* Deposition of Troy Sarmento ("Sarmento Depo.") at 77: 19-20] The basic terms of the License Agreement remained unchanged and ExperExchange did not discuss any of the basic terms of the License Agreement with DocuLex. [FN 5: Sarmento Depo. at 39: 3-5] Attachments 4 and 6 to the License Agreement were provided by DocuLex. By its terms, the License Agreement could be terminated by either party on a yearly basis or, if they chose not to terminate, it would be renewed automatically in May of each year. [FN 6: 1999

---

[1]At this point in the litigation, CT Summation is not a party to the action and has neither consented to nor declined magistrate jurisdiction.

RSLA Agreement ("RSLA")[2] at § 5(b)]   Section 1(c) of the License Agreement grants DocuLex a non-exclusive license to "reproduce and distribute copies of the RTK, in executable form only, together with and as an integral and nonseverable part of the products manufactured and licensed by Licensee, as described more fully on Attachment 4 hereto. [FN 7: *Id.* at § 1(c)] Attachment 4 states "see attached." [FN 8: *Id.* at 10]   Attached to Attachment 4 is a marketing brochure for DocuLex's PDF.Capture product, which was provided by DocuLex. [FN 9: *Id.* at 11]   Section 2(b) of the License Agreement states:

Licensee shall not: … Authorize third parties or any other entity to use the portion of the Licensee Application that utilizes the RTK, or any part thereof, simultaneously on more than a single workstation or computer processor within a workstation or computer unless the third party has purchased additional licenses from licensee. [FN 10: *Id.* at 1]

Section 8(c) of the License Agreement states in relevant part:

"ExperVision agrees that the types of products described in Attachment 4, and products similar in nature, including future versions of these product types, are approved by ExperVision for use with the RTK.  Licensee agrees to inform ExperVision in advance, of the nature of new, substantially different, Licensee Applications that would use the RTK, whether currently existing or hereafter developed" [FN 11: *Id.* at 3]

## B.   In 1999, DocuLex Incorporates the RTK Software into its PDF Product Line and Pays Royalty Payments Accordingly

Within the first month after the License Agreement was signed, DocuLex began incorporating ExperExchange's RTK software into multiple products (not just the PDF.Capture product listed in the License Agreement) and paying royalty payments.  The 1999 royalty reports, for example, clearly show that DocuLex incorporated ExperExchange's RTK software into three of its products, OCR-it, PDF-it, and PDF.Capture. [FN 12: Declaration of Bo Yan ("Yan Decl."), ¶ 7, filed on July 23, 2009, in opposition to Defendants' Motion For Summary Judgment, or in the Alternative, Summary Adjudication.  See also Declaration of Dale Kinsella ("Kinsella Decl."), Ex. B at 1, filed on July 23, 2009, in support of Defendants' Motion For Summary Judgment, or in the Alternative, Summary Adjudication.  See also Bailey Decl., ¶¶ 6-7; Sarmento Depo. at 131:5-10]  Indeed, the very first royalty report DocuLex provided to ExperExchange, dated July 10, 1999 (covering 6/1/99 – 6/30/99), states clearly on the top of the page: "Products Sold Using the Engine [RTK]: Ocr-it, Pdf-it, & Pdf.Capture." [FN 13: Kinsella Decl., Ex. B at 1] From 1999 through 2007, ExperExchange's Chief Operations Officer, Bo Yan, spoke with DocuLex engineers on a regular basis providing technical support to DocuLex for the RTK software as incorporated into a number of different products. [FN 14: Yan Decl., ¶¶ 5-6; Griffith Decl., ¶ 5; Bailey Decl., ¶¶ 8-10]  In 2001, Bo Yan visited DocuLex's offices in Florida, met with DocuLex engineers to discuss incorporating ExperExchange's RTK software into future DocuLex products, and stayed at the

---

[2]The Court notes that there is a single licensing agreement, entitled "RTK Software License Agreement," entered into on May 24, 1999. *See* Declaration of Dale Kinsella in Support of Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication [docket no. 55] ("Kinsella State of Limitations Summary Judgment Motion Decl."), Ex. A.  The parties refer to this agreement alternately as the "License Agreement" and the "RSLA."  The Court refers to the agreement as the "License Agreement."

house of DocuLex's Vice President of Research and Development, David Griffith. [FN 15: Griffith Decl., ¶ 6; Bailey Decl., ¶ 11] ExperExchange also received numerous emails regarding DocuLex's use of the RTK software in some products other than the PDF.Capture product explicitly mentioned in the License Agreement. For example, on April 11, 2001, a DocuLex customer sent an email to Troy Sarmento, ExperExchange's OEM Manager, which stated: "Troy, Attached is an example of the problem that we discussed. We are using the DocuLex PDF-it product (version 4.020) incorporating your toolkit (rtk.ll version 6.10.35.0622)." [FN 16: See Kinsella Decl., Ex. J]

**C.      Prior to 2008, ExperExchange Does Not Object to DocuLex's Use of the RTK Software**

From 1999 to 2007, ExperExchange never once informed DocuLex that its broad use of the RTK software exceeded the scope of the License Agreement. [FN 17: Griffith Decl., ¶¶ 7-8; Bailey Decl., ¶¶ 10-12] During this time, Bo Yan, in his role as being responsible for technical support, encouraged DocuLex to incorporate the RTK software into as many products as possible so that ExperExchange would earn additional royalties for each such use. [FN 18: Yan Decl., ¶ 7; Griffith Decl., ¶ 9; Bailey Decl., ¶ 12] Bo Yan also worked closely with DocuLex to fix any bugs associated with the RTK software. [FN 19: Yan Decl., ¶ 6; Griffith Decl., ¶ 10; Bailey Decl., ¶ 10]

**D.      From 1999 Through 2008, Plaintiff Accepts Royalty Payments For the Allegedly Unauthorized Use and Renews the License Agreement Each Year**

From 1999 through 2007, ExperExchange did not inform DocuLex that they were allegedly in beach of the License Agreement. During this same time period, ExperExchange accepted royalty payments from DocuLex and chose to renew the License Agreement with DocuLex each year. [FN 20: Morgan Decl., ¶ 4. See also Sarmento Depo. at 102:18-20] From 1999 through 2008, DocuLex used ExperExchange's RTK software in its PDF products and DocuLex reported its use of the RTK software in over 208 separate Royalty Reports it sent to ExperExchange. [FN 21: Morgan Decl., ¶ 5; Kinsella Decl., Ex. B]

**E.      In Late 2007, Bo Yan Resigns**

In late 2007, shortly before ExperExchange first objected to DocuLex's broad use of the RTK software, Bo Yan, ExperExchange's Chief Operations Officer, resigned. Although they had worked together closely on technical support issues for nine years, Bo Yan never informed DocuLex of his resignation. [FN 22: Griffith Decl., ¶ 11; Bailey Decl. ¶ 14]

**F.      In February 2008, After Nine Years of Cooperation Between the Parties, Plaintiff Attempts to Renegotiate the License Agreement**

In early 2008, ExperExchange attempted to renegotiate the License Agreement. On February 22, 2008, Sophie Li of ExperExchange sent DocuLex an email stating that the current term of the License Agreement was set to expire in a few months and that ExperExchange was in the process of "reclaiming the pricing policies and renegotiating the terms of each RTK Software License Agreement (RSLA) with our clients." [FN 23: Kinsella Decl., Ex. L] The parties then began negotiating via email the terms of a new license agreement. [FN 24: Kinsella Decl., Exs. M, N, O, P and Q] On March 18, 2008, Sophie Li of ExperExchange wrote to DocuLex that: "We

4

know DocuLex has been using [Plaintiff's] OCR engine in nearly half of your products." [FN 25: Kinsella Decl., Ex. O] These emails do not claim that DocuLex had exceeded the scope of the License Agreement.

### G. In May 2008, After the Negotiations For a New Agreement Hit a Standstill, ExperExchange Asserts For the First Time that DocuLex Breached the 1999 Agreement

After the negotiations for a new license agreement fell apart ExperExchange asserted that DocuLex had allegedly breached the License Agreement. On May 9, 2008, ExperExchange wrote: "The latest RSLA signed on May 24th, 1999 authorizes DocuLex to distribute your Application software, PDF Capture and PDF Capture only. Now as you have told us and we have found through research, you have integrated RTK into about 10 other software products and distributed them in the market, which obviously breaches the contract." [FN 26: Kinsella Decl., Ex. R] Troy Sarmento's email goes on to accuses DocuLex of "one of the most serious crimes of all times" and threaten civil and criminal actions against DocuLex and its officers. [FN 27: Kinsella Decl., Ex. R]

## B. Undisputed Facts Regarding Discovery Cracker Motion

The parties have stipulated to the following undisputed facts in the Joint Statement of Undisputed Facts submitted in support of the Discovery Cracker Summary Judgment Motion (quoted verbatim):

### A. In 2003, DocuLex Acquires the Discovery Cracker Product

In 2003, DocuLex acquired the Discovery Cracker product from Advocate Solutions, Inc. based in Chicago. [FN 1: Declaration of Carl Strang, III ("Strang Decl."), ¶ 2, filed on August 7, 2009, in support of Defendants' Motion For Summary Adjudication] The Discovery Cracker product processes data (such as emails and Microsoft Word documents), extracts meta data, and converts the files to industry standard image files. [FN 2: *Id.*, ¶ 3. See also Declaration of Jim Grebey ("Grebey Decl."), ¶ 2, filed on August 7, 2009, in support of Defendants' Motion For Summary Adjudication.] At this time, the Discovery Cracker product did not have an OCR engine. [FN 3: Strang Decl., ¶ 4; Grebey Decl., ¶ 2]

### B. From 2003 to 2007 DocuLex Sells the Discovery Cracker Product

From 2003 to 2007, DocuLex sold thousands of copies of the Discovery Cracker product and earned approximately $9.8 million in revenue from sales of the Discovery Cracker product. [FN 4: Strang Decl., ¶ 6]

### C. In 2007, DocuLex Enters Into Negotiations With ExperExchange To License the RTK Software For Use in the Discovery Cracker Product

In July 2007, DocuLex approached ExperExchange about licensing ExperExchange's RTK software for use in the Discovery Cracker product, thereby adding OCR capability to the product. [FN 5: Strang Decl., ¶ 8; Grebey Decl., ¶ 5] The majority of the data files processed by the Discovery Cracker product were text files which did not need to be OCR'ed (such as emails and Word documents). DocuLex sought to add OCR capability for the files which would need to be OCR'ed in order to be

5

searchable. [FN 6: Grebey Decl., ¶ 6] DocuLex did not envision charging more for the Discovery Cracker product once the OCR capability was added. [FN 7: *Id.*] On July 4, 2007, Bo Yan, ExperExchange's Chief Operations Officer, wrote to ExperExchange's CEO, Dr. Wang:

> The product is called Discovery Cracker (DC), a solution to search for legal electronic proof on a hard disk. It searches for the files on a hard disk and index them as legal evidences. It is on the market place, and there is no OCR support yet, which means it can only process text-based documents. … According to Jim (COO) and Thom, adding OCR will only give the product a competitive edge, and they will not charge customers extra money for the OCR feature. [FN 8: Kinsella Decl., Ex. C]

