UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPEREXCHANGE, INC.,<br><br>    Plaintiff(s),<br><br>  v.<br><br>DOCULEX, INC., ET AL.<br><br>    Defendant(s).<br>_____/ | Case No. C-08-03875 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR AWARD OF ATTORNEYS' FEES, EXPERT FEES AND COSTS [Docket No. 98]** |

## I.   INTRODUCTION

In this case, ExperExchange alleged that DocuLex's incorporation of ExperExchange's optical character recognition ("OCR") software into some of DocuLex's document management software products exceeded the scope of the license agreement between the parties. The Court dismissed all of Plaintiff's claims on summary judgment and entered judgment in favor of Defendants on November 17, 2010. Defendants now bring a Motion for Award of Attorneys' Fees, Expert Fees and Costs ("the Motion"). Based on the parties' briefs, including supplemental briefs filed on March 26, 2010 (Defendants) and April 11, 2010 (Plaintiff) in response to the Court's request, the Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED in part and DENIED in part. Defendants are awarded $577,931.75 in attorneys' fees, $51,840.00 in expert fees and $6,669.47 in costs.[1]

---

[1] On April 2, 2010, after the instant motion was filed, Plaintiff filed a notice of appeal seeking review of the Court's summary judgment order. The appeal does not divest this court of jurisdiction as to Defendants' Motion, however, because the award of fees and costs is a collateral issue over which the district court normally retains jurisdiction even after being divested of jurisdiction over the merits. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir.1999).

## II. THE MOTION

Defendants seek to recover attorneys' fees, expert witness fees and costs that are not covered under Fed. R. Civ. P. 54 pursuant to California Civil Code section 1717, governing contractual attorneys' fees provisions, and the following provision in the license agreement between ExperExchange and Doculex:

> <u>Attorneys' and Experts' Fees.</u>  In the event any action is commenced to enforce this Agreement or otherwise relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' and experts' fees and costs incurred in connection therewith.

Declaration of David W. Swift in Support of Application for Attorneys' Fees and Costs [Docket No. 98]("Swift Decl."), Ex. A (RTK Software License Agreement ("License Agreement")), § 23. Defendants assert that they are entitled to an award of fees and costs under this provision because they have prevailed on the merits on all of Plaintiff's claims, and those claims relate to the scope of the license under the License Agreement.  As an alternative basis for awarding fees and costs, Defendants rely on the Copyright Act, which affords district courts the discretion to award attorneys' fees and costs to prevailing parties. *See* 17 U.S.C. § 505.

In the Motion, Defendants requested $609,895.83 in fees and costs incurred through November 30, 2009.  This amount consists of: 1) $549,769.25 in attorneys' fees; 2) $54,000.00 in expert fees; and 3) $6,126.58 in costs.  In addition, in their Reply brief, Defendants requested an additional $35,180.39 for fees and costs incurred after November 30, 2009.  This amount includes: 1) $28,162.50 in attorneys' fees incurred through December 30, 2009 in connection with Plaintiff's Rule 59(e) motion and the reply brief on Defendants' motion for attorneys' fees; 2) $792.89 in expenses – primarily travel expenses incurred in connection with the summary judgment hearing; 3) $5,625.00 in attorneys' fees for time Defendants' counsel anticipated spending preparing for the pending motions and traveling to the scheduled March 12 hearing; and 4) $600.00 for the costs of travel to the hearing.

The attorneys' fees were incurred by Defendants' current counsel, Kinsella Weitzman Iser Kump & Aldisert ("Kinsella"), as well as former counsel Davis Wright & Tremaine, LLP and Peterson & Myers, PA.  Kinsella seeks a blended rate of $375.00/hour, while the rate sought for Davis Wright & Tremaine LLP is $475.00/hour and for Peterson & Myers, PA is between

1  $160.00/hour and $315.00/hour. Defendants' expert is Ray Smith, whose rate is $450.00/hour.
2  Defendants assert that the amount of attorneys' fees they seek is reasonable, applying the "lodestar
3  approach," because both the time spent and the rates sought are reasonable. *See Hensley v.*
4  *Eckerhart*, 461 U.S. 424, 433-34 (1983). In support of the amount of time spent on the case,
5  Defendants argue that the time was reasonable in light of the complex factual and legal issues raised
6  by Plaintiff's claims.