Shortly thereafter, Bo Yan removed himself from the license negotiations for Discovery Cracker and wrote: "In case DocuLex contacts me, I can claim I know nothing about the detail negotiations." [FN 9: Declaration of Dale Kinsella ("Kinsella Decl."), Ex. D, filed on August 7, 2009, in support of Defendants' Motion For Summary Adjudication] After much back and forth, the parties were unable to come to terms for a new license agreement. [FN 10: Strang Decl., ¶ 8; Grebey Decl., ¶ 7]

**D.    In August 2007, DocuLex Sells Its Litigation Division (Including the Discovery Cracker Product) to CT Summation**

In August 2007, DocuLex sold its Litigation Division (including the Discovery Cracker product) to CT Summation, Inc. [FN 11: Strang Decl., ¶ 9; Grebey Decl., ¶ 8; CT Summation Decl., ¶ 1] As part of this litigation, DocuLex received a declaration from CT Summation stating: "Neither version 4.8x nor 5.0x of Discovery Cracker included an OCR engine to create OCR text for image-only files, either before or after the acquisition by CT."). [FN 12: CT Summation Decl., ¶¶ 2-3] As part of the sale, the DocuLex engineers who worked on the Discovery Cracker product went to work at CT Summation. [FN 13: Strang Decl., ¶ 11; Grebey Decl., ¶ 10]

**E.    CT Summation Independently Negotiates License Agreement with ExperExchange to Add an OCR Engine to the Discovery Cracker Product**

After CT Summation acquired the Discovery Cracker product, CT Summation independently negotiated with ExperExchange to license ExperExchange's RTK software for use in the Discovery Cracker product. [FN 14: CT Summation Decl., ¶ 4; Grebey Decl., ¶ 11] On October 5, 2007, as part of the license negotiations, CT Summation wrote to ExperExchange to "explain the functionality of our products and how we plan to incorporate your OCR product." [FN 15: Kinsella Decl., Ex. F] CT Summation explained that "we do not have an OCR engine [in the Discovery Cracker product]." [FN 16: *Id.*] CT Summation further explained to Plaintiff that the OCR engine represented a very minor upgrade and "[b]ecause of this, we do not plan to increase the price of the product …" [FN 17: *Id.*] On October 10, 2007, CT Summation entered into a License Agreement with ExperExchange to incorporate Plaintiff's RTK version 7 into the Discovery Cracker product. [FN 18: Kinsella Decl., Ex. G; CT Summation Decl., ¶ 4; Gebey Decl., ¶ 12]

**F.    In February 2008, CT Summation Launches Discovery Cracker 5.1, Which Includes an OCR Engine**

In February 2008, four months after it entered into a license agreement with ExperExchange, CT Summation launched its Discovery Cracker 5.1 product, which incorporated ExperExchange's RTK software. [FN 19: CT Summation Decl., ¶ 5; Grebey Decl., ¶ 13]

**G.     In August 2008, ExperExchange Files Suit Against DocuLex Claiming Inter Alia that DocuLex's Discovery Cracker Product Had an OCR Engine and that ExperExchange was Entitled to a Percentage of the Acquisition Price CT Summation Paid to DocuLex**

In August 2008, ExperExchange filed the present lawsuit alleging that DocuLex infringed ExperExchange's copyrights and trademarks by using ExperExchange's RTK software in various products without proper authorization. [FN 20:  See Complaint]  Included in ExperExchange's list of infringing products was the Discovery Cracker product. [FN 21:  See *id.*, Ex. D.  *See also id.*, ¶ 16]

**C.     The Complaint**

In the Complaint, ExperExchange names as defendants DocuLex and several of its officers, namely Carl Strang, Terry Morgan, David Bailey, Jim Grebey and David Griffith.  Complaint, ¶¶ 2-7.  According to the Complaint, Strang, Morgan and Bailey were the founders of DocuLex and hold the positions of President, Chief Financial Officer and Chief Strategy Officer, respectively.  *Id.*  The Complaint alleges that Jim Grebey is the Chief Operating Officer and David Griffith is the Chief Technology Officer of DocuLex.  *Id.*[3]

ExperExchange alleges that it has numerous copyrights for its OCR technology products, *see* Complaint, ¶ 13 & Ex. C (copyright registrations), and that it is the owner of the registered trademark EXPERVISION®.  Complaint, ¶ 18 & Ex. B.[4]  ExperExchange further alleges that the License Agreement granted DocuLex a non-exclusive license to sell and resell Plaintiff's RTK software for use in DocuLex's PDF.Capture, "which is a standalone, single-user desktop product." *Id.*, ¶ 15.   Finally, Plaintiff alleges that DocuLex incorporated Plaintiff's copyrighted software into

---

[3]It is undisputed that Jim Grebey left DocuLex when the Litigation Division of DocuLex was acquired by CT Summation, in 2007.

[4]According to the Complaint, ExperExchange is the successor in interest for EXPERVISION, Inc., which it purchased.  Complaint, ¶ 1.

at least 20 products that were not covered by the License Agreement, listed in Exhibit D to the

Complaint.[5]  *Id.*, ¶ 24 & Ex. D.  ExperExchange asserts the following claims in this action:

| | |
|---|---|
| <u>Claim One</u>: | Direct copyright infringement against all defendants based on the allegation that Defendants "infringed some or all of Plaintiff's copyrights by publishing and placing upon on the market in excess of 20 separate and distinct products incorporating Plaintiff's registered copyrighted works or derivative works that were not covered by the [License Agreement];" |
| <u>Claim Two</u>: | Contributory copyright infringement against DocuLex based on the allegation that DocuLex copied or aided and assisted in copying and making derivative works from Plaintiff's copyrighted RTK OCR technology; |
| <u>Claim Three</u>: | Contributory copyright infringement against Carl Strang based on allegation that Carl Strang copied or aided and assisted in copying and making derivative works from Plaintiff's copyrighted RTK OCR technology; |
| <u>Claim Four</u>: | Contributory copyright infringement against Carl Strang based on same allegations as Claim Three;[6] |
| <u>Claim Five</u>: | Contributory copyright infringement against Terry Morgan based on allegation that Terry Morgan copied or aided and assisted in copying and making derivative works from Plaintiff's copyrighted RTK OCR technology; |
| <u>Claim Six</u>: | Contributory copyright infringement against David Bailey based on allegation that David Bailey copied or aided and assisted in copying and making derivative works from Plaintiff's copyrighted RTK OCR technology; |
| <u>Claim Seven</u>: | Contributory copyright infringement against Jim Grebey based on allegation that Jim Grebey copied or aided and assisted in copying and making derivative works from Plaintiff's copyrighted RTK OCR technology; |
| <u>Claim Eight</u>: | Contributory copyright infringement against David Griffith based on allegation that David Griffith copied or aided and assisted in copying and making derivative works from Plaintiff's copyrighted RTK OCR technology; |
| <u>Claim Nine</u>: | Breach of written contract against DocuLex based on the allegation that Defendants incorporated Plaintiff's OCR software into many of their products without authorization, in violation of the License Agreement, which "specifically prohibited Defendants' use of |

---

[5]Plaintiff conceded at oral argument that Discovery Cracker is not listed in Exhibit D to the Complaint, or in the body of the Complaint.

[6]In its Motion to Amend, Plaintiff acknowledges that Claims Three and Four are the same. *See* Motion to Amend at 7 (referring to Claim Three as "redundant").

Paintiff's OCR technology in any other products [besides the single OCR product listed in the License Agreement, PDF. Capture], be they single user desktop, network or server based, without the specific written authorization of Plaintiff and the payment of an appropriate license fee."

**Claim Ten:** Trademark infringement in violation of § 43(a) of the Lanham Act against DocuLex based on the allegation that "Plaintiff's OCR runtime libraries as incorporated into Defendant's unauthorized products included the registered trademark, EXPERVISION®, of Plaintiff," which was likely to mislead purchasers of Defendants' products into thinking that those products were authorized by Plaintiff.

**Claim Eleven:** Trademark infringement, federal passing-off against DocuLex based on allegation that Defendants have offered Plaintiff's OCR technology and related services and equipment as its own products and services, constituting unfair competition.

**Claim Twelve:** Trademark infringement, California passing-off against DocuLex based on same allegations as Claim Eleven.

**Claim Thirteen:** Federal unfair competition against DocuLex based on allegation that DocuLex produced, sold and published products incorporating Plaintiff's OCR technology without the consent of Plaintiff, which was likely to mislead purchasers of Defendants' products into thinking that those products were authorized by Plaintiff.

**Claim Fourteen:** Unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* and 17500 *et seq.* against DocuLex based on same allegations as Claim Thirteen.

**Claim Fifteen:** Conversion against DocuLex based on allegation that DocuLex created unauthorized products which incorporated ExperExchange's OCR technology and selling these products to third parties.

**Claim Sixteen:** Intentional interference with prospective economic advantage against DocuLex based on allegation that DocuLex interfered with ExperExchange's prospective economic advantage by inducing potential customers to sever their relationship with ExperExchange.

**Claim Seventeen:** Negligent interference with prospective economic advantage against Carl Strang, Terry Morgan, David Bailey, Jim Grebey and David Griffith based on allegation that the individual defendants failed to take adequate precautions to avoid interfering with ExperExchange's prospective economic advantage.

**Claim Eighteen:** Intentional interference with contractual relations against all defendants based on the allegation that they have wilfully and deliberately committed wrongful acts with the intent to interfere with the contractual relationships between ExperExchange and "its licensees, employees, customers, and suppliers."

**Claim Nineteen:** Negligent interference with contractual relations against Carl Strang, Terry Morgan, David Bailey, Jim Grebey and David Griffith based on allegation that these individuals, as officers of DocuLex, failed to take

9

ordinary precautions to avoid interfering with ExperExchange's contractual relations.

Claim Twenty: Unjust enrichment against DocuLex based on the allegation that beginning May 24, 1999 and continuing thereafter, DocuLex produced, sold and published products incorporating ExperExchange's OCR technology that was neither authorized nor paid for under the License Agreement.

Claim Twenty-One: Accounting against DocuLex to determine quantity DocuLex products sold that incorporated ExperExchange's OCR technology and amount due under License Agreement.[7]

Claim Twenty-Two: Preliminary and permanent injunction enjoining DocuLex from further acts of copyright infringement.

**D.      The Motions**

**1.      The Statute of Limitations Summary Judgment Motion**

In the Statute of Limitations Summary Judgment Motion, DocuLex argues that Plaintiff's claims fail, as a matter of law, on a number of grounds. First, Defendants assert that Claims One through Twenty-One are time-barred under the relevant statutes of limitations. In particular, Defendants argue that it is undisputed that the relevant conduct – incorporating ExperExchange's OCR technology in DocuLex products other than PDF.Capture – began in 1999, well outside of the limitations periods for all of these claims. Further, Defendants argue, the undisputed evidence shows that ExperExchange was aware of this conduct at that time or, at the latest, by 2001. In support of this assertion, Defendants point to the following evidence:

- a royalty report provided to ExperExchange by DocuLex for June 1999 reflecting that DocuLex had incorporated Plaintiff's RTK software not only into PDF.Capture (which is expressly covered under the License Agreement) but also into two products that are not listed in the License Agreement, PDF-it and OCR-it.[8] When asked whether the 1999 report showed that DocuLex was incorporating Plaintiff's RTK software into PDF.Capture, PDF-it and OCR-it, Plaintiff's Original Equipment Manager ("OEM"), Troy Sarmento, responded "It's what it says."[9] Defendants also point out that at his deposition, Sarmento testified that he was the person who

_____

[7]At oral argument, Plaintiff agreed to dismiss its accounting claim (Claim Twenty-One) with prejudice on the basis that although styled as an accounting claim, it does not seek an accounting of licensing fees due under the contract. Rather, Plaintiff seeks to recover the licensing fees it asserts it *would have* received if Defendants had paid the higher rate to which Plaintiff asserts it was entitled for software aimed at multi-user settings.