7  In its opposition brief, Plaintiff does not dispute that Defendants prevailed on the merits
8  (although Plaintiff argues at length in its brief that its claims have merit), or that the license
9  agreement provides that the prevailing party is entitled to attorneys' fees and costs. However,
10  Plaintiff asserts that the motion should be denied because it was filed untimely. Plaintiff further
11  asserts that the Court should not exercise its discretion under the Copyright Act to award attorneys'
12  fees because its claims were not frivolous or objectively unreasonable. Plaintiff does not address the
13  attorneys' fees provision in the license agreement.

14  With respect to the fees sought by Defendants, Plaintiff argues that Defendants have not
15  borne their burden of showing the rates charged are in line with prevailing rates in the cities in
16  which the firms are located. In particular, Plaintiff notes that Defendants have submitted in support
17  of the motion only declarations by their own counsel and have not submitted any independent
18  surveys or other materials reflecting the prevailing rates in those communities. Plaintiff also argues
19  that much of the time billed by Defendants' counsel was not reasonable because it was "spent in bad
20  faith, waste of time or unnecessary works [sic]." *See* Declaration of Amy Zhang in Support of
21  Plaintiff's Opposition to Defendant's Motion for Award of Attorneys' Fees ("Zhang Decl."), ¶ 17.

22  On March 11, 2010, the Court issued an order requesting additional materials from
23  Defendants, including evidence of the prevailing rates in the relevant geographical area for each
24  billing attorney, as well as declarations setting forth: 1) the names and number of attorneys who
25  attended each deposition; 2) any time spent by new counsel familiarizing themselves with the case;
26  and 3) any time that was or should be excluded due to the exercise of billing judgment. Defendants
27  filed the additional materials on March 26, 2010, and Plaintiff filed a response on April 9, 2010.
28

### III. ANALYSIS

#### A. Timeliness of Motion

Plaintiff argues that the Motion should be denied because the Motion was not timely filed under Rule 54(d)(2)(B), which requires that "[u]nless a statute or a court order provides otherwise," a motion for attorneys' fees be filed "no later than 14 days after the entry of judgment." The docket sheet for this case reflects that judgment was "entered" by the Court on November 18, 2009, but the judgment itself is dated November 17, 2009, which is also shown as the filing date on the docket sheet. Defendants' motion was filed on December 2, 2009. Defendants assert that the Motion was timely because judgment was not "entered," for the purposes of Rule 54, until November 18. In the alternative, Defendants argue that the Motion is timely because Plaintiff has filed a Rule 59(e) motion, thus suspending the finality of the judgment. As a result, Defendants assert, the deadline for filing their attorneys' fees motion is within 14 days of the Court's order deciding Plaintiff's Rule 59(e) motion, which has not yet occurred. The Court concludes that the Motion is timely and that even if it was filed one day late, that delay does not justify denying Defendants' Motion.

First, the Court finds that the Motion was filed within fourteen days of "entry" of judgment. In particular, while the docket sheet shows a filing date of November 17, 2009, it also shows that the judgment was not actually "entered" until the next day. As a practical matter, this means that the judgment was not posted on the Court's electronic filing system – and the parties did not receive notice of the judgement – until November 18. Under these circumstances, the Court concludes that the fourteen day deadline did not begin to run until November 18.

Second, the Ninth Circuit has held that where a post-trial motion is filed under Rule 59(e), as is the case here, the deadline for filing a motion for attorneys' fees is 14 days from the date on which that motion is decided. *See Bailey v. County of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005). As Plaintiff's Rule 59(e) motion was still pending until March 4, 2009, Defendants' attorneys' fees motion is not untimely.

Third, the Ninth Circuit has held that the fourteen-day deadline under Rule 54 is not jurisdictional. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 889 (9th Cir. 2000). Thus, a

court may consider a motion that is filed outside of the fourteen-day deadline where there is a "compelling showing of good cause." *Id*. Assuming that the Motion was due on December 1, 2009, as Plaintiff contends, the Court finds that Defendants have made a compelling showing of good cause for filing their motion one day late based on the docket entry expressly stating that judgment was "entered" on November 18, 2009.