[8]*See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. B.

[9]*See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. J at 131.

negotiated and signed the License Agreement on behalf of Plaintiff, as well as the person who was responsible for monitoring compliance with the License Agreement.[10]

• statements by DocuLex officers David Bailey and David Griffith that Plaintiff's Chief Operations Officer and President of U.S. Operations, Bo Yan, talked regularly with DocuLex's engineers and had a thorough understanding of DocuLex's broad use of ExperExchange's RTK software.[11] According to Griffith and Bailey, in 2001, Bo Yan visited DocuLex's offices in Florida to discuss incorporating Plaintiff's RTK software into DocuLex's products.[12]

• an email from DocuLex customer IKON to ExperExchange's Original Equipment Manager, Troy Sarmento, requesting assistance with a technical problem related to a DocuLex product, PDF-it, that incorporated ExperExchange's RTK software.[13] At his deposition, Sarmento testified that in response to the email, ExperExchange "wrote back to IKON and said, first of all, PDF-it, are you sure? It's not PDF.Capture?" Sarmento testified further, "we went back and confirmed that PDF[-it] is not a licensable product from DocuLex to use our engine in the first place."[14] According to Sarmento, ExperExchange then told IKON that DocuLex was not authorized to use ExperExchange's software in its PDF-it product, at which point IKON switched from DocuLex to ExperExchange for its document management products.[15] According to David Griffith, although Bo Yan visited DocuLex in 2001 and stayed at his house, Bo Yan never informed Griffith or anyone else at DocuLex that they were exceeding the scope of the License Agreement.[16]

Second, Defendants argue that all of the copyright and trademark infringement claims, that is, Claims One through Thirteen, are barred under the doctrine of laches. Defendants assert, in particular, that because ExperExchange waited nine years to inform Defendants of its position that the License Agreement covers only a single product, Defendants expended considerable resources developing products that incorporated ExperExchange's OCR technology, even though they could

---

[10]*See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. E (Sarmento Depo.) at 20, 63; *see also* Ex. D (Wang Depo.) at 33 (testimony that Sarmento is the person with ExperExchange who knows the most about the License Agreement).

[11]*See* Griffith Decl., ¶ 5; Bailey Decl., ¶¶ 8-10.

[12]*See* Griffith Decl., ¶ 6, Bailey Decl., ¶ 11.

[13]*See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. J.

[14]*See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. E (Sarmento Depo.) at 243.

[15]*Id*. at 244-245.

[16]*See* Griffith Decl., ¶ 7.

have switched to another OCR provider that could have provided DocuLex with substantially similar software at a similar price.[17]

Third, Defendants assert that *all* of ExperExchange's claims are entirely barred under the doctrine of implied license. Defendants point in particular to the evidence that Bo Yan worked closely with DocuLex over many years, helping DocuLex resolve technical issues relating to the incorporation of Plaintiff's RTK software into DocuLex products and even encouraging DocuLex to incorporate Plaintiff's OCR technology into more of its products. Based on this evidence, along with the undisputed fact that Plaintiff continued to accept royalty payments from Defendants, Defendants assert that they are entitled to summary judgment under the doctrine of implied license.

Fourth, Defendants argue that ExperExchange's state law claims are preempted by the Copyright Act. Specifically, Defendants assert that all of the state law claims are based on ExperExchange's right to control use of its software – the same right that is protected by the Copyright Act.

Fifth, Defendants assert that Plaintiff's interference claims, Claims Sixteen through Nineteen, fail because all of these claims require Plaintiff to show that Defendants interfered with an existing or prospective relationship between Plaintiff and a third party.

Sixth, Defendants argue that *all* of ExperExchange's claims should be dismissed on the basis that there is no evidence that ExperExchange has suffered any damages. In support of this defense, Defendants points to the undisputed fact that DocuLex paid royalties on all of its products that incorporate ExperExchange's OCR technology. Further, Defendants point to evidence that although

---

[17]Both Bailey and Griffith state in their declarations that DocuLex would not have spent time or money developing products that incorporated Plaintiff's technology if they had been informed in 1999 of Defendants' view of the limited scope of the License Agreement. *See* Griffith Decl., ¶ 12; Bailey Decl., ¶ 15. Further, both state that had they known this, they could easily have switched (and would have switched) to another OCR provider that would have offered substantially similar software at substantially the same price. Griffith Decl., ¶ 13; Bailey Decl., ¶ 16.

DocuLex paid royalty fees to ExperExchange for the use of the RTK software in 3,902 products, DocuLex only sold 3,778 products incorporating the RTK software.[18]

Finally, Defendants argue that the claim for an injunction (Claim Twenty-Two) fails because: 1) the underlying claims in the action fail; and 2) it is moot to the extent that DocuLex no longer incorporates ExperExchange's RTK software into its products.

In its Opposition, ExperExchange asserts that Defendants' arguments based on statutes of limitations, laches and implied license fail because it did not become aware of the alleged infringement until 2007, when it learned of the pending sale of the Discovery Cracker product to CT Summation. At that time, ExperExchange asserts, it conducted a "careful investigation," and learned that PDF.Capture was not limited to desktop applications but rather, incorporated "batch" and "monitor" features.

Although ExperExchange's theory is not entirely clear, it appears to be asserting that it did not become aware of the unauthorized use of its software in DocuLex's products until 2007 because it believed, based in part on the brochure that had been provided by DocuLex for Attachment 4 to the License Agreement, that the other products for which DocuLex was making royalty payments fell within the provision of the License Agreement allowing Doclex to incorporate Plaintiff's products into products that were "similar in nature." Thus, as far as the Court can glean, Plaintiff is now asserting that DocuLex's incorporation of the RTK software into PDF.Capture – the one product that is expressly referenced in the License Agreement – itself amounts to a copyright violation because that product has functionalities that were not described in the brochure that is Attachment 4. To put it slightly differently, Plaintiff apparently takes the position (contrary to the allegations in the complaint) that the License Agreement covers only the product *described* in the PDF.Capture brochure, not the actual product. *See* Statute of Limitations Summary Judgment Opposition at 9.

---

[18]According to Terry Morgan, DocuLex's CFO, DocuLex paid ExperExchange over $195,000.00 in royalty payments for sale of 3,902 products that incorporated ExperExchange's RTK software. Morgan Decl., ¶ 7. An internal audit, however, revealed that DocuLex sold only 3,778 products incorporating the RTK software. *Id.*, ¶ 6. Although Plaintiff has not cited any evidence to counter these figures, it now seeks additional discovery under Rule 56(f) relating to Defendants' audit report. As discussed below, the Court denies that request

In support of its new theory, Plaintiff cites to a declaration by Troy Sarmento in which he states that at the time he negotiated the License Agreement, he asked his counterpart at DocuLex, Mr. Strang, to provide a description of the software product to be covered under the agreement. *See* Declaration of Troy Sarmento in Support of Plaintiff's Opposition to Defendant's Summary Judgment Motion ("Sarmento Statute of Limitations Opposition Decl."), ¶ 5. According to Sarmento, Strang "refused to do so, saying that it would be simpler to just substitute their marketing brochure for the product to be licensed, known as PDF.Capture." *Id.* Sarmento continued,

> 5. . . . I told him that would be acceptable if it included the features as requested by the language of Attachment 4. He said that it did and we both subsequently executed the agreement.

> 6. The RSLA provisions and the sample end user License Agreement attached to the RSLA were for a single-user desk-top application program. It was my understanding at signing of the RSLA that this was what the DocuLex PDF.Capture program was. The royalty amount was also set on that basis, ie., $50 per copy.

*Id.* Plaintiff also points to the language of Attachment 4 to the License Agreement, which states as follows:

> Please provide as much information on the product that will include the ExperVision technology. Please provide names, trademarks, Demo's and features.

*See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. A.

ExperExchange rejects DocuLex's reliance on the June 1999 royalty statement to show that Plaintiff knew about the infringement in 1999. In particular, ExperExchange asserts that while it is undisputed that the royalty report listed the three products, Sarmento's deposition testimony on this subject (cited above) merely reflects his *present* understanding that DocuLex was infringing the License Agreement, not his understanding in 1999. Sarmento states in his declaration that in 1999, he "had no knowledge that Defendant DocuLex's product PDF.Capture [and by extension, the other products that were listed in the royalty reports] was an infringing product." Sarmento Statute of Limitations Opposition Decl., ¶ 11.

Similarly, ExperExchange argues that Sarmento did not realize in 2001 that IKON was infringing Plaintiff's copyright by using PDF-it, contrary to his deposition testimony. Plaintiff asserts that Sarmento's deposition testimony should be disregarded because Sarmento was under the

influence of prescribed narcotics at the time of his deposition.[19]  In his declaration, Sarmento states that Plaintiff did not inform IKON that it was infringing ExperExchange's copyright and did not enter into its own licensing agreement with IKON, as he had testified in his deposition; rather, Sarmento states, he referred IKON to DocuLex for technical support.  Sarmento Statute of Limitations Opposition Decl., ¶ 13.

Plaintiff also submits a declaration by Bo Yan, who provided a declaration in support of ExperExchange's Opposition brief during an "unexpected" and "un-announced" visit to the United States to see his "old friend" and previous manager, the CEO of Plaintiff, Dr. Qingran Wang. Statute of Limitations Summary Judgment Opposition at 7.  Bo Yan states that he provided technical support for DocuLex for many years and confirms that he did encourage DocuLex to incorporate Plaintiff's OCR software into products that were similar to PDF.Capture and PDF-it as a way of increasing royalties.  Declaration of Bo Yan in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Yan Statute of Limitations Summary Judgment Opposition Decl."), ¶¶ 6-7.  He states, however, that he was not responsible for reviewing DocuLex's compliance with the License Agreement and that he believed that PDF-it and OCR-it were "similar in nature" to PDF.Capture because he (erroneously) believed all three were for desktop use only. *Id.*, ¶ 7.

Plaintiff further asserts that the state law claims are not preempted by the Copyright Act and the Lanham Act because those claims are based on rights that fall outside the subject matter of those Acts.  In particular, Plaintiff argues, the state law claims are based on Defendants' alleged unfair business practice.

With respect to the interference claims, Plaintiff concedes that a party to a contract cannot be held liable for interference with that contract, but asserts that the claims for interference with prospective economic advantage has no such requirement.  Plaintiff further asserts that the interference with contract claim survives as to Defendant Jim Grebey because he left DocuLex in

---

[19]*See* Sarmento Statute of Limitations Opposition Decl., ¶¶ 7-8 (stating that he was under the influence of Morphine, Percocet and Methadone during his deposition, that he found a number of incorrect statements in the transcript, and that he was unable to get any comments to the court reporter within thirty days because there were so many incorrect statements and he was "very sick").