### B.     Whether Defendants are Entitled to an Award of Fees and Costs

Defendants point to two sources of authority in support of their request for attorneys' fees and costs: 1) the contractual provision in the license agreement under which a prevailing party is entitled to attorneys' fees and costs; and 2) § 505 of the Copyright Act, which gives the district court discretion to award attorneys' fees to prevailing parties in cases brought under the Copyright Act. Neither side, however, addressed in its briefs the question of whether the district court's discretion with respect to the award of fees under the Copyright Act is negated by the fee provision in the underlying license agreement. Nor did they address whether an attorneys' fees provision is even enforceable in a case that is not based on diversity and where the state law claims have been dismissed on the basis of preemption under the Copyright Act. In particular, although Plaintiff argued that attorneys' fees should not be awarded under the Copyright Act, it did not address Defendants' assertion that they are entitled to attorneys' fees and costs under the license agreement. Defendants, in turn, cited only to diversity cases in support of their assertion that the attorneys' fees provision in the license agreement should be enforced.

Given that Plaintiff's state law claims were dismissed on summary judgment on the basis that they were preempted by the Copyright Act, the Court is doubtful that it would be required to enforce the fee provision in the license agreement if it did not find that such an award was appropriate under the Copyright Act. *See Dalton-Ross Homes, Inc. v. Williams*, 2008 WL 324199 (D. Ariz., Feb. 5, 2008). Here, however, the Court need not reach this question because it finds that an award of attorneys' fees and costs under the Copyright Act is warranted.

Section 505 of the Copyright Act provides as follows:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as

otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. "Fees are proper under this statute when either successful prosecution or successful defense of the action furthers the purposes of the Copyright Act." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). The standard is the same for prevailing defendants as it is for prevailing plaintiffs. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) (rejecting dual approach that had been followed by some courts, in which plaintiffs were treated more favorably than defendants under § 505, and noting that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright").

In *Fogerty*, the Supreme Court endorsed the non-exclusive list of factors set forth in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) to guide the district court's discretion in determining whether to award costs under § 505. *See id.* at 534 n. 19. *Lieb*, in turn, characterized the discretion afforded the district judge under § 505 as follows:

> Thus we do not require bad faith, nor do we mandate an allowance of fees as a concomitant of prevailing in every case, but we do favor an evenhanded approach. The district courts' discretion may be exercised within these boundaries. Factors which should play a part include frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. We expressly do not limit the factors to those we have mentioned, realizing that others may present themselves in specific situations. Moreover, we may not usurp that broad area which Congress has reserved for the district judge.

788 F.2d at 156; *see also Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996)("the district court may consider (but is not limited to) five factors in making an attorney's fees determination pursuant to § 505 of the Copyright Act: (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence").

In this case, the Court finds that awarding Defendants the fees and costs incurred in the defense of this action furthers the purposes of the Copyright Act and particularly, the need to advance considerations of compensation and deterrence. The evidence that came to light at the summary judgment stage of the case, including undisputed evidence, indicates that Plaintiff was

6

motivated more by business considerations than it was by the strength of its legal position in bringing this action. As set forth in the Court's summary judgment order, Plaintiff brought this action based on the allegation that Defendants were incorporating Plaintiff's RTK software into their products in violation of the license agreement, but the undisputed evidence showed that Plaintiff had been aware of this conduct for many years and had never notified Defendants of the alleged violation. Indeed, it is undisputed that Plaintiff's former Chief Operating Officer, Bo Yan, worked closely with Defendants and encouraged them to incorporate Plaintiff's software into as many of their products as possible so as to increase Plaintiff's royalties. It was only when Bo Yan was replaced and new management took over that Plaintiff turned to litigation.