2007 and therefore, can be liable for negligent interference based on conduct after that time. Finally, Plaintiff asserts that CT Summation or other third parties may have interfered with Plaintiff's contracts or prospective economic relations but that this is not yet possible to determine because Defendants have "refused to provide requested documentation as to the sale to CT Summation" and "have yet to produce any reseller agreements even though demanded during discovery." Statute of Limitations Summary Judgment Opposition at 17.

On the question of damages, Plaintiff states "[i]t is clear from the facts presented, *supra*, that had Plaintiff known of the use of its software by Defendant, it would have restructured the [License Agreement] for a much larger fee structure than the single-user fee of $50.00 per copy that was paid to Plaintiff by Defendant." *Id*.

Finally, as to the request for an injunction, Plaintiff argues that the request for summary judgment on the basis of mootness should be denied because "[d]ue to inadequate discovery responses, Plaintiff does not have adequate knowledge to believe that Defendant has ceased all use of its software." *Id*. at 18. Plaintiff further asserts that to the extent Defendants have admitted entering into reseller agreements – which DocuLex allegedly has refused to produce – "Plaintiff has no knowledge of how many resellers are still to this day selling software containing Plaintiff's software." *Id*. (citing Declaration of Daniel Richardson in Support of Plaintiff's Opposition to Defendant's Summary Judgment Motion ("Richardson Decl."), Ex. K (Bailey Depo.) at 28).

In their Reply brief, Defendants reject Plaintiff's assertion that summary judgment should be denied because it was unaware of the alleged breaches until 2007. Specifically, Defendants point out that under the discovery rule, "when the plaintiff has notice or information of circumstances that would put a reasonable person on inquiry notice, or has the opportunity to gain knowledge from sources open to his or her investigation, the statute commences to run." Statute of Limitations Summary Judgment Reply at 7 (citing *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, * 6 (N.D. Cal. 2009)). Thus, to invoke the discovery rule, a plaintiff must show both a lack of knowledge and that the facts could not have been discovered earlier through exercise of reasonable diligence. *Id*. at 9. Defendants assert that Plaintiff has not even *alleged* that either of these elements is met and further, that the undisputed evidence shows that Plaintiff could not meet these

requirements. In particular, Defendants assert, the 1999 royalty payments show that Plaintiff was inquiry notice of the alleged breaches, while the 2001 incident involving IKON gave Plaintiff *actual* notice of the alleged breaches. Defendants note that the information that Plaintiff "uncovered" in 2007, when it allegedly discovered the breaches, was posted on Defendants' website and Plaintiff makes no claim that this information would not have been available on Defendants' website years earlier. *See id.* (citing Declaration of David Swift in Support of Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication ("Swift Statute of Limitations Summary Judgment Motion Decl."), Ex. B (Wang Depo.) at 77-78 (testifying that Plaintiff investigated Defendants' conduct by searching DocuLex's website and reading the manuals and marketing materials that were available on it)).

Defendants assert numerous objections to the declarations filed by Plaintiff in support of its Opposition brief. With respect to the declaration of Bo Yan, Defendants assert that the declaration should be excluded, in its entirety, because Plaintiff abused the discovery process. In particular, Defendants point out that they expressly asked to be informed if Mr. Yan came to the United States so that they could depose him, stating in a letter dated April 24, 2009, as follows:

> I am writing to inform you that we would like to depose Bo Yan and to request your assistance in securing his attendance at a deposition. Although Mr. Yan currently resides in China and is no longer an ExperExchange employee, he is undoubtedly the key witness in this case. As we understand it, Mr. Yan is still a shareholder in Plaintiff ExperExchange, and is still in contact with ExperExchange employees, including Dr. Wang. In addition, we are informed that Mr. Yan maintains a residence in California, and that his children live in California. Should Mr. Yan travel to the United States, and should you become aware of his travel plans, please let us know immediately so that we may serve him with a subpoena.

Swift Statute of Limitations Summary Judgment Opposition Decl., Ex. A.

Defendants also assert that much of Sarmento's declaration should not be considered because it is based on hearsay and further, that Sarmento should not be permitted to contradict his deposition testimony on key questions, such as the 2001 communications with IKON. *See* Statute of Limitations Reply at 5-7; Defendants' Evidentiary Objections to and Requests to Strike Portions of Declaration of Troy Sarmento ("Sarmento Objections")(citing *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991) (holding that where district court finds that subsequent

declaration contradicting earlier deposition testimony is a "sham" it may disregard that declaration on summary judgment)).

Defendants reiterate their arguments relating to the existence of an implied license. They also assert that the existence of an implied license is supported by the undisputed fact that Plaintiff provided DocuLex with 17 updated versions of the RTK software between 1999 and 2007.[20] With respect to Plaintiff's argument that Bo Yan was not familiar with the scope of the License Agreement when he encouraged DocuLex to incorporate Plaintiff's RTK software into more of its products, Defendants argue that such knowledge of the contract is not necessary to give rise to an implied license.

Defendants reject Plaintiff's assertion that there is no preemption under the Copyright Act because the state law claims are based on business practices, arguing that the underlying rights at stake are, nonetheless, the same.

Defendants assert that Plaintiff has conceded that all of the interference claims fail except the claim against Jim Grebey.[21] As to that claim, Defendants assert, the claim fails because the alleged conduct occurred before Grebey left DocuLex.

As to the question of damages, Defendants argue that despite Plaintiff's assertion that it would have charged a higher royalty, it has presented no evidence in support of this assertion and therefore, there is no factual dispute as to the existence of damages.

Finally, Defendants argue that Plaintiff cannot point to any specific evidence to show that its request for injunctive relief is not moot.

### 2. The Discovery Cracker Summary Judgment Motion

In the Discovery Cracker Summary Judgment Motion, Defendants seek summary judgment on Plaintiff's claims to the extent that they are based on the allegation that DocuLex's Discovery

---

[20]In their brief, Defendants cited to excerpts from the Sarmento deposition in support of this contention. Although the Court did not find any specific number in the Sarmento deposition, Plaintiff stipulated at oral argument that it regularly provided Defendants with updates of ExperExchange's RTK software and that it had no reason to question Defendants' representation that DocuLex had received 17 updated versions of Plaintiff's software from ExperExchange.

[21]At oral argument, Plaintiff confirmed that it does not dispute that all of the interference claims require that the interference must be with a relationship between Plaintiff and a third party.

Cracker Product either incorporates ExperExchange's copyrighted software or is bundled with other DocuLex software in a manner that encourages DocuLex's customers to use the products together to infringe Plaintiff's copyrights.[22] In particular, Defendants assert that the Discovery Cracker Product cannot support any of Plaintiff's claims because Plaintiff has conceded that its OCR software is not incorporated in the Discovery Cracker product and it has not come forward with evidence sufficient to create a fact question with respect to its "bundling" theory.

In support of its assertion that the bundling theory fails as a matter of law, DocuLex argues that ExperExchange has failed to point to evidence of the following elements of contributory infringement: 1) direct infringement by a third party; 2) awareness of infringing conduct on the part of Defendants; and 3) intent on the part of DocuLex to design the Discovery Cracker Product with the object of promoting its use to infringe ExperExchange's copyrights. Even if Plaintiff were to point to such evidence, Defendants assert, Plaintiff has not pointed to any authority that the bundling theory advanced by Plaintiff can support a claim for contributory infringement. Defendants also point to evidence of their own that Discovery Cracker was not, in fact, sold to DocuLex customers in a bundle with other products. In particular, DocuLex's CEO, Carl Strang states in his declaration that while DocuLex sold "thousands of copies of the Discovery Craccker product" between 2003 and 2007, only six of the customers who purchased Discovery Cracker also purchased DocuLex's IP Studio product along with it. Strang Discovery Cracker Summary Judgment Reply Decl., ¶ 6.

In its Opposition, ExperExchange concedes that it has no evidence that Defendants incorporated their OCR software into the Discovery Cracker Product that DocuLex sold between 2003 (when it acquired the product) and 2007. However, Plaintiff asserts that it *does* have evidence that DocuLex incorporated Plaintiff's RTK software into Discovery Cracker (though not any version

---

[22]Plaintiff initially maintained that Discovery Cracker incorporated Plaintiff's copyrighted software. *See, e.g.,* Declaration of Dale Kinsella in Support of Defendants' Motion for Summary Adjudication [docket no. 61] ("Kinsella Discovery Cracker Summary Judgment Motion Decl."), Ex. J (April 28, 2009 meet-and-confer letter from Plaintiff's counsel stating that "we have facts to demonstrate that Discovery Cracker incorporated the RTK.") Plaintiff later changed its theory, apparently conceding that Discovery Cracker did not incorporate Plaintiff's RTK software, taking the position that while "Discovery Cracker doesn't incorporate RTK . . .it can export image files to DocuLex tables which can be read and OCR'ed by IP Studio, Professional Capture, and Office Capture, etc.." *Id.,* Ex. M. This bundling, according to Plaintiff, violated the License Agreement and therefore, Discovery Cracker contributorily infringed. *Id.*

that was actually sold by DocuLex) before DocuLex's Litigation Division (including Discovery Cracker) was acquired by CT Summation. Specifically, ExperExchange points to an exchange of emails in July 2009 between a CT Summation employee, Larry Daniel, and ExperExchange's technical department. *See* Declaration of Harrison You in Support of Plaintiff's Opposition to Defendant's Motion for Summary Adjudication ("You Discovery Cracker Opposition Decl."), ¶ 3 & Ex. A.

In the first email, dated July 15, 2009, Daniel requested technical support from ExperExchange to fix a bug in ExperExchange's RTK product. *Id*. In response, ExperExchange's technical department requested the version number and Customer ID for the software. *Id*. Daniel provided this information on July 17, 2009. *Id*. According to Harrison You, ExperExchange's VP for engineering, the customer number provided by Daniel was DocuLex's and not the number assigned to CT Summation. *Id*., ¶ 7 ("Obviously, per our records, this is the version of RTK and the Customer ID delivered to DocuLex on Sept. 15, 2006 by Bo Yan, instead of that delivered to CT Summation by Marina Zhao on October 23, 2007"). Further, You examined two project files that Daniel provided to ExperExchange in the course of the exchange described above and concluded that they show that DocuLex integrated Plaintiff's OCR software into Discovery Cracker no later than June 27, 2007. *Id*., ¶¶ 20-22. According to You, the files were modified between June 27, 2007 and July 11, 2007, that is, prior to the August 2007 sale of DocuLex's Litigation Division to CT Summation. *Id*., ¶ 22.

ExperExchange also challenges Defendants' assertion that its bundling theory fails as a matter of law, asserting that "while the Discovery Cracker program itself may or may not incorporate Plaintiff's software, the related modules it is bundled with do in fact contain it. Each of the modules that contain Plaintiff's software are direct infringer's of Plaintiff's copyrights and thus, Discovery Cracker is a contributory infringer." Discovery Cracker Summary Judgment Opposition at 11. In support of this argument, ExperExchange cites to the following statement in the declaration of its Vice President for Engineering, Harrison You:

> I have analyzed the performance of the Defendant DocuLex provided software modules and those module's usage of our RTK to achieve Optical Character Recognition ("OCR") of document images. I have found that Defendant has been able to combine software programs

containing our RTK with software programs that provide specially encoded document image files and OCR command parameters to the programs containing the RTK through the use of what their documentation calls a "batch" (sometimes called DocuLex Batch, DocuLex 5 Export, DocuLex 5 Tables, etc.)" format and a "monitor" processing feature. When these features are used together, and they are with many combinations of Defendants' software, that combination becomes what we call a "server" type of application because unlike a single user desktop program, a server application can run unattended by the user and satisfy the OCR requirements for multiple users who can run the combination of Defendant's software, one of which is a program that incorporates our RTK, from their individual workstations.