Further, in litigating this case, Plaintiff went to great lengths to avoid dismissal of its claims, bordering on bad faith. The Court is particularly troubled by Plaintiff's submission of a declaration by Bo Yan in support of its opposition to Defendants' summary judgment motion. As the person who worked most closely with Defendants during the relevant time period, Bo Yan would likely have been a key witness in this case had it gone to trial. Because he had moved to China, however, Plaintiff informed Defendants that Bo Yan was unavailable for deposition. Although Defendants asked Plaintiff to notify them if Bo Yan came to the United States so they could arrange to depose him, Plaintiff did not notify Defendants when Bo Yan visited. During this visit, Bo Yan signed the declaration Plaintiff submitted in support of its opposition to Defendants' summary judgment motions.

In addition, Plaintiff submitted what the Court found to be a sham declaration by Troy Sarmiento in opposition to Defendants' summary judgment motions. Sarmiento's testimony at his deposition strongly supported Defendants' position that Plaintiff had been aware of the alleged infringement for many years. In opposing Defendants' summary judgment motion, Sarmiento submitted a declaration giving a vastly different account and asserting that he had been under the influence of Morphine, Percocet and Methadone during his deposition. For the reasons stated in the Court's summary judgment order, the Court found that Sarmiento's new version of the facts was unconvincing and was offered simply to avoid summary judgment.

Finally, when it became apparent that Plaintiff's claims were likely to fail on summary judgment, Plaintiff resorted to adopting an entirely new theory of liability under which even the one product that expressly fell under the license agreement now was alleged to infringe. Even as to this new theory, the Court found that Plaintiff did not proceed with diligence in analyzing discovery materials that were provided to it well before the hearing on Defendants' summary judgment motions and Plaintiff's motion to amend.

In short, the Court concludes that this action was factually and legally weak at the outset, that Plaintiff's motivation in bringing the action was based on business considerations rather than the legal merits, and that in conducting the case, Plaintiff's conduct was objectively unreasonable in many respects. Therefore, the Court exercises its discretion to award Defendants attorneys' fees and costs under § 505 of the Copyright Act.

### C. Amount of the Award

#### 1. Attorneys' Fees

##### a. Legal Standard

In this Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In determining a reasonable number of hours, the Court must review detailed time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable rate for each attorney, the Court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id*. at 1210-11.

"The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan,* 814 F.2d at 1263. "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the

community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (affirming award of attorneys' fees at rate of $500.00/hour where party had submitted a declaration describing her experience and attached copies of fee awards in the same geographical area where counsel had comparable experience).

In calculating the lodestar, the Court should consider any of the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied* 425 U.S. 951 (1976), that are relevant. *Jordan*, 815 F.2d at 1264 n.11 (noting that the Ninth Circuit no longer requires that the district court address every factor listed in Kerr). In *Kerr*, which was decided before the lodestar approach was adopted by the Supreme Court as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Ninth Circuit adopted the 12-factor test articulated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974). This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skilled requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

To the extent that the *Kerr* factors are not addressed in the calculation of the lodestar, they may be considered in determining whether the fee award should be adjusted upward or downward, once the lodestar has been calculated. *Chalmers*, 796 F.2d at 1212. However, there is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. An upward adjustment of the lodestar is appropriate only in extraordinary cases, such as when an attorney faced exceptional risks of not prevailing or not recovering any fees. *Chalmers*, 796 F.2d at

9

1212. A reduced fee award is appropriate where a plaintiff achieves only partial or limited success. *Hensley*, 461 U.S. at 436. To be compensable, an attorney's time must be "reasonable in relation to the success achieved." *Id*. When accounting for limited success, a court may eliminate specific hours in calculating the lodestar, or it may simply reduce the award. *Id*.

### b.     Reasonableness of Hourly Rates

Over the course of this litigation, Defendants were represented by: 1) Joe Adieggo, of Davis Wright & Tremaine ($475/hour); 2) Kerry Wilson ($315/hour), Steven Senn ($300.00/hour), Ryan Zika ($160.00/hour) and Brian Mathis ($160.00/hour) of the firm of Peterson & Myers; and 3) Dale Kinsella, Jennifer McGrath, and Jeremiah Reynolds, all charging a blended rate of $375/hour, at the firm of Kinsella Weitzman Iser Kump and Aldisert ("the Kinsella firm"). In addition, paralegals Jonathan Noyes and Laurie Schwartz, of the Kinsella firm, worked on the case, at a rate of $125.00/hour and paralegals of Peterson & Myers worked on the case at a rate of $115.50/hour. The declaration of David Swift, along with the supplemental declarations submitted in support of the Motion, set forth the relevant experience of all of the attorneys listed above, the prevailing rates in the relevant legal community and the reasonableness of the rates sought.