Wang Discovery Cracker Opposition Decl., ¶ 15.

Next, ExperExchange asserts that Defendants' motion should be denied on the basis that Defendants have "unclean hands" because they failed to provide adequate responses to Plaintiff's discovery requests. In support of this argument, Plaintiff's counsel, Daniel Richardson, provides a declaration describing the document production requests and interrogatories as to which Defendants' responses were inadequate, according to Plaintiff.

Finally, Plaintiff asserts that the Discovery Cracker Summary Judgment Motion was untimely because it was noticed for hearing on October 2, 2009, the date to which the Court had moved Defendants' Statute of Limitations Summary Judgment Motion hearing, rather than the original motions hearing date of September 11, 2009.

In their Reply brief, Defendants argue that the email from Larry Daniel is not properly authenticated and therefore, cannot defeat Defendants' summary judgment motion. In particular, Defendants note that although the email was apparently sent in response to an inquiry by Emily Liu, Plaintiff has not provided a declaration by Emily Liu authenticating the emails. In addition, Defendants argue that the content of the email from Daniel containing the customer ID number is hearsay because it is being offered to establish the truth of the matter asserted in the email. As such, Defendants argue, these statements are inadmissible.

Defendants argue further that even if this evidence is considered, Plaintiff has failed to show the existence of a material issue of fact as to several required elements of contributory infringement, namely, that CT Summation was a customer of DocuLex, that DocuLex knew of the infringing activity or that DocuLex induced infringement. Also, Defendants assert, it is not clear how they could be liable for direct infringement based on CT Summation' sale of software using Plaintiff's RTK software.

Finally, Defendants dispute Plaintiff's charge that Defendants' motion should be denied on the basis that they have unclean hands, asserting that they fully complied with their discovery obligations. Defendants argue that if Plaintiff "truly believed there were some specific discovery which would provide the evidence necessary to survive the present motion, Plaintiff would surely have filed a Rule 56(f) motion." Discovery Cracker Summary Judgment Reply at 3 n.2.

### 3. Rule 56(f) Motion

In a declaration filed by Plaintiff's counsel on October 28, 2009, Plaintiff requested that the summary judgment motions be continued to allow Plaintiff to conduct additional discovery relating to various issues raised in Defendants' summary judgment motions.

### 4. The Motion to Amend

On September 18, 2009, after Defendants' summary judgment motions had been fully briefed, Plaintiff filed a motion seeking leave to amend the complaint to add a claim for fraud against DocuLex and to add CT Summation as a defendant.

With respect to the fraud claim, Plaintiff asserts that the fraud only came to light at the July 20, 2009 deposition of Carl Strang, when Strang testified that the PDF.Capture product that was covered by the 1999 License Agreement had "batch" and "monitor" functionality that allowed the software to be used in a multi-user environment (rather than being limited to desktop applications). According to Plaintiff, this information is not described in the brochure that is attached to the License Agreement, and the non-disclosure of this information by Defendants – including Defendants' alleged refusal to provide Plaintiff in discovery with copies of the program and supporting documentation as they existed at the time the License Agreement was executed – caused Plaintiff to charge a lower royalty rate than it would have for the PDF.Capture product, thus giving rise to significant damages.

Plaintiff further asserts that it should be permitted to add CT Summation as a defendant in this action because it discovered, in July 2009, that CT Summation was using a version of Plaintiff's software that had been provided to it by DocuLex, in violation of the License Agreement (discussed above). On this basis, Plaintiff seeks to add CT Summation as a defendant on its claims for direct and contributory copyright infringement, trademark infringement and passing off under federal and

United States District Court

For the Northern District of California

state law, unfair competition, intentional interference with contractual relations and preliminary and permanent injunction.

In their Opposition brief, Defendants assert that Plaintiff should not be permitted to add claims for fraud against them because Plaintiff unduly delayed seeking to amend the complaint, waiting two months after the deposition Plaintiff asserts revealed the relevant features of PDF.Capture to bring the Motion to Amend.   Because discovery has already closed, Defendants assert, they would be significantly prejudiced if the fraud claim were permitted.   Defendants further assert that the new claims are merely an attempt to evade summary judgment.  Finally, they argue that the features of PDF.Capture that Plaintiff alleges it did not discover until July of 2009 could have been identified long ago by simply examining that product.

Defendants do not address Plaintiff's request to add CT Summation as a defendant in this action.

**III.     THE SUMMARY JUDGMENT MOTIONS**

**A.     Legal Standard Under Rule 56**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial."  *Id*. at 323.  On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S.

242, 255 (1986).

**B.    Objections to Evidence**

Defendants have objected to portions of many of the declarations submitted by Plaintiff in support of its opposition briefs.  To the extent that the Court relies on any of the specific statements to which Defendants have objected, it addresses those objections below.  Conversely, where the Court *does not* rely on these statements, it does not rule on Defendants' objections.  In this section, however, the Court rules on two more general objections asserted by Defendants, namely, their assertion that: 1) Bo Yan's declaration should be excluded in its entirety because Defendants were not given an opportunity to depose him; and 2) the declaration of Troy Sarmento should be excluded to the extent that it directly contradicts his sworn deposition testimony.  The Court sustains both objections.

**1.    Declaration of Bo Yan**

Defendants assert that the declaration of Bo Yan should be excluded in its entirety because Plaintiff failed to produce him for deposition, despite Defendants' request to be notified if Mr. Yan came to the United States.  The Court agrees.  As Plaintiff is well aware, Mr. Yan is a key witness in this case.  He is also a current shareholder in ExperExchange.  Yet Plaintiff failed to notify Defendants when Mr. Yan was in the United States, even though there was apparently time for Mr. Yan to execute a declaration in support of  ExperExchange's opposition brief.  Plaintiff may not rely on a declaration by Mr. Yan that supports its version of events without producing Mr. Yan for deposition.  *See Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D. Cal. 2007).  Accordingly, the Court does not consider the Yan declaration.

**2.    Declaration of Troy Sarmento**

At summary judgment, a district court may "disregard 'sham' affidavits that contradict deposition testimony submitted solely to generate [an] issue of fact for summary judgment purposes."  *Adler v. Federal Republic of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997) (citing *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991)).  In order to do so, the court must make a "factual determination that the contradiction was actually a sham."  *Id.* (internal quotations omitted).  In making this determination, the Court must consider whether "the party submitting the

affidavit or declaration provides a sufficient explanation for the contradiction." *Martinez v. Marin Sanitary Services*, 349 F. Supp. 2d 1234, 1242 (N.D. Cal. 2004).

Here, Sarmento testified at his deposition in some detail about an inquiry by IKON in 2001 that he said led him to verify with IKON which DocuLex product it was using and to check whether the product was covered under the License Agreement. He further testified that when IKON told ExperExchange that it was using PDF-it, ExperExchange told IKON that it was using an unauthorized product and that IKON, as a result, "dropped DocuLex like a bad habit" and switched to ExperExchange for its document management needs.

In his declaration, however, Sarmento, states that this deposition testimony was incorrect, that is, that he did not think in 2001 that the product IKON was using, PDF-it, was an infringing product and that ExperExchange did not enter into a separate license agreement with IKON. Rather, Sarmento states that he "simply referred IKON to DocuLex for technical support as we only provide technical support to our licensees . . ." To explain this discrepancy, Sarmento states that he was under the influence of Morphine, Percocet and Methadone. He further states that he was unable to submit corrections to the Court reporter within the 30-day period following his deposition because he has been very sick since the deposition. This explanation is inadequate.

First, the timing of the declaration indicates that it is a sham. Even if Sarmento was so sick that he could not review the deposition transcript in the 30 days allowed, Plaintiff's attorney could have requested an extension of that deadline. The fact that the Court was not notified of this issue soon after the deposition casts serious doubt on Plaintiff's credibility, especially as the testimony that Sarmento now repudiates involves a key issue in the case. Second, a review of the excerpts of the deposition transcript in the record indicate that Sarmento's responses to counsel's questions at the deposition were clear and lucid. Plaintiff has pointed to nothing in the transcript that suggests that Sarmento was impaired in any way. Nor, apparently, was Plaintiff's counsel aware that Sarmento's capacity to sit for a deposition was impaired, as he did not alert Defendants that there was a problem at the time of the deposition. Third, Sarmento has failed to offer any explanation for the very wide divergence between the account that he gave in his deposition and his subsequent statements in his declaration. Rather, the Court is asked to believe that the entire detailed account of

1  the course of events in 2001 that was described by Sarmento in his deposition simply never

2  happened. This assertion is not credible. For these reasons, the Court disregards Sarmento's

3  declaration to the extent that it contradicts his deposition testimony.

**B.     The Statute of Limitations Summary Judgment Motion**

   **1.     Whether Plaintiff's Claims are Barred By Applicable Statutes of
            Limitations**

7      Defendants assert that Claims One through Twenty-One are barred by the applicable statutes

8  of limitations[23] because DocuLex was incorporating Plaintiff's RTK software into products other

9  than PDF.Capture as far back as 1999 and ExperExchange had actual, or at least constructive, notice

10  of this fact as far back as 1999. The Court agrees, except to the extent that Plaintiff's claims are

11  based on conduct that falls within the applicable limitations periods.

12      Plaintiff alleges that the conduct that gives rise to its claims began in 1999, soon after the

13  parties entered into the License Agreement. Plaintiff has advanced two theories in support of its

14  claims. In the complaint, Plaintiff alleged that the wrongful conduct was Defendants' incorporation

15  of Plaintiff's RTK software into products *other than* PDF.Capture. More recently, Plaintiff has

16  asserted that even PDF.Capture did not fall within the License Agreement and thus, that the

17  wrongful conduct included Defendants' incorporation of the RTK software into that product as well.

---

[23]Defendants set forth the applicable statutes of limitations in their motion. *See* Statute of Limitations Summary Judgment Motion at 11-12. Plaintiff does not dispute that California's statutes of limitations apply to the state law claims. Nor does Plaintiff dispute that the limitations periods in Defendants' motion are correct. They are as follows: 1) Copyright Infringement (Claims One through Eight): three years (17 U.S.C. § 507(b); 2) Breach of Contract (Claim Nine): four years (Cal. Code Civ. Proc. §§ 337, 339(1); 3) Trademark Infringement (Claims Ten through Twelve): four years (Cal. Code Civ. Proc. §§ 337, 343; *see also Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 n. 11 (9th Cir. 2006); 4) Unfair Competition (Claims Thirteen and Fourteen): four years (Cal. Bus. & Prof. Code § 17208; *see also Broberg v. Guardian Life Ins. Co.*, 171 Cal. App. 4th 912, 920 (2009); 5) Conversion (Claim Fifteen): three years (Cal. Code Civ. Proc. § 338(c); *see also AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006); 6) Interference with Contract and Prospective Economic Advantage (Claims Sixteen though Nineteen): two years (Cal. Code Civ. Proc. § 339; *see also Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999); 7) Unjust Enrichment (Claim Twenty): three years (Cal. Code Civ. Proc. § 338(d); *see also FDIC v. Dintino*, 167 Cal. App. 4th 333, 346 (2008); 8) Accounting (Claim Twenty-One): four years (Cal. Code Civ. Proc. §§ 337, 339(1)).