In determining the lodestar, the Court must make a determination that the rate charged for all work was reasonable, based on evidence that the rates are in line with those charged by attorneys in the relevant community with comparable qualifications for similar work. *See United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d at 407. As noted above, evidence that rates are reasonable may take the form of affidavits by other attorneys who practice in and same geographical area, surveys or studies, or other awards. Here, Defendants have offered multiple declarations, as well as surveys of prevailing rates in the applicable geographical area, in support of the rates that they seek for all of the attorneys and paralegals who defended this action. *See* Declaration of David W. Swift in Support of Application for Attorneys' Fees and Costs ("Swift Motion Decl.") ¶¶ 12-19; Declaration of Robert G. Fegers in Support of Doculex's Motion for Attorneys' Fees ("Fegers Decl.")(addressing prevailing rates in Central Florida and reasonableness of rates charged by attorneys at Peterson & Myers); Declaration of Peter Nichols in Support of Doculex's Motion for Attorneys' Fees ("Nichols Decl.") (addressing prevailing rates in Los Angeles and reasonableness of

rates charged by attorneys at Kinsella law firm); Declaration of Joseph Addiego in Support of Doculex's Motion for Attorneys' Fees ("Addiego Decl.") (addressing reasonableness of time billed and rates sought by Joseph Addiego ); Declaration of Dale Kinsella in Support of Doculex's Motion for Attorneys' Fees ("Kinsella Decl.") (addressing reasonableness of rate sought by Dale Kinsella and paralegals at Kinsella firm); Declaration of Mark Kachner in Support of Doculex's Motion for Attorneys' Fees ("Kachner Decl.") (addressing reasonableness of rate charged by David Swift); Supplemental Declaration of David Swift in Support of Doculex's Motion for Attorneys' Fees ("Swift Supp. Decl.") (addressing reasonableness of rate of David Swift, Jeremiah Reynolds, Jennifer McGrath and Joe Addiego).  Having carefully reviewed these materials, the Court finds that the rates sought by Defendants are reasonable.

### c. Reasonableness of Time Billed

Plaintiff objects to the time billed on the following grounds: 1) "block-billed entries;" 2) objections related to depositions, including the length of depositions and the fact that more than one attorney attended some depositions; 3) "More than 95% of the documents produced by Defendants in the Discovery are not relative to our requests"; 4) Defendants' subpoenas on third parties were unnecessary; 5) time spent deposing Plaintiff's expert, Michael Krieger, was "useless;" 6) time spent drafting *Daubert* motion in connection with Krieger expert report was "wasted;" 7) time spent in connection with declarations by individual defendants should not be awarded because "[a]lmost every individual Defendant and the CT general manager made false declaration to cheat the Court;" 8) Defendants should not be awarded fees on the counterclaims, which were dismissed; 9) time spent in connection with the mediation should be excluded because Defendants did not provide key documents prior to the mediation, resulting in failure of the mediation; 10) time spent preparing Terry Morgan and Bud Strang for deposition should not be awarded because time was "too long and suspicious" and "they were plotting to make false testimonies in the deposition;" 11) unclear and duplicative time entries; 12) "other respects: communication with the Insurance Company, planning to have deposition in China, etc."  Declaration of Amy Zhang in Support of Plaintiff's Opposition to Defendant's Motion for Award of Attorneys' Fees ("Zhang Motion Decl.") at 9.

The Court notes that Plaintiff has not identified the specific time entries to which it objects in connection with any of these objections. On that basis alone, many of Plaintiff's objections fail. Nonetheless, Defendants have the burden to show that the fees they seek are reasonable and therefore, the Court addresses each of Plaintiff's objections.