Either way, in order to assert its claims on the basis of conduct that occurred outside the applicable limitations periods, Plaintiff must establish that the applicable statute of limitations was tolled.

As a preliminary matter, the Court notes that because Defendants assert their statute of limitations argument as to both state and federal claims, the Court must address the question of equitable tolling with reference to both state and federal law. Under California law, the statute of limitations begins to run at "the time when the cause of action is complete with all of its elements" unless accrual of the cause of action is postponed by the claimant's failure to discover the cause of action. *Norgart v. Upjon Co.*, 21 Cal, 4th 383, 397 (1999). "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076 (N.D.Cal., 2009) (*quoting Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623 (2007)). Thus, when the plaintiff has notice or information of circumstances that would put a reasonable person on inquiry notice, or has the opportunity to obtain knowledge from sources open to his or her investigation, the statute commences to run. *Id.* Consistent with this rule, in order to invoke the discovery rule, a plaintiff must plead and prove the following elements: "(a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake." *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991) (applying California law). Similarly, under federal copyright law, a cause of action does not accrue until the plaintiff "learned or by reasonable diligence could have learned that he had a cause of action." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004) (citations omitted). The parties stipulated at oral argument that whether state or federal law is applied, the analysis with respect to the discovery rule is the same under the facts here. Therefore, the Court may rely on California law in addressing Defendants' statute of limitations argument.

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1112 (1988) (citing *Christ v. Lipsitz*, 99 Cal.App.3d 894 (1979)). That is the case here. In particular, the undisputed evidence is

that Plaintiff received royalty reports as far back as 1999 indicating that DocuLex was incorporating its RTK software into products other than PDF.Capture.  These reports gave rise to actual notice of Plaintiff's claims with respect to the particular products listed in the reports.  Further, to the extent that Plaintiff has pointed to no evidence that any of the allegedly infringing products that were not expressly named in the royalty reports were "substantially different" from the either PDF.Capture or the products that were named, Plaintiff was also on constructive notice as to the unnamed products.[24] Similarly, the 2001 inquiry by IKON about technical issues related to its use of PDF-it gave rise to actual notice as to that product and constructive notice as to the other allegedly infringing DocuLex products because the incident would have led a reasonably diligent person to investigate whether DocLex was exceeding the scope of its license.

Plaintiff's assertion that it did not "discover" its claims until 2007 because it did not realize that PDF.Capture had functionalities for multi-use settings and did not realize that the other DocuLex products were not "similar to" PDF.Capture is unpersuasive.  In particular, Plaintiff has not alleged any facts, or presented any evidence, that it could not have examined PDF.Capture itself at the time of the Licensing Agreement, or at least, once it began to receive royalty reports indicating that DocuLex was incorporating the RTK software into other products.  Nor has Plaintiff alleged or presented any evidence that it could not have obtained this information from other publicly-available sources such as Defendants' website.  Indeed, Plaintiff does not even allege that it ever asked DocuLex if PDF.Capture or any of the other products into which DocuLex incorporated Plaintiff's software could be used in multi-user settings.

Accordingly, the Court concludes that Plaintiff's claims are barred, at least to the extent they are based on conduct that falls outside the applicable limitations periods.  A more difficult question is whether the claims are also barred to the extent they are based on sales of DocuLex products *within* the relevant limitations periods.  This question was not briefed by the parties, although

---

[24]The Court notes that the only feature of the allegedly infringing DocuLex products that has been identified by Plaintiff as relevant to the question of whether DocuLex exceeded the scope of the License Agreement is whether the products are used by single users in desktop applications or rather, in multi-user applications.  At oral argument, Plaintiff did not dispute that all of the DocuLex products on which Plaintiff's claims are based (whether listed in the royalty reports or not), contain functionalities that allow them to be used in multi-user applications.

1    Defendants cited to a case at oral argument that addresses the question with respect to the breach of

2    contract claim, *Brown v. Cosby*, 433 F. Supp. 1331 (D.C. Pa. 1977) (holding that under California

3    law, a claim based on an oral agreement to pay plaintiff a "fair share" of the profits for use of his

4    idea as they accrued was barred, in its entirety, because the claim accrued the first time defendants

5    failed to pay a fair share of the profits, which was outside the limitations period).

6        The Court's own research suggests that at least some of Plaintiff's claims likely are not

7    barred within the limitations period. *See Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117

8    (N.D. Cal. Aug. 17, 2004) (applying Ninth Circuit's rule that "infringement is a continuing wrong,

9    and the statute of limitations is no bar except as to damages beyond the statutory period" and

10   therefore holding that although claims for damages based on trademark and copyright infringement

11   of which the plaintiff was aware were barred as to conduct that occurred outside the statutory period,

12   plaintiff could assert those claims for violations continuing after that date). Even the case cited by

13   Defendants at oral argument acknowledges that in breach of contract cases, California law provides

14   that "a claim for payment due under a contract is not barred by the statute of limitations as to

15   payments dues within the limitations period." *Brown*, 433 F. Supp. at 1337. The Court, however,

16   declines to reach this question. Rather, the Court denies Defendants' request for summary judgment

17   on the basis of the relevant statutes of limitations to the extent Plaintiff's claims are based on

18   conduct within the limitations period. Defendants have not borne the burden of persuading the

19   Court that these claims fail, as a matter of law. In any event, the Court finds that all of these claims

20   fail on other grounds, as discussed below.

21

           **2.**       **Whether Copyright and Trademark Infringement Claims are Barred**

22                      **Under Doctrine of Laches**

23        Defendants assert that Plaintiff's copyright and trademark infringement claims are barred, in

24   their entirety, under the doctrine of laches. The Court agrees.

25        "Laches is an equitable defense that prevents a suit by a plaintiff, who with full knowledge of

26   the facts, acquiesces in a transaction and sleeps upon his rights." *Board of Trustees of the Leland*

27   *Stanford Junior University v. Roche Molecular Systems, Inc.*, 487 F. Supp. 2d 1099, 1113 (N.D.Cal.

28   2007) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-951 (9th Cir. 2001) (internal quotations

1    omitted). In *Danjaq*, the Ninth Circuit quotes the oft-repeated justification of the doctrine, by Judge

2    Learned Hand:

> It must be obvious to every one familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

6    *Danjaq*, 263 F.3d at 950 (quoting *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y.1916)). "To

7    demonstrate laches, the 'defendant must prove both an unreasonable delay by the plaintiff and

8    prejudice to itself.'" *Id*. (*quoting Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir.2000)).

9         In determining whether there has been an unreasonable delay, the relevant delay "is the

10   period from when the plaintiff knew (or should have known) of the allegedly infringing conduct,

11   until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense."

12   *Id*. at 952. In cases that involve ongoing conduct, there may be undue delay even as to later conduct

13   where that conduct is identical in all relevant respects to earlier conduct. *Id*. For example, in

14   *Danjaq*, the plaintiff asserted claims for copyright infringement based on the defendants' re-release

15   of a series of James Bond movies. *Id*. Seven of the re-releases were issued between 36 and 19

16   years before the plaintiff filed suit, but one of the re-releases was filed only a year before the action

17   was filed. *Id*. The court held that the doctrine of laches applied to all of the re-releases, explaining

18   its reasoning as follows:

> On the one hand, we recognize the seemingly paradoxical nature of this conclusion. After all, how can it fairly be said that a lawsuit filed in 1998, relating to a DVD released in 1997 . . . was "delayed"? The answer is simple: Where, as here, the allegedly infringing aspect of the DVD is identical to the alleged infringements contained in the underlying movie, then the two should be treated identically for purposes of laches. It would be incongruous indeed to hold the opposite-to say, that is, that McClory's claim for infringement on a re-release survives, despite the dismissal for laches of the same claim regarding the original work. This exception would effectively swallow the rule of laches, and render it a spineless defense.

24   *Id*. at 953. "In determining reasonableness, courts look to the cause of the delay. Delay has been

25   held permissible, among other reasons, when it is necessitated by the exhaustion of remedies through

26   the administrative process . . .[,] when it is used to evaluate and prepare a complicated claim,. . . [,]

27   and when its purpose is to determine whether the scope of proposed infringement will justify the

28   cost of litigation." *Id*. at 954 (internal quotations omitted).

Here, both requirements for laches are met.  First, Plaintiff unreasonably delayed in initiating this action.  As discussed above, the undisputed fact that Plaintiff received royalty reports indicating that DocuLex was incorporating Plaintiff's software into products other than PDF.Capture is enough to have given Plaintiff constructive notice of this conduct.  Plaintiff's assertion that it was unaware of certain features of PDF.Capture when it entered into the License Agreement, and therefore did not understand that Defendants' conduct infringed its copyrights until recently, is unpersuasive.  In particular, there is no evidence in the record from which a trier of fact could reasonably infer that Plaintiff could not have obtained this information had it acted with reasonable diligence when it learned that DocuLex was incorporating Plaintiff's software into products other than PDF.Capture.

Second, Defendants have demonstrated that they will suffer prejudice as a result of the delay.  In particular, it is undisputed that DocuLex continued to incorporate Plaintiff's RTK software into its products, many of which Plaintiff now alleges are infringing.  Thus, the delay has prejudiced DocuLex by increasing the potential liability it faces with respect to these products.  At the same time, DocuLex has continued to expend resources developing this products, in reliance on its presumed right to use the RTK software in them.  *See Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 999 (9th Cir. 2006) ("A defendant may establish prejudice by showing that during the delay, it invested money to expand its business or entered into business transactions based on his presumed rights").  Nor has Plaintiff presented any evidence to counter Defendants' assertion that it could and would have used OCR scanner technology from another source had it realized that it would be faced with potential liability based on use of Plaintiff's products.

Accordingly, the Court concludes that Plaintiff's claims for copyright and trademark infringement are barred under the doctrine of laches.

### 3.  Whether Doctrine of Implied License Bars All Claims

Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims on the basis that the undisputed evidence establishes the existence of an implied license.  The Court

1  concludes that Defendants are entitled to summary judgment on this basis as to the copyright claims

2  only.[25]

3      "The existence of a license creates an affirmative defense to a claim of copyright

4  infringement." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114

5  (9th Cir. 2000).   A nonexclusive license may be granted expressly or impliedly through conduct.

6  *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (citing 3 Melville B. Nimmer &

7  David Nimmer, Nimmer On Copyright § 10.03[A] (1989).  "An implied license can be found where

8  the copyright holder engages in conduct 'from which [the] other [party] may properly infer that the

9  owner consents to his use.'"  *Field v. Google Inc.*, 412 F.Supp.2d 1106, 1116 (D.Nev., 2006) (citing

10  *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236 (1927)). "Consent to use the

11  copyrighted work need not be manifested verbally and may be inferred based on silence where the

12  copyright holder knows of the use and encourages it." *Id.* (citing *Keane Dealer Servs., Inc. v. Harts*,

13  968 F.Supp. 944, 947 (S.D.N.Y.1997) ("consent given in the form of mere permission or lack of

14  objection is also equivalent to a nonexclusive license")).