### i. Block-billing

Plaintiff asserts that Defendants' fees should be reduced because block-billing has been used. While Plaintiff does not point to any specific time entries in support of its objection, the Court has reviewed the time sheets to determine whether block-billing by Defendants' counsel warrants a reduction in fees. In fact, the Court's review of the time-sheets reveals very little true block-billing, that is, time entries that list many activities without indicating how much time was spent on each activity. Although the Kinsella firm's time sheets include many entries listing multiple activities, the time spent on each of these activities is listed within the description. In any event, the Court does not find any block-billing in the time sheets provided by Defendants that hinders its ability to evaluate the reasonableness of Defendants' fee request. No reduction of fees on this basis is warranted.

### ii. Objections related to depositions

Plaintiff argues that fees for time spent in depositions should be reduced because: 1) Defendants spent "triple long time of our in deposition;" 2) Defendants' counsel were not familiar with the software industry and "got education" from the deponents in the depositions; 3) the transcripts were "used in a wrong way to twist the facts and cheat the court;" and 4) more than one attorney attended some depositions. The first three objections have no merit. The relative length of Defendants' depositions is irrelevant in the absence of some evidence that Defendants' depositions somehow abused the discovery process; nor is there any evidence that Defendants' counsel were so ill-prepared or ill-informed on the subject matter of the litigation to justify a reduction. Finally, the Court finds no evidence that the transcripts were misused by Defendants to "cheat the court."

The fourth issue is whether Defendants should be awarded fees for more than one attorney to attend depositions. Under some circumstances, courts have reduced fees where more than one attorney attends a deposition. *See Farris v. Cox*, 508 F. Supp. 222, 226 (N.D. Cal. 1981). Here,

however, such a reduction is not appropriate. According to David Swift, he was the only attorney who attended the depositions of Defendants David Griffith, Bud Strang, Jim Grebey, Terry Morgan and David Bailey. Swift Supp. Decl., ¶ 11. Similarly, he was the only attorney for Defendants who attended the deposition of Plaintiff's Original Equipment Manager Troy Sarmiento. *Id*. ¶ 10. The only deposition attended by both David Swift and attorney Dale Kinsella was the deposition of Plaintiff's CEO, Dr. Wang. *Id.* ¶ 12. The decision to have two attorneys attend was based on the importance of this witness and was approved by Defendants' insurer. *Id.*; *see also* Kinsella Supp. Decl. ¶ 7. The Court is familiar with the issues in the case and finds that in light of the significance of Dr. Wang's testimony, it was reasonable for both Mr. Swift and Mr. Kinsella to attend the deposition. Therefore, the Court declines to reduce Defendants' attorneys' fee award on this basis.

### iii. Allegedly irrelevant documents produced by Defendants

Plaintiff seeks a reduction on the basis that the documents produced by Defendants were largely irrelevant. Other than the conclusory statements offered by Plaintiff, the Court finds no evidence that Defendants' production of documents was improper or that any specific time entries should be eliminated from Defendants' award on that basis.

### iv. Defendants' subpoenas on third parties were unnecessary

Plaintiff asserts that Defendants incurred fees in connection with an unidentified third party subpoena that Plaintiff says was "totally unnecessary." The Court finds no evidence that Defendants issued any improper third party subpoena and declines to reduce Defendants' award on that basis.

### v. Time spent deposing Plaintiff's expert, Michael Krieger, was "useless"

Plaintiff asserts that Defendants' should no be awarded fees for time spent deposing its expert because this time was "useless." Defendants were entitled to depose Plaintiff's expert. The Court declines to reduce Defendants' fee award on this basis.

### vi. Time spent drafting *Daubert* motion was "wasted"

Plaintiff argues that Defendants should not be awarded fees for time spent preparing a motion under *Daubert* that was never filed. The fact that the motion was not, ultimately, filed, does not mean that the time spent preparing the motion was unreasonable. Here, Defendants have presented evidence in support of their assertion that Plaintiff's expert was not, in fact, qualified to

13

offer expert opinions for trial. *See* Declaration of David W. Swift in Support of Application for Attorneys' Fees and Costs [Docket No. 106-1] ("Swift Reply Decl."), Ex. G.   This evidence is sufficient to show that Defendants acted reasonably in preparing to file a *Daubert* motion.  The Court declines to reduce Defendants' award on this basis.