15      Here, it is undisputed that: 1) from the outset of the License Agreement, Defendants provided

16  royalty reports to Plaintiff that listed products other than PDF.Capture on them and Plaintiff did not

17  notify Defendants that their use of Plaintiff's software in those products exceeded the scope of the

18  License Agreement until just prior to this litigation; 2) Plaintiff continued to accept Plaintiff's

19  royalty payments for those products; 3) Plaintiff repeatedly renewed the License Agreement; and 4)

20  Bo Yan encouraged Defendants to incorporate Plaintiff's software into more of DocuLex's products.

21  Based on these undisputed facts, the Court finds that an implied license existed as to the products of

22  which  Defendants had actual notice, that is, OCR-it, PDF-it.  In addition, to the extent that Plaintiff

23  asserts that PDF.Capture itself falls outside the scope of the License Agreement, an implied license

24

25  _____

26  [25]All of the cases cited by Defendants address the assertion of an implied license defense to
defeat a claim for copyright infringement.  Defendants have not cited any authority for the assertion that
the existence of an implied license is a defense to Plaintiff's state law claims or to his federal trademark

27  claims.  Further, Defendants acknowledged at oral argument that the doctrine of implied license does
not apply directly to the state law claims.  Accordingly, the Court denies summary judgment based on

28  the implied license doctrine except as to the copyright claims.

existed as to that product as well.[26]  Therefore, Defendants are entitled to summary judgment as to the copyright claims based on these three products.

### 4.    Whether State Law Claims are Preempted by Copyright Act and Lanham Act

Defendants assert that all of Plaintiff's state law claims are preempted by the Copyright Act and the Lanham Act.  As the Court finds that the state law claims are preempted by the Copyright Act, it need not reach the question of preemption under the Lanham Act (which, in any event, was not meaningfully briefed by the parties).

A claim is preempted if "the rights that a plaintiff asserts under state law [are] 'rights that are equivalent' to those protected by the Copyright Act," and the involved works "fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103."  *Kodadek v. MTV Networks*, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998).   The Ninth Circuit has described the "equivalent rights" inquiry as follows:

> To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. . . . The state claim must have an "extra element" which changes the nature of the action.

*Del Madera Properties v. Rhodes and Gardner, Inc*., 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds.*  While the preemption analysis requires that the court examine the specific allegations supporting the state law claim at issue, courts have held that a wide variety of state law claims may be preempted under the Copyright Act.  *See, e.g., Capcom Co., Ltd. v. MKR Group, Inc.*, 2008 WL 4661479 (N.D.Cal., Oct. 20, 2008)(holding that counterclaim for unfair business practices under Cal. Bus. & Prof. Code §§ 17200 *et seq.* was preempted where claim was based on allegation that counter-defendant made a video game so similar to defendant's movie that it constituted a copyright infringement and an unfair business practice); *Morris v. Atchity*, 2009 WL 463971 (C.D.Cal., Jan. 13, 2009) (holding that while many courts have found that breach of contract claims

---

[26]The Court declines to award summary judgment under the implied license doctrine as to the DocuLex products of which Plaintiff did not have actual notice because Defendants have cited no cases that directly hold that constructive notice is sufficient to give rise to an implied license.  Accordingly, the Court concludes that it cannot find an implied license, at least on summary judgment, as to these products.

are not preempted by the Copyright Act, such a claim may be preempted where the contract is essentially only a promise not to infringe); *Design Art, Inc. v. National Football League Properties, Inc.*, 2000 WL 33151646 (S.D.Cal., Aug. 18, 2000) (holding that state law claims for conversion, fraud, misappropriation of trade secrets, intentional and negligent misrepresentation, breach of confidence and breach of contract were preempted by Copyright Act).

Here, all of Plaintiff's state law claims are based on the same alleged conduct, namely, Defendants' unauthorized use of Plaintiff's RTK software in its products. It is undisputed that these works are protected under the Copyright Act and thus, the only question is whether these claims protect rights that are equivalent to those that are protected under the Copyright Act. In its opposition brief, Plaintiff asserts that they are not because "the state law claims are based on business practices as opposed to simple infringement of copyright or trademark rights." Statute of Limitations Summary Judgment Opposition at 16. Plaintiff does not, however, cite to any case authority that stands for the proposition that state law claims cannot be based on equivalent rights where the alleged wrongful conduct relates to business practices. To the contrary, as discussed above, it is well-established that state law claims based on alleged unfair business practices may be preempted by the Copyright Act. Further, based on the Court's review of the allegations that support Plaintiff's state law claims, the Court concludes that they are based on the identical rights asserted in the copyright claims and therefore, that the claims are preempted.

At oral argument, Plaintiff argued that the unfair business practices on which its state law claims are based, and which provide the "extra element" that allows these claims to escape preemption are: 1) the unauthorized sub-licensing of Plaintiff's products to resellers; and 2) Defendants' sales of DocuLex's products via pay-per-click sales. The Court rejects both arguments. The only reference the Court can find to either theory is in Plaintiff's Statute of Limitations Opposition, in response to Defendants' assertion that there is no evidence that Defendants' conduct interfered with a relationship between Plaintiff and any third party (discussed below). *See* Statute of Limitations Opposition at 17. In particular, Plaintiff asserted in its opposition brief that "we now know that Defendants engaged in unauthorized sub-licensing to resellers . . . , but Defendants have yet to produce any resellers agreements even though demanded during discovery." *Id.* Plaintiff

continued, "[e]ven without these discovery responses, Plaintiff believes that third parties were in fact involved due to a Rule 45 subpoena response by Document Technologies, Inc." *Id*. The evidence cited in support of these assertions is deposition testimony by DocuLex's David Bailey that DocuLex's "marketing plan" is to "sell through resellers," *see* Richardson Statute of Limitations Opposition Decl., Ex. K at 11, and a License Agreement between DocuLex and a third party, Document Technologies, Inc., which provides for pay-per-click usage fees.[27] *Id*., Ex. L.

Though this evidence was not cited in Plaintiff's brief in connection with the preemption question, Plaintiff's theory is, apparently, that it shows the existence of a fact question as to whether Defendants committed a breach of the License Agreement separate from their use of Plaintiff's RTK software in products other than PDF.Capture, namely, by violating the provisions of the License Agreement contained in Section 2, entitled "Limitations on License." *See* Kinsella Statute of Limitations Summary Judgment Motion Decl., Ex. A (License Agreement), Section 2. This entirely new theory of liability, however, can be found nowhere in any of the state law claims alleged in the complaint. Rather, the claims, as alleged, are based entirely upon Defendants' incorporation of Plaintiff's products not covered by the License Agreement. Plaintiff also failed to articulate these theories of liability in a motion to amend.[28] Further, Plaintiff's suggestion in its opposition brief that it *might* have been able to show the existence of a fact question as to Defendants' sale to resellers (even assuming the Court were to permit Plaintiff to proceed on that theory) is unpersuasive because Plaintiff did not avail itself of the remedies provided under the rules of discovery, for example, by bringing a motion to compel, to obtain these materials.

In short, the Court rejects Plaintiff's eleventh-hour attempt to avoid preemption of its state law claims on summary judgment by recasting them to invoke an entirely different factual and legal

---

[27]At oral argument, Plaintiff's counsel acknowledged that the pay-per-click argument was not raised at all in Plaintiff's opposition brief.

[28]The Court notes that although Plaintiff recently filed a motion to amend the complaint to add CT Summation as a defendant and a fraud claim against the existing defendants (discussed below), the state law claims asserted in the proposed amended complaint continue to be based entirely upon the alleged unauthorized use of Plaintiff's RTK software in Defendants' products. The proposed amended complaint does not include any new allegations regarding violations of the License Agreement based on sales of software to resellers or pay-per-click sales.

theory of liability upon which Defendants have had no opportunity to conduct discovery.  Rather, the Court finds that those claims are preempted under the Copyright Act.

### 5. Whether Interference Claims Fail Because DocuLex and ExperExchange Were Parties to a Contract Governing Their Relationship

Defendants assert that even if Plaintiff's interference claims are not preempted, they fail because Plaintiff has not alleged, and cannot prove, that Defendants interfered with a relationship – whether contractual or prospective – with a third party.  Plaintiff does not dispute that all of the interference claims require it to show that Defendants interfered with a relationship between ExperExchange and a third party.  It argues that these claims survive, however, because Defendant Jim Grebey left DocuLex in 2007, when the Litigation Division was acquired by CT Summation. As discussed above, Plaintiff also argues that the claims survive because there is evidence that Defendants may have sold their products to resellers.  Plaintiff's arguments fail.

First, as discussed above, Plaintiff's "reseller" theory was not alleged in the Complaint or raised in a motion to amend and therefore, the Court rejects Plaintiff's attempt to avoid summary judgment on this basis.  Even if the Court were to consider the very limited evidence relating to sales to resellers, which reveals only a single entity that might be considered a third party, that is, Document Technologies, Inc., there is not evidence in the record sufficient to create a fact question as to any of the other elements of the interference claims.[29]  Second, Plaintiff does not point to any evidence (or allegations) that Jim Grebey engaged in conduct *after* he left DocuLex that would satisfy the elements of Plaintiff's interference claims.  Accordingly, the Court finds that Defendants are entitled to summary judgment on the interference claims on this basis as well.

---

[29]Under California law, "[t]o prevail on a cause of action for intentional interference with prospective economic advantage . . ., a plaintiff must plead and prove (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts."  *See Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 n. 6 (2004).

**6.      Whether All Claims are Barred Because Plaintiff Has Suffered No Damages**

DocuLex argues that all of Plaintiff's claims fail because it is undisputed that it paid royalties to Plaintiff for all of the products into which it incorporated Plaintiff's RTK software and therefore, Plaintiff has not shown the existence of a fact question with respect to the existence of damages.  In support of this argument, DocuLex also points to a statement by its President, David Bailey, in which he states that had DocuLex known that Plaintiff did not approve of DocuLex's broad use of the RTK software, DocuLex could have switched to another provider who would have provided "substantially similar OCR software . . . for a substantially similar price."  Bailey Statute of Limitations Motion Decl., ¶ 16.  In response, Plaintiff asserts that there is a fact question on the question of damages because it would have charged a higher royalty rate for the use of its RTK software in DocuLex's products if it had realized that they were aimed at multi-user settings rather than only desk-top applications.  In particular, Plaintiff cites the following statement in a declaration by its president, Qingren Wang:

> In 1995 and subsequently to this day, we have separate license agreement provisions and pricing structures when a licensee will be using our software in a multi-user type of environment. We often call this a server-application type of use. This type of use demands a substantially higher license fee than that of a single-user desktop application. This is because a server-application is satisfying a much higher volume of transactions and many more user workstations than a single desktop user. This is a standard pricing model in the industry and we had server-applications in 1995 and into the present day.

Wang Statute of Limitations Opposition Decl., ¶ 4.  While the evidence on both sides is somewhat thin and conclusory, the Court finds that summary judgment on this ground is not warranted as there is a material issue of fact on the question of damages.

**7.      Whether Plaintiff's Claim for Injunctive Relief Should be Dismissed**

Defendants assert that Plaintiff's request for injunctive relief fails on summary judgment because Plaintiff has presented no evidence that DocuLex is still using Plaintiff's products in its software and, moreover, Defendants have pointed to evidence that they are not.  Plaintiff does not dispute that it cannot point to any specific evidence of ongoing unauthorized use of its products by Defendants.  Therefore, Defendants are entitled to summary judgment on this claim.