**vii.   Time spent in connection with declarations by individual defendants should not be awarded because "[a]lmost every individual Defendant and the CT general manager made false declaration to cheat the Court"**

The Court finds no evidence to support this assertion and declines to reduce Defendants' award on this basis.

**viii.   Defendants should not be awarded fees on the counterclaims**

Plaintiff asserts that Defendants' fees should be reduced on the basis that time was spent on Defendants' counterclaims, which Defendants ultimately dismissed.  In response to this objection, Defendants state that the time spent on the counterclaims was "negligible."  Reply at 6 n.6; *see also* Swift Reply Decl., ¶ 11 (stating that "very little time, if any, was spent solely on Defendants' counterclaims).  To the extent that Defendants billed time working on the counter-claims, the relevant question is not *how much* time was spent on them but rather, whether the time that was spent on them is recoverable.  In the Ninth Circuit, the test for determining whether time spent in connection with counterclaims may be included in a fee award is whether the counterclaims "involve a common core of facts or are based on related legal theories."  *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).  In this case, that standard is met and therefore, Defendants are entitled to any minimal time spent in connection with the counterclaims that is otherwise reasonable.

**ix.   Time spent in connection with the mediation should be excluded because Defendants did not provide key documents prior to the mediation, resulting in failure of the mediation**

The Court declines to reduce Defendants' award on this basis.  Given that the mediation was ordered by the Court and that Plaintiff did not bring a motion to compel prior to the mediation or seek leave to delay the mediation until any significant discovery disputes were resolved, the Court

finds that Plaintiff's conclusory assertion that fees should be reduced on this basis lacks merit.

      **x. Time spent preparing Terry Morgan and Bud Strang for deposition should not be awarded because time was "too long and suspicious" and "they were plotting to make false testimonies in the deposition"**

The Court finds no evidence that Defendants' counsel engaged in the misconduct alleged by Plaintiff in preparing Morgan and Strang for their depositions. The Court declines to reduce Defendants' award on this basis.

      **xi. Unclear and duplicative time entries**

Plaintiff objects generally to the time sought by Defendants on the basis of unclear and duplicative time entries. As noted above, Plaintiff does not identify any particular entries in connection. Having conducted its own review of the time sheets, the Court does not find them unclear. Nor does the Court find any significant duplication of effort, even though Defendants retained three different sets of attorneys over the course of this action. Therefore, the Court declines to reduce the award on this basis.

      **xii. "Other respects: communication with the Insurance Company, planning to have deposition in China, etc."**

Plaintiff also includes a catch-all objection that includes communications with Defendants' insurance company and time spent planning for a deposition in China. Plaintiff pointed to *no* particular time entry, and Defendants did not address these objections in the reply brief. The Court rejects Plaintiff's objection. This case involved a Chinese company, as well as a critical witness who resided in China. Under these circumstances, planning a deposition in China is, on its face, reasonable. Nor does Plaintiff explain why communication with an insurance carrier as part of a lawsuit would not be one of counsel's responsibilities. Therefore, the Court declines to reduce Defendants' fees on that basis.

    **d. Fees Sought in Connection With the Motion**

In their Reply brief, Defendants request additional fees for time spent drafting the Reply and responding to Plaintiff's motion to amend judgment, as well as anticipated fees for time spent preparing for and attending the hearing on the instant motion and the Rule 59(e) motion. *See*

15

Declaration of David W. Swift in Support of Application for Attorneys' Fees and Costs ("Swift Reply Decl") ¶ 12 (requesting $28,955.39 in additional fees and costs for time incurred from December 1, 2009 to December 30, 2009 and $6,225.00 for fees and costs that Defendants expected to incur in connection with the motion hearing). The Court finds reasonable the amounts billed on the Reply brief and in connection with the motion to amend. However, it declines to award the anticipated fees sought in connection with the hearing because the Court vacated the hearing.

### 2. Expert Witness Fees

Defendants seek expert witness fees in the amount of $54,000.00 for work performed by their expert, Ray Smith, at a rate of $450.00/hour. Plaintiff objects to this amount on the basis that Mr. Smith allegedly lacks knowledge or experience in OCR and that his report contained "wrong conclusions" and was of "low quality." Plaintiff also points out that Defendants did not use the expert report in their summary judgment motion. The Court rejects these arguments and awards the full amount sought by Defendants for expert fees.