**C.    The Discovery Cracker Summary Judgment Motion**

Defendants assert that there is no evidence that the versions of Discovery Cracker sold by DocuLex between 2003 and 2007 incorporated Plaintiff's RTK software and therefore, that they are entitled to summary judgment that all of Plaintiff's claims fail to the extent that they are based on that product. Plaintiff concedes that it has no specific evidence that DocuLex ever sold a version of Discovery Cracker that incorporated its software but argues that summary judgment should be denied based on: 1) evidence that Discovery Cracker was bundled with other DocuLex products that *did* incorporate the RTK software; and 2) evidence that CT Summation is using a version of Discovery Cracker that was provided to DocuLex before CT Summation acquired the Litigation Division, rather than using the version that was provided to CT Summation under its own licensing agreement with ExperExchange. The Court rejects both arguments.

**1.    The Bundling Theory**

In its complaint, Plaintiff asserted twenty-two claims based, in part, on the allegation that DocuLex incorporated Plaintiff's RTK software into specific products, listed in Exhibit D to the complaint. Although Discovery Cracker was not listed in Exhibit D, Plaintiff took the position during discovery that the version of Discovery Cracker sold by DocuLex between 2003 and 2007 did, in fact, incorporate the RTK software. Subsequently, in the face of evidence that the RTK software was *not* incorporated into the version of Discovery Cracker sold by DocuLex, Plaintiff put forth a new theory of liability, asserting that Discovery Cracker had the capability to export files, which then could be used in conjunction with *other* DocuLex products that did incorporate Plaintiff's software. According to Plaintiff, because Discovery Cracker could be bundled with other infringing products, Discovery Cracker also was a "contributory infringer." Plaintiff's argument fails as a matter of law.

First, Plaintiff has cited to no evidence that Discovery Cracker was sold to customers in bundled form. Indeed, the only evidence that it was is offered by Defendants, whose CEO states in his declaration that over the course of four years, Discovery Cracker was sold to six customers who also purchased IP Studio. *See* Strang Discovery Cracker Motion Decl., ¶ 6. Second, even if there

38

United States District Court

For the Northern District of California

were evidence that products were bundled, Plaintiff has pointed to no authority that would allow it to assert separate infringement and related claims for a product that does not incorporate its product simply because it is sold with another product that is alleged to infringe. Such an approach would make little sense, particularly in this case, where the three products that were allegedly bundled with Discovery Cracker – IP Studio, Professional Capture and Office Capture – are already listed among the products that are alleged to have infringed Plaintiff's copyrights.

### 2. CT Summation's Use of RTK Software Obtained From DocuLex

Plaintiff's second argument is that the claims should survive, to the extent that they are based on Discovery Cracker, because it now has evidence that DocuLex incorporated Plaintiff's RTK software into a version of Discovery Cracker which, while never placed on the market by DocuLex, was eventually transferred, along with the entire Litigation Division, to CT Summation. This argument, too, fails. First, Plaintiff did not include Discovery Cracker in the complaint and never sought to amend the complaint to allege that this product violated Plaintiff's copyrights. Second, Plaintiff has conceded that it has not suffered any injury as a result of this conduct and therefore, any claims based on Discovery Cracker, with the possible exception of the copyright violations,[30] fail on that basis.[31] Accordingly, Defendants' are entitled to summary judgment to the extent Plaintiff's claims are based on Discovery Cracker.

### IV. THE MOTION TO AMEND

Plaintiff seeks to amend its complaint to add a claim for fraud against DocuLex, asserting that it did not learn until July 20, 2009, during the deposition of David Griffith, that PDF.Capture had "batch" and "monitor" functionalities until that the time. Plaintiff also seeks to add CT

---

[30]The Court acknowledges that this particular argument likely does not apply to the copyright claims to the extent that Plaintiff might be entitled to recover statutory damages on those claims even if there is no evidence of actual damages. The Court has already held, however, that those claims are barred for the reasons discussed above.

[31]The Court notes that Defendants have also objected to the evidence submitted by Plaintiff in connection with the email exchange between ExperExchange and CT Summation in July 2009. Although the Court has serious concerns about the admissibility of Plaintiff's evidence, it is undisputed that CT Summation subsequently conceded that it is using the earlier version of Plaintiff's RTK software that was provided to DocuLex. Therefore, even if the Court sustains Defendants' objections, the issue must still be addressed.

1  Summation as a defendant on the basis of the email exchange discussed above. Because Plaintiff

2  fails to meet the "good cause" standard under Rule 16(b) of the Federal Rules of Civil Procedure,

3  both requests are denied. The Court also rejects Plaintiff's request to amend its complaint to add a

4  claim for fraud against DocuLex on the basis that such an amendment will result in substantial

5  prejudice to Defendants, and moreover, is futile.

6      Although Rule 15(a) of the Federal Rules of Civil Procedure liberally allows for amendment

7  of pleadings, that standard does not apply where the court has already entered a scheduling order and

8  amendment of the pleadings requires that the court modify its schedule. *Johnson v. Mammoth*

9  *Recreations, Inc*., 975 F.2d 604, 608 (9th Cir. 1992). Rather, under those circumstances, a party must

10 meet the more stringent requirement of Rule 16(b), which requires a showing of good cause.

11 *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 608 (9th Cir. 1992). In *Johnson*, the Ninth

12 Circuit described the "good cause" inquiry as follows:

13      "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of
        the amendment under ... Rule 15." *Forstmann*, 114 F.R.D. at 85. Unlike Rule 15(a)'s liberal
14      amendment policy which focuses on the bad faith of the party seeking to interpose an
        amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard
15      primarily considers the diligence of the party seeking the amendment. The district court may
        modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party
16      seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment);
        *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J.1990);
17      *Amcast Indus. Corp. v. Detrex Corp*., 132 F.R.D. 213, 217 (N.D.Ind.1990); *Forstmann*, 114
        F.R.D. at 85; 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d
18      ed. 1990) ("good cause" means scheduling deadlines cannot be met despite party's diligence).
        Moreover, carelessness is not compatible with a finding of diligence and offers no reason for
19      a grant of relief. *Cf. Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038, 1043 (9th
        Cir.1992) (carelessness not a ground for relief under Rule 60(b)); *Martella v. Marine Cooks
20      & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971) (same), *cert. denied*, 405 U.S. 974, 92
        S.Ct. 1191, 31 L.Ed.2d 248 (1972); *Smith v. Stone*, 308 F.2d 15, 18 (9th Cir.1962) (same).
21      Although the existence or degree of prejudice to the party opposing the modification might
        supply additional reasons to deny a motion, the focus of the inquiry is upon the moving
22      party's reasons for seeking modification. See *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D.
        138, 141 (D.Me.1985). If that party was not diligent, the inquiry should end.

23

24 *Id*. at 609. A motion for leave to amend may also be denied where it will substantially prejudice the

25 defendant. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)(holding

26 that in determining whether leave to amend should be granted under Rule 15(a), consideration of

27 prejudice to the other party carries the greatest weight). Finally, a motion for leave to amend may

28 be denied where amendment is futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Plaintiff has not met the good cause standard of Rule 16(b) as to the requested amendments to its complaint. The non-expert discovery cut-off in this case was July 22, 2009. *See* Docket No. 9. Plaintiff, however, waited two months after discovering its allegedly "new" facts to bring its motion to amend, filing the motion only after Defendants' Summary Judgment was fully briefed. Plaintiff offers no explanation for this delay. Further, the timing of the Motion to Amend strongly suggests that it was brought simply to avoid summary judgment. *See Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1991) (holding that "[t]he timing of the motion [to amend], after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weigh[ed] heavily against allowing leave [and noting that a] motion for leave to amend is not a vehicle to circumvent summary judgment"). Because the Court finds that Plaintiff has not acted diligently, it denies Plaintiff's request to amend.

The Court further notes that with respect to Plaintiff's request to add a fraud claim, that request is denied for the additional reason that the facts that Plaintiff relies on – the discovery that PDF.Capture had "batch" and "monitor" functionalities – could and should have been discovered by Plaintiff long ago, for the reasons discussed above. As a result, the Court concludes that amendment to add this claim would be futile because Plaintiff will not be able to establish that the statute of limitations for its fraud claim was equitably tolled. Finally, Defendants would be severely prejudiced by allowing such a claim, given that discovery has already closed and the parties are on the eve of trial.

## V. THE RULE 56(f) MOTION

Just prior to the hearing on the summary judgment motions, Plaintiff filed a Rule 56(f) motion seeking additional discovery. That request is DENIED.

Rule 56(f) provides that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Fed. R. Civ. P. 56(f). In the Ninth Circuit, to obtain a continuance under Rule 56(f), a party must establish: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts

1  are 'essential' to resist the summary judgment motion." *State of Cal., on Behalf of California Dept.*

2  *of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998).  A district court's denial

3  of a motion for further discovery under Rule 56(f) is reviewed for an abuse of discretion.  *Nidds v.*

4  *Schindler Elevator Corp.*, 113 F.3d 912, 920 (9th Cir. 1996).  Further, "the district court does not

5  abuse its discretion by denying further discovery if the movant has failed diligently to pursue

6  discovery in the past."  *Id*. at 921 (internal quotations omitted).

7      Here, Plaintiff's counsel has provided an affidavit requesting the following additional

8  discovery: 1) internal DocuLex communications regarding the functionalities of PDF.Capture at the

9  time the License Agreement was negotiated; 2) discovery relating to DocuLex's sales to resellers,

10  including customer license agreements, invoices and purchase orders and internal communications

11  related to sales; and 3) the underlying documents relied upon by Defendants in completing the sales

12  report that was provided to Plaintiff during discovery and upon which Defendants rely in support of

13  their assertion that they paid royalties on all of the products they sold that incorporated Plaintiff's

14  RTK software.

15      The Court denies Plaintiff's request for the discovery enumerated above because none of the

16  evidence that Plaintiff requests is essential.  First, regardless of what DocuLex internal

17  communications might reveal about the functionalities of PDF.Capture, this evidence will not affect

18  the Court's determination that Defendants are entitled to summary judgment under the doctrine of

19  laches because Plaintiff had actual and constructive notice of the alleged violations no later than

20  2001, as discussed above.  Second, to the extent that the Court has already found that it is too late for

21  Plaintiff to amend the complaint to introduce an entirely new theory of liability based on sales to

22  resellers, evidence relating to these sales is not essential to Plaintiff's case.  Third, the documents

23  that underlie DocuLex's audit report sought by Plaintiff are not essential because the Court did not

24  grant Defendants' request for summary judgment on the basis of a lack of damages evidence.

25  Rather, the Court found that there was a fact question as to damages.  Therefore, this discovery

26  would not have changed the Court's result on that issue.

27

28

1    Even if the evidence were essential, the Court would deny Plaintiff's request because

2    Plaintiff did not act diligently in seeking this discovery, as discussed above in connection with

3    Plaintiff's Motion to Amend.

4    **VI.    CONCLUSION**

5    For the reasons state above, the Statute of Limitations Summary Judgment Motion is

6    GRANTED in part and DENIED in part.  The Discovery Cracker Summary Judgment Motion is

7    GRANTED.  The Motion to Amend is DENIED.  The Rule 56(f) Motion is DENIED.  Accordingly,

8    all of Plaintiff's claims are DISMISSED with prejudice.

9    IT IS SO ORDERED.

10

11   Dated: November 16, 2009

12

13

14   _____

15   JOSEPH C. SPERO
     United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28