As a preliminary matter, the Court addresses whether expert witness fees may be awarded under § 505 of the Copyright Act. Some jurisdictions have held that § 505 does not allow courts to award costs that exceed the scope of 28 U.S.C. §§ 1821 and 1920, which limit taxable costs for experts. The Ninth Circuit, however, has held that the words "full costs" in § 505 reflect an intent on the part of Congress to allow recovery of *non-taxable* costs, such as expert witness fees. *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 885 (9th Cir. 2005). Therefore, the Court concludes that Defendants are entitled to recover expert witness fees to the extent that they are reasonable.

Further, the Court finds that the rate requested for Mr. Smith's time of $450.00/hour is reasonable. While somewhat high, this rate is commensurate with the qualifications listed in Mr. Smith's resume. *See* Swift Decl., Ex. F. In particular, Mr. Smith has 24 years of experience in the field of OCR and is a leading expert in that field. *Id.* Mr. Smith currently leads the OCR team at Google, Inc. *Id.* The Court also notes that the resolution of Plaintiff's claims, had they gone to trial, would likely have required the jury and the Court to address highly technical issues related to OCR technology. Therefore, Defendants acted reasonably in retaining Mr. Smith in this litigation.

The Court rejects Plaintiff's conclusory assertion that Mr. Smith's fee should be reduced on the basis that he lacks experience in the OCR field.

The Court also finds the time billed by Mr. Smith to be reasonable, with the exception of time related to billing and payment, discussed below. The fact that the report was not used to support Defendants' summary judgment motion is not relevant, as Defendants were entitled to employ an expert in preparation for a possible trial. The Court's review of Mr. Smith's billing statements, however, reveals that numerous time entries are for conversations related to payment of Mr. Smith's fees by Defendants. *See* Swift Decl., Ex. F. Defendants have cited no authority that Plaintiff should be required to pay for time spent by Mr. Smith – at a rate of $450.00/hour – to receive payment from Defendants and the Court does not find this time to be reasonable. Therefore, the Court reduces the expert witness fees by $2,160.00 for 4.8 hours devoted to activities related to billing and budgeting. Therefore, the Court awards $51,840.00 for Mr. Smith's fees.

### 3. Costs

Defendants also seek costs that are not taxable under 28 U.S.C. § 1920 (which were included in Defendants' bill of costs). As discussed above, Defendants are entitled to an award of "full costs" under § 505, which the Ninth Circuit has held includes costs that are not otherwise taxable. Thus, the Court awards Defendants' costs to the extent that it finds them to be reasonable. In its Opposition brief, Plaintiff did not object to the specific costs sought by Defendants. Nonetheless, the Court reviews the invoices provided by Defendants to determine whether the costs sought are reasonable. These costs, are, for the most part, travel expenses. *See* Swift Motion Decl., Ex. E.

The Court finds that the amounts charged for travel expenses already incurred are reasonable, with two exceptions. First, Defendants' invoices include a series of entries described as "lunch meeting with clients" in July 2009, which appear to cover lunch not only for counsel but also for the clients. Defendants have not cited to any authority that an award of fees and costs may include the cost of lunches for the client. Therefore, the Court reduces the amount of the cost award by $100.00. Second, the travel expenses sought by Defendants in connection with the summary judgment hearing include a hotel charge of $388.62 for one night for Defendants' counsel. Given that Defendants'

invoices for other trips to San Francisco for court appearances reflect that the cost of a hotel in San Francisco is approximately $225.00/night (or less), the court reduces this amount by $150.00.

Defendants also seek $600.00 for the anticipated cost of attending the March 12 hearing – $250.00 for airfare and $350.00 for a hotel. As noted above, the Court vacated the hearing and therefore does not award these costs.

## V. CONCLUSION

For the reasons stated above, the Court awards Defendants the following amounts: $577,931.75 in attorneys' fees, $51,840.00 in expert fees and $6,669.47 in costs.

IT IS SO ORDERED.

Dated: May 10, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge